1  PILLSBURY WINTHROP SHAW PITTMAN LLP
   ROXANE A. POLIDORA (CA Bar No. 135972)
2  roxane.polidora@pillsburylaw.com
   LEE BRAND (CA Bar No. 287110)
3  lee.brand@pillsburylaw.com
   Four Embarcadero Center, 22nd Floor
4  San Francisco, CA  94111
   Telephone: (415) 983-1000
5  Facsimile: (415) 983-1200

6  PILLSBURY WINTHROP SHAW PITTMAN LLP
   DIANNE L. SWEENEY (CA Bar No. 187198)
7  dianne@pillsburylaw.com
   2550 Hanover Street
8  Palo Alto, CA 94304
   Telephone: (650) 233-4500
9  Facsimile: (650) 233-4545

10 Attorneys for Defendant
   CBR SYSTEMS, INC.

11

12 [Additional counsel listed on signature page]

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15                          OAKLAND DIVISION

16 AMY COHEN, KATHARINE                    Case No. 4:21-cv-06527-HSG
   VACCARELLA, and SIRISHA KONERU on
17 behalf of themselves and all others similarly   **JOINT CASE MANAGEMENT**
   situated,                              **STATEMENT**
18
                                          Date: November 23, 2021
19            Plaintiffs,                 Time: 2:00 p.m.
                                          Place: Ctrm. 2, 4th Floor
20      vs.                               Judge: Hon. Haywood S. Gilliam, Jr.

21 CBR SYSTEMS, INC., GI PARTNERS, and
   DOES 1-10,
22
              Defendants.
23

24

25

26

27

28

1

## JOINT CASE MANAGEMENT STATEMENT

2

Pursuant to the Court's Notice Setting Case Management Conference (Dkt. 21), the Standing

3

Order for All Judges of the Northern District of California, and Civil Local Rule 16-9, Plaintiffs Amy

4

Cohen, Katharine Vaccarella, and Sirisha Koneru (collectively, "Plaintiffs") and Defendants CBR

5

Systems, Inc. ("CBR") and GI Partners ("GI"; together with CBR, "Defendants"; and Defendants

6

together with Plaintiffs, the "Parties" and each a "Party"), jointly submit this Case Management

7

Statement, in advance of the Case Management Conference scheduled in this matter for November

8

23, 2021 at 2:00 p.m.

9

### 1.    Jurisdiction and Service

10

#### a.    Plaintiffs' Statement

11

Plaintiffs allege this Court has original jurisdiction over this putative class action pursuant to

12

28 U.S.C. § 1332, and that this Court has supplemental jurisdiction over Plaintiffs' state law claims

13

pursuant to 28 U.S.C. § 1367.  Plaintiffs filed this action in the Northern District of California on

14

August 24, 2021.  GI was served on September 13, 2021, and CBR was served on September 15,

15

2021.  As described in detail in the Second Amended Complaint ("SAC"), Plaintiffs allege that the

16

arbitration language in the service contract is unlawful, unfair, deceptive and unenforceable as it is

17

procedurally and substantially unconscionable. SAC at ECF No. 38, at ¶¶ 80-89. Further, the

18

arbitration language in the contract does not include a class action waiver and the parties have not

19

stipulated that the service contract is silent on the issue of class arbitration.  Plaintiffs assert that the

20

availability of class arbitration is implicit in the service contract, and that the broad, inclusive

21

language of the service contract subjects Plaintiffs claims to classwide resolution.

22

#### b.    Defendants' Statement

23

Defendants deny that Plaintiffs' claims may be brought in this Court or on a classwide basis

24

because each Plaintiff is party to a written arbitration agreement requiring that such claims be

25

arbitrated on an individual basis.  Defendants dispute that Plaintiffs have Article III standing because

26

Plaintiffs are not entitled to any relief from this Court, including damages, and further dispute that

27

Plaintiffs' claims are eligible for class certification.  Notwithstanding the foregoing, Defendants do

28

1   not otherwise dispute that the Court has subject matter jurisdiction to assess Plaintiffs' claims and do

2   not dispute personal jurisdiction or venue.

3   **2.**   **Facts**

4       **a.**   **Plaintiff's Summary of Facts and Issues in Dispute:**

5           Defendant CBR provides newborn stem cell processing and preservation services and is the

6   world's largest stem cell collection and storage company. In August 2018, CBR was acquired by Defendant

7   GI Partners for $530 Million, confirming the incredibly lucrative nature of the cord blood banking business.

8   Defendant GI Partners is a middle market private equity firm that has described its role in the acquisition

9   of CBR as that of "Lead Investor," and described its purchase of CBR as an "attractive risk-adjusted returns

10   with minimal loss of capital…"

11

12           The consumers in this Action are caring parents, relatives, and/or caregivers who made the

13   decision to store and preserve their newborn children's cord blood with CBR for the future protection of

14   their children who may later develop blood disorders and blood cancers ("Consumers" or "Class

15   Members."). When these Consumers contracted with CBR for cord blood banking, they agreed to pay a

16   hefty up-front fee of approximately $1,500.00 or more, in addition to shipping costs of $150.00-$170.00,

17   as well as a fixed annual storage fee of $125.00 or more over the lifespan of the cord blood storage, which

18   CBR deceptively leads Consumers to believe is a fixed fee through its sales representatives, website

19   representations, and its service contract. Despite leading consumers to believe that the annual storage fee

20   is fixed, Defendants have deceptively and unlawfully increased the storage fee over time, resulting in tens

21   of millions of dollars or more in revenue, which Defendants are using to fund their customer service center

22   infrastructure and clinical trials, rather than actual storage costs. Further, if or when Consumers discover

23   the increased storage fees and explore the possibility of taking their business elsewhere, CBR

24   represents that the transfer of cord blood is difficult or impossible, effectively holding the cord blood

25   for ransom and forcing Consumers to choose between paying the increased fees or losing access to

26   the cord blood if they do not pay the increased fees.

27           Each contract has the same or substantially similar language confirming that the annual storage

28   fees will be fixed from at least years 2-18 of storage. This language is in a bold font, reaffirming to

-2-

consumers that the annual fee will not change from years 2-18, as follows: "**Annual Storage Fee Per Year (Years 2-18).**" Thus, the form Contract expressly does not allow CBR to charge storage fees beyond the fixed amount set forth in the Contract. Nonetheless, Defendants' assert that the contract allows them to increase the fixed annual fee at their discretion, which confirms that there is no end to the amount they believe they can charge consumers for storage fees, and no end to the resulting revenues they can attain.  It also confirms that Defendants always intended to increase the annual storage fees, despite promising consumers in CBR's marketing, advertising and service contract that the fees were fixed.

Defendants' reference to the unlawful annual storage fee increases as a "modest price increase" highlights its biased perspective and underscores the nature of its misconduct. It is very convenient for a multi-million business to refer to an unlawful annual fee increase of $25.00 per sample as "modest," particularly when that unlawful fee increase has resulted in substantial profits to Defendants of tens of millions of dollars or more. In fact, the revenue stream created from these fee increases has been so substantial that GI Partners was able to turn its $530M investment in 2018 into a $1.4B sale to CooperSurgical, Inc. in 2021.  And, of course, this revenue stream is in large part due to the increased annual storage fees charged to consumers. *See* www.globenewswire.com/news-release/2021/11/10/2332070/2200/en/CooperCompanies-to-Acquire-Generate-Life-Sciences-for-1-6-Billion.html.

In an effort to silence Consumers, Defendants seek to compel these Consumers to arbitration on an individual basis.  As alleged in detail in the SAC, the arbitration clause is procedurally and substantially unconscionable.  SAC at ¶¶80-9.  Further, had Plaintiffs or Class Members known that, contrary to CBR's marketing representations, and the form Contract, the annual cord blood fee was not fixed and that the cost of the increased fees would likely be less than the costs of having to arbitrate their claims to seek redress for CBR's misconduct, they would not have signed the Contract with CBR on the same terms.  Plaintiffs intend to file a motion for discovery relevant to the validity of the arbitration agreement, including the issue of unconscionability.

### b.    CBR's Statement

CBR owns and operates a leading private newborn stem cell bank, which helps parents store cord blood and cord tissue samples for their children.  CBR is dedicated to advancing the clinical application of cord blood and cord tissue stem cells by partnering with institutions to establish FDA-regulated clinical trials for conditions that have no cure today.  CBR has helped more than 600 families use their cord blood stem cells for established and experimental medical treatments — more than any other family cord blood bank.  CBR's goal is to expand the potential scope of newborn stem cell therapies that may be available to patients and their families.  CBR is headquartered in Los Angeles, California and maintains a laboratory in Tucson, Arizona.

CBR's contracts with Plaintiffs are all dated between April 2011 and January 2015 and all include an agreement that any dispute with CBR will be arbitrated on an individual basis.  While CBR's contracts with consumers uniformly include an arbitration agreement, the terms of that arbitration agreement and other terms of CBR's contracts with consumers have significantly changed since 2015.  Accordingly, a substantial portion of the purported class have entered into significantly different contracts with CBR than Plaintiffs did.

Plaintiffs allege that CBR has breached its contracts with consumers by increasing annual storage fees for cord blood and cord tissue banking.  Plaintiffs also allege that CBR misleads consumers to believe that such annual storage fees will be fixed through its sales representatives, website representations, and service contract, and that CBR holds consumer's cord blood "hostage" if they do not pay increased annual storage fees.  CBR does not dispute that it has implemented modest prices increases to its annual storage fees.  CBR, however, did so based on its contractual right to make such changes.  CBR advised its customers of the possibility of these price changes in their contracts and advised them of the specific increases at the time they were made.

### c.    GI's Statement

GI is an investment firm that invested in CBR in August 2018—after Plaintiffs' contracts were signed and after the price increases began.  In their operative complaint, Plaintiffs do not allege that CBR is an alter ego of GI or that CBR did not maintain a separate corporate form (and GI is not an alter ego of CBR).  Instead, Plaintiffs' claims against GI are based on GI's status as an investor

-4-

who stands to benefit from CBR's financial success. As Plaintiffs allege, GI has never communicated with or contracted with any of CBR's customers. Nor has it received funds from any of CBR's customers. Plaintiffs' claims against GI arise out of their contracts with CBR, which require that their claims be arbitrated on an individual basis.

Moreover, GI's sale of Generate Life Sciences Inc. (a combination of CBR and a separate business, California Cryobank, LLC) to CooperCompanies has no bearing on the claims or issues in this case. Contrary to Plaintiffs' argument about GI's "revenue stream," the purchase price of the combined companies (which provide many other services such as tissue, sperm, egg and embryo storage and retrieval) has no material connection to CBR's marginal increase in Plaintiffs' annual storage fees.

## 3.   Legal Issues

### a.   Plaintiffs' Statement

Without limitation as to subsequently identified issues, Plaintiffs identify the following disputed points of law:

   i.   Whether Plaintiffs are entitled to pre-arbitration related discovery to determine the validity and enforceability of the arbitration language in the service contract;

   ii.   Whether the arbitration language in the service contract is procedurally and substantially unconscionable;

   iii.   Whether the Parties agreed to resolve their claims on a classwide basis;

   iv.   Whether CBR breached its uniform Contracts with Plaintiffs and Class Members, including the covenant of good faith and fair dealing implied in every contract, and whether any such breach caused harm or injury to Plaintiffs and Class Members;

   v.   Whether CBR made or disseminated to the public any representation about the annual cord blood banking storage fees that were deceptive or misleading, including through its customer service representatives who reaffirm to consumers that the annual storage fee is fixed, among a barrage of other uniform marketing and advertising representations;

   vi.   Whether Defendants conduct violated the California and New York consumer protection statutes at issue;

   vii.   Whether Defendant GI Partners has deceptively or unlawfully profited from Plaintiffs' and Class Members increased annual storage fees;

-5-

viii.    Whether Defendant GI Partners has collected and retained money from Plaintiffs and Class Members that it is not entitled to;

ix    Whether Defendant GI Partners has been unjustly enriched by Plaintiffs' and Class Members increased annual storage fees;

x.    Whether Defendants' conduct warrants a public injunction enjoining Defendants' continued course of conduct;

xi.    Whether compensatory or consequential damages should be awarded to Plaintiffs and the other Class Members;

xii.    Whether actual, punitive, trebled, or statutory damages should be awarded to Plaintiffs and other Class Members;

xii.    Whether restitution should be awarded to Plaintiffs and the other Class Members; and

xiv.    Whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction.

**b.    Defendants' Statement**

Without limitation as to subsequently identified issues, Defendants identify the following disputed points of law:

i.    Whether Plaintiffs are parties to enforceable written arbitration agreements requiring that their claims against Defendants be arbitrated on an individual basis;

ii.    Whether CBR has breached its contracts with Plaintiffs by increasing annual storage fees;

iii.    Whether Plaintiffs have any non-contractual claim against CBR in light of the increase in their annual storage fee including a claim based on Plaintiffs' assertion that they were allegedly misled by CBR;

iv.    Whether Plaintiffs have stated any claim against GI given that Plaintiffs' only non-conclusory allegation against GI is that GI invested in CBR;

v.    Whether Plaintiffs have stated a claim for fraudulent concealment against CBR given their failure to make any non-conclusory allegations of such concealment;

vi.    Whether certain of Plaintiffs' claims are partially time-barred by the applicable statutes of limitations;

vii. Whether Plaintiffs can seek equitable relief given their failure to plead a lack of adequate remedy at law under *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834 (9th Cir. 2020);

viii. Whether Plaintiffs can seek injunctive relief given their failure to plead any risk of repeated harm under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018);

ix. Whether a class could ever be certified under Fed. R. Civ. P. 23, including because common questions of law or fact do not predominate over individual issues in light of the facts a substantial portion of the purported class entered into significantly different contracts than Plaintiffs; that to the extent Plaintiffs' claims rely on non-contract statements the purported class was not uniformly exposed to such statements; and that CBR works with its customers on a case-by-case basis to ensure that its services remain affordable;

x. Whether damages are capable of being calculated on a class-wide basis under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); and

xi. Whether a nationwide class can be certified consistent with *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).

This lawsuit is still at an early stage, and Defendants therefore reserve the right to identify additional legal issues as this case proceeds.

**4.    <u>Motions</u>**

There are currently no motions pending before the Court in this Action.

**a.    Plaintiffs' Statement**

It is Plaintiffs position that they will be unable to fully respond to the motion to compel arbitration without limited discovery on the issue of whether the parties formed a valid and binding agreement to arbitrate, including issues of unconscionability, and also whether GI can enforce the arbitration provision. Therefore, Plaintiffs intend to file a related motion for discovery on the issue of whether the arbitration clause in the service contract is enforceable.

Plaintiffs also assert that Defendants' anticipated motion to deny class certification is premature and that discovery regarding the alleged distinctions in the service contracts is required

before such a determination, especially in light of the fact that Defendants are uniformly charging Consumers increased annual storage fees regardless of the alleged differences in the service contracts.

**b.     Defendants' Statement**

CBR anticipates filing a Motion to Compel Arbitration, or in the Alternative, to Dismiss on or before November 19, 2021.  GI anticipates filing its own motion, which will also seek to compel arbitration (directly and/or by joining in CBR's motion in part) or, in the alternative, dismissal of all claims against GI.  GI intends to file and notice that motion such that it can be heard together with CBR's motion.

To the extent these initial motions are not granted, Defendants anticipate filing an early motion to deny class certification based, *inter alia*, on the fact that the contracts between CBR and most purported class members are significantly different than the contracts between CBR and Plaintiffs.  To the extent that motion is also not granted, Defendants intend to oppose class certification, to file *Daubert* motions challenging Plaintiffs' class certification and merits experts, and to file motions seeking summary judgment.

**5.     <u>Amendment of Pleadings</u>**

Plaintiffs filed a First Amended Complaint (Dkt. 26) ("FAC") on October 7, 2021.  The FAC added Plaintiff Sirisha Koneru, claims under New York General Business Law Sections 349 and 350, a proposed New York subclass, a claim for damages pursuant to the Consumers Legal Remedies Act, a claim for breach of express warranty, and a claim for fraudulent concealment.

Plaintiffs filed a Second Amended Complaint (Dkt. 39) ("SAC") on November 10, 2021.  The SAC added allegations about the relationship between CBR and GI, including that Plaintiffs and other consumers contract with CBR only but that CBR and GI collectively benefit from the allegedly improper increases in annual storage fees; dismissed Plaintiffs' claims for breach of contract, breach of implied covenant of good faith and fair dealing, breach of express warranty, violation of California's False Advertising Law, and violation of New York GBL Section 350 against GI (but maintained those claims against CBR); added a claim for breach of fiduciary duty against CBR only; and added claims for unjust enrichment, conversion, and money had and received against GI only.

6.   **Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have taken steps to preserve relevant documents relating to Plaintiffs' claims and Defendants' defenses, which are reasonably evident in this action.

Further, pursuant to Fed. R. Civ. P. 26(f) and ESI Guideline 2.02, the Parties have engaged in meet and confer discussions regarding what reasonable and proportionate steps are to be taken to preserve electronic discovery evidence relevant to the issues reasonably evident in this action. Should discovery proceed in this litigation, the Parties will continue to meet and confer on electronic discovery in an effort to establish a suitable protocol and submit a separate proposed order regarding a stipulated ESI protocol for the Court's review and entry that specifically delineates the procedures for electronic discovery in this litigation.

7.   **Disclosures**

The Parties believe that initial disclosures are premature in light of the forthcoming motion(s) to compel arbitration. As set forth in the Parties' proposed briefing schedule discussed below, the Parties have agreed to exchange initial disclosure information within one month of any order denying arbitration.

8.   **Discovery**

No formal discovery has been exchanged to date. Should discovery proceed in this litigation, the Parties intend to agree on the terms of a protective order to protect confidential, proprietary, trade secret, or private information.

   a.   **Plaintiffs' Statement**

Because Plaintiffs assert that the arbitration clause is unenforceable as it is procedurally and substantively unconscionable, Plaintiffs believe that discovery on the issue of whether the arbitration clause in the service contract is enforceable should take place before a decision on the validity and enforceability of the arbitration clause. *See Hamby v. Power Toyota Irvine,* 798 F.Supp2d 1163-1165 (S.D. Cal. 2011) (finding unconscionability is a generally applicable contract defense that may render an arbitration clause unenforceable, and allowing plaintiff to conduct discovery on the issue of unconscionability); *O'Brien v. American Exp. Co.*, No. 11-cv-1822-BTM (BGS), 2021 WL 1609957,

-9-

at *2 (S.D. Cal. May 8, 2021) (allowing pre-arbitration discovery on the issue of unconscionability, finding "*Concepcion*…reaffirmed that the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability'…"), citing California Civil Code section 1670.5(a), ("[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.")and *Hess v. Sprint Spectrum, L.P.,* 2012 WL 37399 (W.D.Wash. Jan.9, 2012) (permitting discovery on alleged unconscionability of arbitration clause, including "whether the arbitration clauses at issue would permit Plaintiffs to vindicate their statutory rights." ) (collecting cases).  Defendants seek to discount this sampling of cases by labeling them as old, despite the fact that they remain good law, and also by misinterpreting the ultimate resolutions in those cases.  In particular, in ECF No. 32 in *O'Brien*, which Defendants cite below, Defendants intentionally omit the first sentence of the cited paragraph, which states that the plaintiff agreed to withdraw her opposition to arbitration on an individual basis, in part, "[b]ased on information obtained during discovery" on the issue of unconscionability and contract formation.  That discovery in *O'Brian* ultimately convinced the plaintiff in that action  to withdraw her opposition to arbitration is irrelevant. What is relevant is that the plaintiff was able to obtain discovery to make that determination. !

Defendants seek to create a "competent adult" standard in determining whether the arbitration clause is unenforceable. However, no such standard exists, particularly considering the unequal bargaining power between the parties. This unequal bargaining power is evidenced by Defendants' recently revealed belief that the service contract gives it unilateral authority to increase the fixed annual storage fees, and to threaten to dispose of the cord blood for Consumers who refuse or are unable to pay these increased fees—a fact that no reasonable consumer would have known when signing the service contract as it contrary to CBR's marketing and advertising, and the plain language in the service contract

Had Plaintiffs or Class Members known that CBR, in concert with its private and lead investor GI Partners, would arbitrarily and unilaterally increase the fixed annual storage fees, and then hold the cord blood hostage in the event the Consumer refuses or is unable to make the additional fee

1   payment, and that  the cost of the increased fees would likely be less than the costs of having to

2   arbitrate their claims to seek redress for CBR's misconduct, they would not have signed the Contract

3   with CBR on the same terms.

4           Further, the contract includes a harsh one-sided fee and cost-shifting provision for all

5   arbitration and court costs, a requirement that Plaintiffs and Class Members pay all fees and costs to

6   bring an arbitration, along with the procedural surprise associated with the vagueness of the

7   arbitration clause.

8           **b.      Defendants' Statement**

9           Because Plaintiffs' claims are subject to a mandatory arbitration agreement, Defendants

10  believe that any and all discovery should proceed in arbitration rather than in this litigation.  Further,

11  because that mandatory arbitration agreement is governed by the Federal Arbitration Act ("FAA"),

12  Defendants do not believe that any discovery in connection with the forthcoming Motion(s) to

13  Compel Arbitration is appropriate.  Under the FAA, Plaintiffs cannot obtain discovery in connection

14  with a motion to compel arbitration unless they demonstrate that ***facts*** asserted in the motion are

15  actually disputed.  *See, e.g., Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) ("FAA

16  provides for discovery . . . in connection with a motion to compel arbitration only if 'the making of

17  the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" (quoting

18  9 U.S.C. § 4)); *Hart v. Charter Commc'ns, Inc.*, 814 F. App'x 211, 214 (9th Cir. 2020) (same).

19  Plaintiffs' counsel has provided no authority authorizing discovery in a case like this, where each

20  Plaintiff sues for breach of a contract that contains an arbitration agreement.  The decade-old, out-of-

21  District cases cited by Plaintiffs above, which were not identified until the day of this filing, are also

22  easily distinguishable, and all ultimately led to arbitration.  *See Hamby v. Power Toyota Irvine*, 798

23  F. Supp. 2d 1163, 1164 (S.D. Cal. 2011) (no discussion or consideration of discovery limits imposed

24  by the FAA because defendant did not "challenge Plaintiff's right to discovery" or cite "any case law

25  to the contrary" of such right); *Hamby v. Power Toyota Irvine*, No. 11CV0544-BTM (BGS), 2012

26  WL 13036860 (S.D. Cal. Mar. 22, 2012) (subsequently compelling arbitration without any discussion

27  of discovery elicited); *O'Brien v. Am. Express Co.*, No. 11-CV-1822-BTM BGS, 2012 WL 1609957

28

(S.D. Cal. May 8, 2012)[1] (plaintiff claimed statutory TCPA violation; motion to compel arbitration "presented a complicated set of facts surrounding the formation, amendment, notification, and servicing of" contract, and court allowed "limited discovery to make the argument that the arbitration agreement is unconscionable" under outdated California law and *Hamby*); Joint Motion to Dismiss Without Prejudice ¶ 4, 7, *O'Brien v. Am. Exp. Co.*, No. 11-CV-1822-BTM BGS (S.D. Cal. Jan. 15, 2013), ECF No. 32 (following "recent decisions of state and federal courts considering the issue of arbitration and class action waivers in consumer financial contracts, . . . Plaintiff notified Defendant that she would withdraw her opposition to arbitration on an individual basis of the claims asserted against Defendant," and parties jointly moved "to dismiss all claims pending in the present litigation, without prejudice to the parties' seeking to reopen the case to enforce any arbitration award");[2] *Hesse v. Sprint Spectrum, L.P.*, No. C06-0592JLR, 2012 WL 37399, at *4 (W.D. Wash. Jan. 9, 2012) (granting motion for discovery only "with respect to the narrow issue of whether the arbitration clauses at issue would permit Plaintiffs to vindicate their statutory rights"); Order Regarding Defendant's Motion to Compel Arbitration, *Hesse v. Sprint Spectrum, L.P.*, No. C06-0592JLR (W.D. Wash. July 26, 2012), ECF No. 277 (subsequently compelling arbitration without any discussion of discovery elicited).

In short, Plaintiffs' request would pointlessly delay this matter in clear violation of both the letter and spirit of the FAA.

---

[1] Incorrectly dated 2021 above.

[2] Paragraph 4 of this motion reads in full: "Based upon the information obtained during discovery, recent decisions of state and federal courts considering the issue of arbitration and class action waivers in consumer financial contracts, as well as discussions between counsel for the Parties, Plaintiff notified Defendant that she would withdraw her opposition to arbitration on an individual basis of the claims asserted against Defendant."  The parties do not identify the nature of any information obtained during discovery that led plaintiff to withdraw her opposition to individual arbitration, and defendant's renewed motion to compel arbitration following discovery, which plaintiff never opposed, strongly suggests that her withdrawal was motivated by the fact that, "in a series of recent decisions over the last two years, the United States Supreme Court has confirmed and re-confirmed that the FAA strongly favors the validity and enforceability of arbitration agreements, and that, except in limited circumstances not present here, such agreements must be enforced according to their express terms in both federal and state courts, and regardless of whether the claims asserted arise under federal or state law."  ECF No. 29-1 at 1-2 (listing Supreme Court cases as well as Ninth Circuit and district court cases in accord).

To the extent that the motion(s) to compel arbitration are denied, Defendants anticipate taking discovery from Plaintiffs, absent members of the purported class, and third parties regarding various subjects, including: Plaintiffs' allegations in the SAC; Plaintiffs' and other consumers' purchasing habits and/or industry perception; consumer and market research, statistics, analysis and surveys regarding the cord blood storage industry and similar industries; and the adequacy of Plaintiffs and their counsel to represent the purported class.  Defendants plan to depose Plaintiffs, absent members of the purported class, any experts or other declarants who plan to offer evidence in support of Plaintiffs' arguments to the Court, and relevant third parties.  In addition to fact discovery, Defendants anticipate that there will be expert testimony and discovery in this case.

**9.    Class Actions**

All attorneys of record for the Parties have reviewed the Procedural Guidance for Class Action Settlement.  The Parties have set forth a potential schedule for adjudication of Plaintiffs' motion for class certification in the Parties' proposed briefing schedule discussed below and, as reflected in that schedule, the Parties' discovery efforts shall focus on class certification issues leading up to Plaintiffs' deadline to move for class certification.

**10.    Related Cases**

None.

**11.    Relief**

**a.    Plaintiffs' Statement**

As more fully set forth in Plaintiff's First Amended Complaint, and subject to any amendments thereto, Plaintiffs seek certification of a Nationwide Class, and California and New York Classes, along with actual damages, and any other monetary relief provided by law, in an amount to be determined at trial; restitution, disgorgement, or other equitable relief; declaratory and injunctive relief as allowable under state and federal law; reasonable attorneys' fees and costs; and such other and further relief as this Court may deem just and proper.

**b.    Defendants' Statement**

Defendants deny that any class is certifiable in this case and further deny that Plaintiffs are entitled to any relief, including any classwide or individual damages, injunctive relief, declaratory

relief, restitution, disgorgement, or any award of attorneys' fees or costs.  Defendants seek an award of attorneys' fees and costs.

**12.     Settlement and ADR**

As previously reported to the Court (Dkt. 39), the parties are actively engaged in settlement discussions.  Further, as also reflected in the Stipulation and [Proposed] Order Selecting ADR Process filed herewith, the Parties request an early settlement conference with a Magistrate Judge pursuant to ADR Local Rule 7.

**13.     Consent to Magistrate Judge for All Purposes**

The Parties do not consent to having a Magistrate Judge conduct all further proceedings.

**14.     Other References**

As set forth above, the Parties dispute whether this matter is subject to binding arbitration. The Parties are not aware of any references needed at this time to a special master or the Judicial Panel on Multidistrict Litigation.

**15.     Narrowing of Issues**

Other than the issues to be addressed in the anticipated motion(s) to compel arbitration as well as the motions to dismiss discussed above, the Parties have not identified any issues that can be narrowed at this time.

**16.     Expedited Trial Procedure**

The Parties do not believe that this is the type of case that could be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17.     Scheduling**

**a.     Initial Motion Practice**

*1.     Plaintiffs' Statement*

It is Plaintiffs position that they will be unable to fully respond to the motion to compel arbitration without limited discovery on the issue of whether the parties formed a valid and binding agreement to arbitrate, including issues of unconscionability, and also whether GI can enforce the arbitration provision. Therefore, Plaintiffs intend to file a related motion for discovery on the issue of whether the arbitration clause in the service contract is enforceable, and to stipulate to a mutually

agreeable extended briefing schedule to accommodate the upcoming holidays as well as other work or personal conflicts of all counsel.  Plaintiffs assert that Defendants' motion to compel arbitration is premature and that Plaintiffs' aforementioned motion for discovery should be resolved in advance of Defendants' anticipated motion to compel arbitration.

Plaintiffs also assert that Defendants' anticipated motion to deny class certification is premature and that discovery regarding the alleged distinctions in the service contracts is required before such a determination, especially in light of the fact that Defendants are uniformly charging Consumers increased annual storage fees regardless of the alleged differences in the service contracts.

### 2.    Defendants' Statement

CBR intends to file a Motion to Compel Arbitration, or in the Alternative, to Dismiss on or before November 19, 2021.  CBR believes this motion is appropriate for briefing on this District's standard schedule set forth in Local Rule 7 and intends to notice the motion for hearing at the Court's next available law and motion date (currently March 24, 2022).  As set forth above, GI also anticipates filing its own motion, which will also seek to compel arbitration (directly and/or by joining in CBR's motion in part) or, in the alternative, dismissal; GI intends to file and notice that motion such that it can be heard together with CBR's motion.

As Defendants are not aware of any relevant purpose for arbitration-related discovery at this juncture, Defendants do not believe any extension of the briefing schedule should be allowed to accommodate Plaintiffs' improper request for arbitration-related discovery.  Notwithstanding the foregoing, Defendants are willing to stipulate to a mutually agreeable extended briefing schedule to accommodate the upcoming holidays as well as other work or personal conflicts of all counsel.

### b.    Discovery and Class Certification

The Parties believe that it is premature to set a further schedule at this time and request that a further case management conference be set approximately one month following any denial of the motion(s) to compel arbitration to address this issue.  Nevertheless, if the Court is inclined to do so at this time, the Parties jointly propose the following deadlines through a hearing on class certification:

| Event | Deadline |
|---|---|
| Initial Disclosures | One (1) month following a ruling on the motions to compel arbitration or dismiss |
| Close of Class Certification Fact Discovery (including any merits discovery overlapping with class certification). | Six (6) months following above |
| Plaintiffs' Expert Reports Pertaining to Class Certification. | Two (2) months following above |
| Defendants' Expert Reports Pertaining to Class Certification. | Two (2) months following above |
| Plaintiffs' Rebuttal Expert Reports Pertaining to Class Certification. | Three (3) weeks following above |
| Deposition of Class Certification Experts | Six (6) weeks following above |
| Plaintiffs' Motion for Class Certification | One (1) month following above |
| Defendants' Opposition(s) to Plaintiffs' Motion for Class Certification | One (1) month following above |
| Plaintiffs' Class Certification Reply Brief(s) | Three (3) weeks following above |
| Hearing on Plaintiffs' Motion for Class Certification | First available Court date based on above schedule (subject to availability of all counsel) |
| Further Case Management Conference | To be set by the Court following a ruling on class certification |

**18.**   <u>**Trial**</u>

At this stage of the proceedings, the Parties are unable to anticipate the length of trial with any certainty, but roughly approximate 7-10 trial days.  Both Parties request a jury trial of all issues so triable.

**19.**   <u>**Disclosure of Non-Party Interested Entities or Persons**</u>

    **a.**   **Plaintiffs' Statement**

Plaintiffs file herewith a certificated of interested persons or entities.  As set forth therein, Plaintiffs certify that no such interest is known other than that of the Proposed Class Members, and the named Defendants CBR and GI Partners, The Cooper companies, Inc., as well as several Doe companies which may be revealed through discovery.

-16-

1

   **b.     CBR's Statement**

2          CBR files herewith its certification of interested entities or persons.  As CBR also sets forth

3 therein:

4          Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure CBR states that it is a direct

5 wholly owned subsidiary of CBR Acquisition Holdings Corp. and an indirect wholly owned subsidiary

6 of GI Generate Parent LLC ("Generate").  No publicly traded company directly or indirectly holds

7 more than 10% of CBR as of the date of this filing.

8          CBR further states that on November 10, 2021, The Cooper Companies, Inc. (NYSE: COO)

9 filed a Report on Form 8-K with the United States Securities and Exchange Commission announcing

10 the signing of a merger agreement pursuant to which Generate would become a wholly owned

11 subsidiary of CooperSurgical, Inc., which is in turn a wholly owned subsidiary of The Cooper

12 Companies, Inc.  The completion of the merger is contingent upon standard closing conditions and the

13 full text of the merger agreement has been publicly filed with the SEC as an exhibit to The Cooper

14 Companies, Inc.'s November 10, 2021, Report on Form 8-K.[3]

15          Pursuant to Civil L.R. 3-15 and except as otherwise disclosed herein, as of this date, CBR is

16 unaware of any person or entity, other than the named parties, with a financial or other interest that

17 could be substantially affected by the outcome of this proceeding.

18

   **c.     GI's Statement**

19          GI Partners is not a corporate entity and not a proper named defendant.  As described below

20 and based on the facts alleged by Plaintiffs, GI Generate Holdings LP ("Holdings") is the proper

21 defendant.  GI Partners is a family of companies, the majority of which have no relationship to the

22 facts or issues in this case.  In the interest of clarity and as set forth in its certification of interested

23 entities or persons filed herewith, GI Partners provides the following statement regarding its corporate

24 structure and entities with a potential interest in this proceeding:

25          GI Partners is an investment firm consisting of several funds and investment accounts.

26 Several GI Partners-sponsored entities hold investments in Generate Life Sciences, all of which hold

27

28 _____

[3] The November 10, 2021, Report on Form 8-K is available at:
https://www.sec.gov/ix?doc=/Archives/edgar/data/711404/000119312521326207/d204711d8k.htm.

their interests as shareholders in GI Generate Parent LLC ("Parent"), a holding company related to GI's acquisition of CBR. The majority of GI's investment in Parent is held through Holdings, which is owned by GI Partners Fund V LP, GI Partners Fund V-A LP, and GI Partners Executive Fund V LP (collectively, "Fund V"). In addition to Holdings, two other GI-sponsored investment vehicles have invested in Parent: Bay Opportunities II LP and Generate Opportunity LP (collectively, the "Co-invest Vehicles"). Holdings, Fund V, and the Co-invest Vehicles are controlled, either directly or indirectly through their respective general partners, by GI GP V LLC ("GP V"), an entity formed to serve as the ultimate general partner of Fund V and its related entities. The limited partners in Fund V and the Co-Invest Vehicles are third-party investors unaffiliated with GI Partners. As a result, most of the entities listed above would not be proper defendants to this case, and Holdings remains the only proper defendant.

**20.    Professional Conduct**

All attorneys of record for all parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.    Other Matters**

To the extent that discovery goes forward in this litigation, the Parties: (i) consent to service by electronic means with respect to discovery, provided that service is made on all designated counsel identified by each Party; and (ii) agree that privileged documents created after the commencement of this lawsuit need not be disclosed on a privilege log.

Dated:  November 16, 2021                 PILLSBURY WINTHROP SHAW PITTMAN LLP

                                          _/s/ Dianne L. Sweeney_
                                   By:    DIANNE L. SWEENEY

                                          Attorneys for Defendant CBR SYSTEMS, INC.

                                          MILLER BARONDESS, LLP

                                          _/s/ Casey B. Sypek_
                                   By:    CASEY B. SYPEK

                                          Attorneys for Defendant GI PARTNERS

-18-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC

        */s/ Rachel L. Soffin*
By:   RACHEL L. SOFFIN

        Attorneys for Plaintiffs

-19-

4873-0343-6547

## **RULE 5-1(i)(3) ATTESTATION**

I, Dianne L. Sweeney, attest pursuant to Rule 5-1(i)(3) of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California that I have obtained the concurrence in the filing of this document from the other signatories.

Dated:  November 16, 2021                    PILLSBURY WINTHROP SHAW PITTMAN LLP

                                        _/s/ [Dianne L. Sweeney_
                         By:     DIANNE L. SWEENEY

                                  Attorneys for Defendant CBR SYSTEMS, INC.

-20-