1  DANIEL S. MILLER (State Bar No. 218214)
   dmiller@millerbarondess.com
2  CASEY B. SYPEK (State Bar No. 291214)
   csypek@millerbarondess.com
3  ERIK L. WILSON (State Bar No. 339111)
   ewilson@millerbarondess.com
4  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000
5  Los Angeles, California 90067
   Telephone:    (310) 552-4400
6  Facsimile:    (310) 552-8400

7  Attorneys for Defendant
   GI PARTNERS
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12 AMY COHEN, KATHARINE                    CASE NO. 4:21-cv-06527-HSG
   VACCARELLA, and SIRISHA KONERU, on
13 behalf of themselves and all others similarly   GI PARTNERS' NOTICE OF JOINDER
   situated,                               AND MOTION TO COMPEL
14                                          ARBITRATION OR, IN THE
              Plaintiffs,                   ALTERNATIVE, TO DISMISS UNDER
15                                          RULE 12(b)(6)
          v.
16                                          [*Filed Concurrently with Memorandum of
   CBR SYSTEMS, INC., GI PARTNERS, and     Points and Authorities; Declaration of Casey
17 DOES 1-10,                              B. Sypek; and [Proposed] Order*]

18            Defendants.                   Date:      March 31, 2022
                                            Time:      2:00 p.m.
19                                          Crtrm.:    2, 4th floor

20                                          Assigned for All Purposes to:
                                            Hon. Haywood S. Gilliam, Jr., Crtrm. 2
21
                                            Trial Date:    None Set
22

23

24

25

26

27

28

546353.4                                   Case No. 4:21-cv-06527-HSG

GI PARTNERS' NOTICE OF JOINDER AND MOTION TO COMPEL ARBITRATION OR DISMISS

*(left margin)* MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant GI Partners ("GI Partners") hereby joins Defendant CBR Systems, Inc.'s ("CBR") Motion to Compel Arbitration Or In The Alternative To Dismiss Under Rule 12(b)(6) and all arguments made in the Memorandum of Points and Authorities in support thereof [Dkt. No. 46] ("CBR's Motion"), and further moves to compel arbitration and to dismiss the claims against GI Partners in the Second Amended Complaint ("SAC") on the additional grounds set forth in the Memorandum of Points and Authorities filed concurrently herewith. CBR's Motion is scheduled to be heard on March 31, 2022 at 2:00 pm, or as soon thereafter as the matter may be heard in the courtroom of the Honorable Haywood S. Gilliam, Jr., United States District Court Judge, located at 1301 Clay Street, Oakland, California 94612.

As set forth in CBR's Motion, which GI Partners joins, a binding and enforceable arbitration agreement applies to all of Plaintiffs Amy Cohen, Katharine Vaccarella and Sirisha Koneru's ("Plaintiffs") claims against CBR. All of Plaintiffs' claims against GI Partners (a non-signatory to the contracts) are rooted in, inextricably intertwined with, and rely upon the contracts containing the arbitration agreement. Accordingly, under the doctrine of equitable estoppel, Plaintiffs are required to arbitrate their claims against GI Partners. Plaintiffs are equitably estopped from disclaiming the arbitration provisions in their contracts with CBR while asserting legal rights against CBR and GI Partners (together, "Defendants") under those same contracts.

Alternatively, if the Court does not send this case to arbitration, then all claims against GI Partners should be dismissed for failure to state a claim under Rule 12(b)(6). For the reasons set forth in CBR's Motion, which GI Partners joins, the Court should dismiss: (1) the fraudulent concealment claim; (2) claims for tolling the applicable statutes of limitations; and (3) claims for equitable and monetary relief to which Plaintiffs are not entitled.

The SAC, and all claims for relief asserted against GI Partners therein, also fail for additional reasons: (1) Plaintiffs cannot hold GI Partners liable as an investor for the acts of companies in which it invests absent an alter ego relationship, which Plaintiffs do not (and cannot) allege; (2) Plaintiffs fail to plead their quasi-contract claims (unjust enrichment and money had

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

and received) in the alternative and fail to disclaim the contracts; (3)  Plaintiffs' fraud-based claims, which are all subject to the heightened pleading standard under Rule 9(b), fail because Plaintiffs do not identify any misrepresentation or omission by GI Partners, any duty to disclose, or reliance/causation; (4) Plaintiffs do not (and cannot) identify a definite sum of money transferred directly from Plaintiffs to GI Partners sufficient to state their improper-retention-of-benefits claims (conversion, unjust enrichment and money had and received); (5) the CLRA and FDUPTA claims fail because Plaintiffs fail to allege any direct participation or unlawful conduct by GI Partners; (6) the UCL claim fails because there is no predicate violation; (7) the GBL claim fails because there is no monetary loss independent of the underlying contracts; and (8) the alleged misrepresentations were made, and the price increases began, prior to GI Partners' investment in CBR.  Accordingly, all of Plaintiffs' claims against GI Partners should be dismissed for failure to state a claim.

GI Partners' motion is based on this Notice of Joinder and Joinder in CBR's Motion, the Memorandum of Points and Authorities in Support of CBR's Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Casey B. Sypek, all pleadings and papers on file in this action, and any other arguments to be presented at the hearing on this motion.

DATED:  December 10, 2021                Respectfully Submitted,

                                         MILLER BARONDESS, LLP

                                         By: _____
                                             CASEY B. SYPEK
                                             Attorneys for Defendant
                                             GI PARTNERS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1
2

# TABLE OF CONTENTS

Page

I.     MEMORANDUM OF POINTS AND AUTHORITIES .......................................9

II.    INTRODUCTION..............................................................................................9

III.   PLAINTIFFS' ALLEGATIONS AGAINST GI PARTNERS ...........................10

IV.    MOTION TO COMPEL ARBITRATION ........................................................11

       A.     Plaintiffs Are Equitably Estopped From Avoiding The Contracts .........................12

              1.     The Claims against GI Partners Rely on the Contracts ...............................13

              2.     GI Partners' Alleged Conduct Is Intertwined with CBR's Alleged
                     Conduct and Contractual Obligations ............................................15

       B.     Plaintiffs' Claims Fall Within The Scope Of The Arbitration Clause ....................16

V.     MOTION TO DISMISS .................................................................................18

       A.     All Claims Against GI Partners Fail Because Plaintiffs Do Not Allege That
              GI Partners Is Subject To Investor Liability ...............................................18

       B.     The Quasi-Contract Claims Fail...............................................................21

       C.     Plaintiffs Fail To Allege Fraud-Based Claims Against GI Partners ......................21

              1.     Plaintiffs Fail to Allege an Actionable Misrepresentation or
                     Omission.........................................................................22

              2.     Plaintiffs Fail to Allege That GI Partners Owed a Duty to Disclose ...........23

              3.     Plaintiffs Have Not Pled Reliance or Causation .........................23

       D.     The Improper-Retention-Of-Benefits Claims Fail ........................................24

              1.     Plaintiffs Do Not Allege a Definite Sum of Money.....................25

              2.     Plaintiffs Do Not Plead Direct Transfers of Money to GI Partners ...........26

       E.     The Statutory Consumer Protection Claims Fail For Additional Reasons................27

       F.     Plaintiffs Cannot Maintain Claims Against GI Partners Based On
              Transactions That Pre-Date GI Partners' Investment In CBR ................................28

VI.    CONCLUSION .........................................................................................29

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**FEDERAL CASES**

4

*Alfus v. Pyramid Tech. Corp.*,
    764 F. Supp. 598 (N.D. Cal. 1991) ................................................................. 28

5

6

*Am. Video Duplicating, Inc. v. City Nat'l Bank*,
    2020 WL 6882735 (C.D. Cal. Nov. 20, 2020)................................. 21, 26, 27

7

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ................................................................................ 16

8

*Bhandari v. Capital One, N.A.*,
    2013 WL 1736789 (N.D. Cal. Apr. 22, 2013) ........................................ 27

9

10

*Cascade Energy & Metals Corp. v. Banks*,
    896 F.2d 1557 (10th Cir. 1990)............................................................. 19

11

*Daloisio v. Liberty Mut. Fire Ins. Co.*,
    754 F. Supp. 2d 707 (D.N.J. 2010) ....................................................... 23

12

13

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001).................................................................. 19

14

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003) ............................................................................... 18

15

16

*Franklin v. Cmty. Reg'l Med. Ctr.*,
    998 F.3d 867 (9th Cir. 2021)................................................ 12, 13, 15, 17

17

*Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*,
    2014 WL 12589335 (C.D. Cal. Jan. 14, 2014)...................................... 26

18

19

*Gerritsen v. Warner Bros. Entm't Inc.*,
    116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................ 19

20

*Green v. Canidae Corp.*,
    2009 WL 9421226 (C.D. Cal. June 9, 2009)......................................... 27

21

22

*Guerrero v. Target Corp.*,
    889 F. Supp. 2d 1348 (S.D. Fla. 2012)................................................... 23

23

*Holly v. Alta Newport Hosp., Inc.*,
    ___ F. Supp. 3d ___, 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ................ 19

24

25

*In re Apple & AT & TM Antitrust Litig.*,
    826 F. Supp. 2d 1168 (N.D. Cal. 2011) ................................................ 13

26

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    416 F. Supp. 161 (C.D. Cal. 1976)........................................................ 28

27

28

Miller Barondess, LLP
Attorneys at Law
1999 Avenue of The Stars, Suite 1000  Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

GI PARTNERS' NOTICE OF JOINDER AND MOTION TO COMPEL ARBITRATION OR DISMISS

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
   2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ................................................ 27

*In re Pac. Fertility Ctr. Litig.*,
   814 F. App'x 206 (2020) ........................................ 12, 15, 16, 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................ 24

*In re Univ. of S. Cal. Tuition & Fees COVID-19 Refund Litig.*,
   2021 WL 3560783 (C.D. Cal. Aug. 6, 2021) ........................... 21, 25

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ................................ 22, 23, 27

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ................................................ 27

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
   865 F. Supp. 2d 529 (D.N.J. 2011) .................................... 22

*Lopez v. Washington Mut. Bank, F.A.*,
   302 F.3d 900 (9th Cir. 2002) ................................................ 27

*Ma v. Golden State Renaissance Ventures, LLC*,
   2021 WL 2190912 (N.D. Cal. May 31, 2021) ............... 12, 15, 17

*Mance v. Mercedes-Benz USA*,
   901 F. Supp. 2d 1147 (N.D. Cal. 2012) ..................... 12, 13, 17

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ................................................ 17

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
   522 F.3d 1049 (9th Cir. 2008) ................................................ 23

*PostX Corp. v. Secure Data in Motion, Inc.*,
   2005 WL 8177634 (N.D. Cal. Aug. 17, 2005) ................... 20

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ................................ 19, 20

*Saroya v. Univ. of the Pac.*,
   503 F. Supp. 3d 986 (N.D. Cal. 2020) ..................... 21, 25, 26

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1990) ................................................ 17

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009) ................................................ 28

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................ 20, 26

*Stockwell v. United States*,
  80 U.S. 531 (1871) ........................................................................................... 20

*Sunpower Corp. v. Sunpower Cal., LLC*,
  2021 WL 2781245 (S.D. Cal. July 2, 2021)................................................. 26, 27

*Thornton v. Micro-Star Int'l Co., Ltd.*,
  2017 WL 10621210 (C.D. Cal. Aug. 21, 2017) ............................................... 25

*Tyler v. PNC Bank, Nat'l Ass'n*,
  2011 WL 1750798 (N.D. Cal. Apr. 22, 2011) .................................................. 27

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ........................................................................................... 18

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ......................................................................... 22

*Walter v. Hughes Commc'ns, Inc.*,
  682 F. Supp. 2d 1031 (N.D. Cal. 2010) ........................................................... 25


**STATE CASES**

*Bank of Am. Corp. v. Superior Court*,
  198 Cal. App. 4th 862 (2011)....................................................................... 22, 24

*Barrett Bus. Servs., Inc. v. Workers' Comp. Appeals Bd.*,
  204 Cal. App. 4th 597 (2012)........................................................................... 26

*Boucher v. All. Title Co., Inc.*,
  127 Cal. App. 4th 262 (2005)....................................................................... 13, 14

*Buckhorn v. St. Jude Heritage Med. Grp.*,
  121 Cal. App. 4th 1401 (2004)......................................................................... 17

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
  94 Cal. App. 4th 151 (2001)............................................................................. 21

*Goehring v. Chapman Univ.*,
  121 Cal. App. 4th 353 (2004)........................................................................... 24

*Kia Motors Am. Corp. v. Butler*,
  985 So. 2d 1133 (Fla. Dist. Ct. App. 2008)...................................................... 24

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011)..................................................................................... 23

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997)............................................................................. 23

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
  109 Cal. App. 4th 1705 (2003).......................................................... 12, 15, 16, 17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Mid-Century Ins. Co. v. Gardner*,
    9 Cal. App. 4th 1205 (1992) .................................................................................... 19

*Orcilla v. Big Sur, Inc.*,
    244 Cal. App. 4th 982 (2016) .................................................................................... 24

*Patrick v. Alacer Corp.*,
    167 Cal. App. 4th 995 (2008) .................................................................................... 24

*Sokoloff v. Town Sports Int'l Inc.*, 778 N.Y.S.2d 9 (N.Y. App. Div. 2004) ................................... 28


**STATE STATUTES**

N.Y. Gen. Bus. Law § 349 ................................................................................. 14, 15, 28

N.Y. Gen. Bus. Law §§ 349 *et seq.* ............................................................................. 11


**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 9, 10, 18

Fed. R. Civ. P. 9(b) ............................................................................... 10, 22, 23, 27


**OTHER AUTHORITIES**

*Partner*, Black's Law Dictionary (11th ed. 2019) .................................................................. 20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

GI PARTNERS' NOTICE OF JOINDER AND MOTION TO COMPEL ARBITRATION OR DISMISS

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      This case is about Plaintiffs Amy Cohen, Katharine Vaccarella and Sirisha Koneru's

4 ("Plaintiffs") contracts with Defendant CBR Systems, Inc. ("CBR") for cord blood banking

5 services.  The thrust of Plaintiffs' Second Amended Complaint ("SAC") is simple: between 2011

6 and 2015, Plaintiffs entered contracts with CBR that had "fixed" annual cord blood storage fees.

7 Beginning in 2017, CBR increased the annual storage fees, allegedly harming Plaintiffs in the

8 amount of excess fees paid.

9      GI Partners is a private investment firm that invested in CBR in August 2018, *after* all of

10 the conduct at issue in the SAC began.  Plaintiffs do not allege any independent conduct by GI

11 Partners.  Plaintiffs never entered contracts with GI Partners, nor have they had any

12 communications with GI Partners at any time, ever.  They have no relationship whatsoever with

13 GI Partners.  Plaintiffs named GI Partners as a defendant simply because they see it as a deep

14 pocket.  It does not belong in this case.

15      Plaintiffs' claims against GI Partners are a moving target.  In their initial complaint and

16 first amended complaint, Plaintiffs alleged that GI Partners was an alter ego of CBR and that, as a

17 result, GI Partners was liable for CBR's alleged breaches of contract and other related claims.  In

18 the SAC, Plaintiffs changed their tune and abandoned their alter ego theory.  Now, Plaintiffs

19 allege that GI Partners is liable because it is an investor in CBR and therefore indirectly profited

20 from CBR's annual fee increases.  This new theory flies in the face of the most basic principles of

21 corporate law.  An investor is not liable for the acts of companies in which it invests.

22      The reason behind Plaintiffs' artful pleading with respect to GI Partners is obvious:

23 Plaintiffs are trying to avoid the valid and enforceable arbitration provisions in their contracts with

24 CBR.  This attempt to bypass the contracts' mandatory arbitration provisions does not work.

25      As set forth in CBR's Motion to Compel Arbitration Or In The Alternative To Dismiss

26 Under Rule 12(b)(6) [Dkt. 46] ("CBR's Motion"), which GI Partners joins in full, a binding and

27 enforceable arbitration agreement applies to all of Plaintiffs' claims against CBR.  All of

28 Plaintiffs' claims against GI Partners (a non-signatory to the contracts) are rooted in, inextricably

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  intertwined with, and rely upon the contracts containing the arbitration agreement.  Accordingly,

2  under the doctrine of equitable estoppel, Plaintiffs are required to arbitrate their claims against GI

3  Partners.  Plaintiffs are equitably estopped from disclaiming the arbitration provisions in their

4  contracts with CBR while asserting claims against GI Partners grounded in those same contracts.

5      Alternatively, if the Court does not send this case to arbitration, then all claims against GI

6  Partners should be dismissed for failure to state a claim under Rule 12(b)(6) and Rule 9(b).  For

7  the reasons set forth in CBR's Motion, which GI Partners joins, the Court should dismiss: (1) the

8  fraudulent concealment claim; (2) claims for tolling the applicable statutes of limitations; and

9  (3) claims for equitable and monetary relief to which Plaintiffs are not entitled.

10     The claims against GI Partners also fail for additional reasons.  They are all premised on

11 *CBR's* alleged actions and misconduct—not any alleged conduct of GI Partners—and are based

12 solely on GI Partners' status as an investor in CBR.  Investors are not liable for the acts of

13 companies in which they invest absent an alter ego relationship, which Plaintiffs have expressly

14 abandoned.  Plaintiffs also fail to adequately plead their fraud-based claims under the heightened

15 pleading standard of Rule 9(b); and they fail to allege claims for conversion, unjust enrichment, or

16 money had and received.  Moreover, GI Partners did not acquire CBR until August 2018.  As a

17 matter of common sense, Plaintiffs cannot maintain claims against GI Partners for conduct and

18 transactions that predate GI Partners' involvement.  Thus, all of Plaintiffs' claims against GI

19 Partners fail as a matter of law.

20 **II.    PLAINTIFFS' ALLEGATIONS AGAINST GI PARTNERS**

21     GI Partners is an investment firm, consisting of several funds and investment accounts,

22 some of which invested in CBR in August 2018—long after Plaintiffs' contracts were signed and

23 after CBR's price increases began.[1]  (SAC ¶¶ 6, 90, 103, 110, 120, 124.)  Plaintiffs do not have

24 any contracts with GI Partners, nor have they had any communications with GI Partners at any

25 time.  (*Id.* ¶¶ 101, 102, 118, 119, 131, 132.)  Plaintiffs do not allege that GI Partners made any

26 _____

27 [1] As stated in the parties' Joint Case Management Statement [Dkt. No. 45], GI Partners is not a corporate entity and not a proper named defendant.  GI Partners is a family of companies, the majority of which have no relationship to the facts or issues in this case.

28

1    misrepresentations or omissions (or any statements whatsoever) to them.  (*See generally* SAC.)

2        Plaintiffs do not allege that GI Partners is an alter ego of CBR or that GI Partners and CBR

3    failed to maintain their separate corporate forms (and GI Partners is not an alter ego of CBR).

4    Instead, Plaintiffs' claims against GI Partners are based entirely on its role as the "Lead Investor"

5    and a "silent investor" in CBR.  (*See, e.g.*, SAC ¶¶ 7, 8, 33, 60, 67, 138-41, 211.)  Plaintiffs allege

6    that CBR charged and collected annual storage fees from Plaintiffs in excess of the amounts set

7    forth in Plaintiffs' contracts with CBR (the "Contracts") to generate additional profits (*id.* ¶¶ 49-

8    50); and that CBR shared or transferred these profits to its investor, GI Partners (*id.* ¶¶ 361, 368).

9    As a result of CBR's fee increases, the SAC alleges, GI Partners has benefitted financially.  (*Id.*

10   ¶¶ 33, 60, 138.)

11       Based on these conclusory allegations, Plaintiffs assert nine claims against GI Partners:

12   violation of California's Consumer Legal Remedies Act ("CLRA"); violation of California's

13   Unfair Competition Law ("UCL"); violation of New York General Business Law §§ 349 *et seq.*

14   ("GBL"); violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA");

15   violation of the New Jersey Consumer Fraud Act ("NJCFA"); fraudulent concealment; unjust

16   enrichment; conversion; and money had and received.

17   ## III.   MOTION TO COMPEL ARBITRATION

18       As set forth in CBR's Motion, when Plaintiffs decided to store cord blood with CBR, they

19   entered into the Contracts, which include arbitration provisions.  These provisions are enforceable;

20   and Plaintiffs cannot meet their burden of demonstrating procedural or substantive

21   unconscionability.  Moreover, arbitration-related discovery is improper and unnecessary to resolve

22   the issue of arbitrability.[2]  To avoid unnecessarily repeating identical facts and arguments already

23   made by CBR, and equally applicable here, GI Partners joins in Section II of CBR's Motion

24   (Motion to Compel Arbitration), and adopts and incorporates as its own all the asserted facts and

---

[2] Plaintiffs contend that they "will be unable to fully respond to the motion to compel arbitration without limited discovery on the issue of whether the parties formed a valid and binding agreement to arbitrate, including . . . whether GI can enforce the arbitration provision."  [Dkt. 45.] As set forth in CBR's Motion, which GI Partners joins in full, Plaintiffs are not entitled to discovery in connection with Defendants' motions to compel arbitration.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   legal arguments made therein.  For the additional reasons set forth below, Plaintiffs should be

2   compelled to arbitrate their claims against GI Partners alongside their claims against CBR.

3          Plaintiffs should be compelled to arbitrate their claims against GI Partners because they

4   arise from, depend upon, and are closely intertwined with the Contracts containing arbitration

5   provisions.  Plaintiffs are equitably estopped from disclaiming the arbitration clauses in the

6   Contracts while asserting legal rights under those same Contracts.

7          Arbitration agreements are typically enforced by signatories to the agreement.  However,

8   "in certain circumstances, a nonsignatory can compel a signatory to arbitrate."  *Mance v.*

9   *Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1155 (N.D. Cal. 2012) (citation omitted).[3]  "[T]o

10  compel arbitration of a plaintiff's claims against a nonsignatory . . ., the court must decide both

11  that (1) the plaintiff is equitably estopped from escaping the contract, and (2) the claims fall within

12  the scope of the contract's arbitration clause."  *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867,

13  872 (9th Cir. 2021).  Both elements are easily satisfied here.

14  **A.      Plaintiffs Are Equitably Estopped From Avoiding The Contracts**

15         The equitable estoppel doctrine is grounded in principles of fairness.  It prevents plaintiffs

16  from artfully pleading claims in an attempt to escape their contractual obligations to arbitrate

17  certain disputes.  *Ma v. Golden State Renaissance Ventures, LLC*, 2021 WL 2190912, at *9 (N.D.

18  Cal. May 31, 2021) ("[P]laintiffs cannot 'make use of' th[e] contractual agreement [for their

19  claims] 'and then attempt to avoid the duty to arbitrate' that is part of it." (citation omitted));

20  *Metalclad Corp.*, 109 Cal. App. 4th at 1717–18 ("[I]t is well established that a party may not avoid

21  broad language in an arbitration clause by attempting to cast its complaint in tort rather than

22  contract." (alteration in original) (citation omitted)); *Franklin*, 998 F.3d at 875 (compelling

23  plaintiff to arbitrate claims rooted in an underlying contract despite complaint failing to allege the

24  existence of the contract); *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (2020) (same).

25         As this Court has explained, a signatory cannot have it both ways: "it cannot on the one

---

[3] *See also Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1714 (2003) ("The federal circuits that have considered the doctrine of equitable estoppel have uniformly accepted it, in appropriate factual circumstances, as a basis for compelling signatories to a contract containing an arbitration clause to arbitrate their claims against nonsignatories.").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which

2   contains an arbitration provision, but on the other hand, deny the arbitration provision's

3   applicability because the defendant is a non-signatory." *Mance*, 901 F. Supp. 2d at 1156 (citation

4   omitted).

5       Two kinds of equitable estoppel support a non-signatory's right to compel arbitration:

6   (1) when the signatory's claims against a non-signatory arise out of the underlying contract; and

7   (2) when the non-signatory's conduct is intertwined with a signatory's conduct. *Mance*, 901 F.

8   Supp. 2d at 1155-56; *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1176 (N.D.

9   Cal. 2011) (Ware, J.) (same).  Both theories of equitable estoppel apply here.  Plaintiffs' claims

10  against GI Partners all rely on the Contracts; and GI Partners' alleged conduct is completely

11  intertwined with that of CBR.  Plaintiffs should be compelled to arbitrate their claims.

12      **1.    <u>The Claims against GI Partners Rely on the Contracts</u>**

13      Courts consistently hold that a plaintiff's claims rely on a written agreement, and that

14  arbitration is appropriate, where the claims reference or presume the existence of the agreement.

15  *Franklin*, 998 F.3d at 876 (compelling signatory plaintiff to arbitrate claims against non-signatory

16  defendant where claims were "intimately founded in and intertwined with" underlying contract);

17  *Mance*, 901 F. Supp. 2d at 1155-54 (manufacturer, though not a signatory to contract, could

18  compel buyer to arbitrate because buyer's claim referenced and relied upon the underlying sales

19  contract); *Boucher v. All. Title Co., Inc.*, 127 Cal. App. 4th 262, 272-73 (2005) (plaintiff was

20  equitably estopped from avoiding arbitration where claims against non-signatory relied on, made

21  reference to, and presumed existence of employment agreement).

22      Here, all of Plaintiffs' claims against GI Partners arise out of the Contracts between

23  Plaintiffs and CBR.  Indeed, each of Plaintiffs' claims is predicated on the increase in annual cord

24  blood storage fees governed by the Contracts:

25      • **CLRA (Count IV):**  alleging that GI Partners violated the CLRA through CBR's
        purported representations to Plaintiffs "that annual cord blood storage fees [were] fixed
26      [under the Contracts], when they are not" (SAC ¶¶ 203-04);

27      • **UCL (Count V):**  alleging that GI Partners violated the UCL because it "increase[d]
28      the annual storage fees" in the Contracts over time (SAC ¶ 237);

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

- **NY GBL § 349 (Count VII):**  alleging that GI Partners "increase[d] the annual storage fees" set by the Contracts (*see, e.g.*, SAC ¶¶ 260-61);

- **FDUTPA (Count IX):**  alleging that "GI Partners increase[d] the fixed annual storage fees" set by the Contracts (SAC ¶ 296);

- **NJSA (Count X):**  alleging that GI Partners "deceptively and unlawfully increas[ed] the annual storage fees" set by the Contracts (SAC ¶ 318);

- **Fraudulent Concealment (Count XI):**  alleging that GI Partners fraudulently concealed that it and CBR "would covertly raise cord blood storage fees" (SAC ¶ 333);

- **Unjust Enrichment (Count XIII):**  alleging that it would be inequitable for GI Partners to "retain the profits . . . obtained in connection with the excess annual cord blood storage fees" above the amounts set by the Contracts (SAC ¶ 354);

- **Conversion (Count XIV):**  alleging that GI Partners unlawfully retained "amounts paid in excess of what [Plaintiffs] owed [under the Contracts] for annual storage fees" (SAC ¶ 364); and

- **Money Had And Received (Count XV):**  alleging that GI Partners improperly retained "annual storage fee payments in amounts in excess of what was actually owed" under the Contracts (SAC ¶ 370).

Where a plaintiff asserts claims that rely on contract terms, as Plaintiffs do here, he or she is equitably estopped from repudiating the arbitration clause in that same contract.  In *Boucher*, for example, a terminated employee sued his former employer (Financial) and the company to whom his former employer's operations had been transferred (Alliance), alleging various wage and hour and other claims.  127 Cal. App. 4th at 265.  There was an arbitration clause in the agreement between plaintiff and Financial.  *Id.*  Financial and Alliance both petitioned to compel arbitration, but the trial court compelled arbitration as to Financial only.  *Id.* at 266.

The Court of Appeal reversed the denial as to Alliance, holding that because "[p]laintiff's claims against [Alliance] rely on, make reference to, and presume the existence of the June 5, 2003, employment agreement with Financial," the plaintiff could not avoid the arbitration clause in the same agreement.  127 Cal. App. 4th at 272; *see also id.* at 272-73 ("Each of the foregoing claims *makes reference to and relies on* the June 5, 2003, employment agreement. . . . Under these circumstances, plaintiff's claims against defendant are intimately founded in and intertwined with the June 5, 2003, employment agreement; therefore, he is equitably estopped from avoiding

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    arbitration of his causes of action against defendant." (emphasis added)).

2         Not only do Plaintiffs' claims against GI Partners rely on the Contracts, the claims simply

3    cannot exist absent the Contracts.  Plaintiffs could not be charged "excess" annual cord blood

4    storage fees if there were no contract provision relating to those fees.  Accordingly, Plaintiffs are

5    equitably estopped from avoiding the Contracts' arbitration provisions.  *Franklin*, 998 F.3d at 876

6    (applying equitable estoppel because the signatory's claims "cannot stand on their own against

7    [the non-signatory]" absent the underlying contract); *Pac. Fertility Ctr. Litig.*, 814 F. App'x at 209

8    (applying equitable estoppel because signatory's claims "are [not] fully viable without reference to

9    the terms of [the contract]" (second alteration in original) (citation omitted)); *Ma,* 2021 WL

10   2190912, at *9 (rejecting argument that failing to plead breach of contract claims against a non-

11   signatory prevents application of equitable estoppel); *Metalclad Corp*, 109 Cal. App. 4th at 1718

12   (rejecting artful pleading of tort claims to defeat arbitration agreement because "[t]he tort

13   claims . . . are 'based on the same facts and are inherently inseparable'" from the contract (citation

14   omitted)).  Plaintiffs have no claims against GI Partners that exist independently of the Contracts.

15   This case should be sent to arbitration.

16          **2.    GI Partners' Alleged Conduct Is Intertwined with CBR's Alleged
                    Conduct and Contractual Obligations**

17

18          Plaintiffs' claims against GI Partners should be sent to arbitration for an additional,

19   independent reason: they are inexorably intertwined with CBR's alleged conduct and contractual

20   obligations.  Indeed, of the nine claims asserted against GI Partners, six are asserted jointly against

21   CBR and GI Partners.  (*See* Count IV (CLRA); Count V (UCL); Count VII (NY GBL § 349);

22   Count IX (FDUTPA); Count X (NJSA).)  And the three remaining claims asserted against GI

23   Partners (unjust enrichment, conversion and money had and received) are all based on CBR's

24   alleged conduct, which Plaintiffs claim caused certain profits to be distributed from CBR to GI

25   Partners in its capacity as an investor:

26        • **Unjust Enrichment (Count XIII):**  Plaintiffs allege that GI Partners wrongfully
            retained "profits, benefits, or other compensation obtained in connection with the
27          excess annual cord blood storage fees." (SAC ¶ 354.)  According to the SAC, these
            "excess" storage fees were automatically and unilaterally charged and collected by
28          CBR pursuant to the Contracts, and then "shared with or transferred [by CBR] to GI

Partners."  (*Id.* ¶¶ 49, 361.)

- **Conversion (Count XIV):**  Plaintiffs claim that GI Partners unlawfully converted "excess money" that CBR charged and collected from Plaintiffs, and then "shared with or transferred to GI Partners."  (SAC ¶¶ 360-62.)

- **Money Had And Received (Count XV):**  Plaintiffs allege that they "paid money to Defendant CBR for annual storage fees . . . . Defendant CBR charged and collected this money from Plaintiffs . . . which were shared with or transferred to GI Partners."  (SAC ¶¶ 367-68.)

Nowhere in the SAC do Plaintiffs allege that GI Partners acted independently vis-à-vis Plaintiffs.  Where GI Partners is alleged to have acted at all, it is alleged to have done so in concert with CBR.  (SAC ¶¶ 60, 217, 332-38, 361.)  Indeed, Plaintiffs expressly allege that GI Partners never contracted with, communicated with, or received money directly from Plaintiffs.  (*Id.* ¶¶ 101, 118, 131, 361-62, 368.)  Instead, Plaintiffs claim that GI Partners "collud[ed] with CBR" regarding the annual storage fees (*id.* ¶ 60); engaged in fraudulent concealment with CBR regarding the same (*id.* ¶¶ 333-39); generally acted in concert with CBR to increase the storage fees (*id.* ¶¶ 217, 241); and received some amount of profit based on the storage fees CBR charged (*id.* ¶¶ 361).

These allegations of intertwined conduct require arbitration of Plaintiffs' claims against GI Partners.  *See Metalclad Corp.*, 109 Cal. App. 4th at 1718-19 (reversing order denying non-signatory's motion to compel arbitration where plaintiff alleged that non-signatory colluded with its subsidiary, a signatory, to obtain the fraudulent contract); *Cf. Pac. Fertility Ctr. Litig.*, 814 F. App'x at 209 (finding equitable estoppel should not apply to one defendant, despite applying it to other defendants, in part because "Plaintiffs . . . do not allege collusion between [this] and the other defendants, or a pattern of concealment involving [this defendant]").

### B.    Plaintiffs' Claims Fall Within The Scope Of The Arbitration Clause

Plaintiffs' claims against GI Partners are squarely within the type of claims covered by the arbitration provisions in the Contracts.

A court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).  "The

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

GI PARTNERS' NOTICE OF JOINDER AND MOTION TO COMPEL ARBITRATION OR DISMISS

1    burden is on 'the party opposing arbitration to demonstrate that an arbitration clause *cannot* be

2    interpreted to require arbitration of the dispute.'"  *Buckhorn v. St. Jude Heritage Med. Grp.*, 121

3    Cal. App. 4th 1401, 1406 (2004) (citation omitted).

4         Plaintiffs cannot make that showing here.  As set forth above, the claims against GI

5    Partners all arise from, depend upon, and are closely intertwined with the Contracts.  (*See supra* §

6    III.A.)  All of Plaintiffs' claims are rooted in the annual cord blood storage fee provisions of the

7    Contracts between Plaintiffs and CBR.

8         The arbitration clause in the Contracts reaches "[a]ny dispute or controversy" involving

9    CBR or its services.  (Dkt. No. 38-2 at 1, 8; RJN In Support of CBR's Motion, Ex. 1 at 1; Dkt. No.

10   38-1 at 4.)  Non-signatories are also expressly bound by it.  (Dkt. No. 38-2 at 8 (arbitration clause

11   binding on "you and CBR and your and [CBR's] heirs, personal representatives, successors and

12   permitted assigns").  This language encompasses the claims against GI Partners; in fact, a

13   plaintiff's allegations "need only 'touch matters' covered by the contract containing the arbitration

14   clause" and "all doubts are to be resolved in favor of arbitrability."  *Simula, Inc. v. Autoliv, Inc.*,

15   175 F.3d 716, 721 (9th Cir. 1990) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*

16   *Inc.*, 473 U.S. 614, 624 n.13 (1985)).  This presumption is even stronger when a signatory is the

17   party trying to avoid the arbitration clause.  *See Mance*, 901 F. Supp. 2d at 1155 ("[C]ourts have

18   generally found . . . [that] arbitration is more likely to be attained when the party resisting

19   arbitration is a signatory." (second alteration in original) (citation omitted)).

20        Compelling arbitration also vindicates the strong presumption against artful pleading of

21   non-signatories and non-contract claims to defeat an otherwise valid arbitration agreement.  *See,*

22   *e.g.*, *Ma*, 2021 WL 2190912, at *9; *Mance*, 901 F. Supp. 2d at 1155-56; *Franklin*, 998 F.3d at 875;

23   *Pac. Fertility Ctr. Litig.*, 814 F. App'x at 209; *Metalclad Corp.*, 109 Cal. App. 4th at 1718

24   (allowing plaintiffs to plead around arbitration agreements would render them "meaningless" and

25   allow "the federal policy in favor of arbitration [to be] effectively thwarted" (citation omitted)).

26        Here, Plaintiffs are trying to avoid arbitration by pleading non-contract claims against GI

27   Partners.  Indeed, in both their Complaint [Dkt. No. 1] and (first) Amended Complaint [Dkt. No.

28   26] ("FAC"), Plaintiffs claimed that GI Partners was an alter ego of CBR and asserted breach of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   contract claims against it.  (Compl. ¶¶ 25-29; FAC ¶¶ 26-30.)  *After* GI Partners informed

2   Plaintiffs that their alter ego allegations provided an additional basis for compelling arbitration,

3   however, Plaintiffs abandoned the alter ego theory and their contract claims against GI Partners—

4   trading them for tort and restitution claims and emphasizing the fact that GI Partners had no

5   contractual or other relationship with Plaintiffs.  (*See* Declaration of Casey B. Sypek ("Sypek

6   Decl.") Ex. A at 1.)  The Court should reject Plaintiffs' artful pleading for what it is: an improper

7   attempt to foist investor liability on GI Partners and escape the arbitration provisions in the

8   Contracts.  Plaintiffs are equitably estopped from using GI Partners as a foil to avoid their

9   arbitration obligations.

10  **IV.    MOTION TO DISMISS**

11          If the Court does not compel this dispute to arbitration, then it should dismiss all claims

12  against GI Partners for failure to state a claim under Rule 12(b)(6).  To avoid unnecessary

13  duplication of facts and arguments already contained in CBR's Motion, GI Partners joins

14  Section III of CBR's Motion (Motion to Dismiss), and adopts and incorporates as its own all the

15  asserted facts and legal arguments made therein.  For the additional reasons set forth below, all of

16  Plaintiffs' claims against GI Partners should be dismissed.

17          **A.    All Claims Against GI Partners Fail Because Plaintiffs Do Not Allege That GI Partners Is Subject To Investor Liability**

18

19          Plaintiffs do not allege any independent conduct or actions by GI Partners—only that GI

20  Partners, as an investor in CBR, benefitted financially from CBR's alleged wrongful conduct.

21  (*See supra* §§ II, III.A.2.)  Absent an alter ego relationship (which Plaintiffs have disclaimed and

22  do not allege), there can be no such investor liability.  Accordingly, all of Plaintiffs' claims against

23  GI Partners fail.

24          As a general rule, investors are not liable for actions of the companies in which they invest.

25  *See, e.g.*, *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American

26  corporate law is that the corporation and its shareholders are distinct entities."); *United States v.*

27  *Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in

28  our economic and legal systems' that a parent corporation . . . is not liable for the acts of its

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  subsidiaries." (citation omitted)).  "[I]n certain limited circumstances," however, "the veil

2  separating affiliated entities may be pierced to impute liability from one entity to the other."

3  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015).  *See also Cascade Energy & Metals

4  Corp. v. Banks*, 896 F.2d 1557, 1576 (10th Cir. 1990) (the corporate veil should be pierced only

5  "reluctantly and cautiously"); *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212-13

6  (1992) ("It is the plaintiff's burden to overcome the presumption of the separate existence of the

7  corporate entity.")

8        To pierce the corporate veil, a plaintiff must plead facts showing that the investor entity

9  exercises such direct and pervasive control over every facet of the company's operations that the

10  corporate form is abandoned and the two merge into a single legal entity.  *Ranza*, 793 F.3d at 1073

11  (dismissing claims for failure to plead facts sufficient to support an inference of pervasive

12  control); *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) (being "an active parent

13  corporation involved directly in decision-making about its subsidiaries' holdings" is insufficient to

14  plead alter ego liability); *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1141-42

15  (C.D. Cal. 2015) (parent company not alter ego unless it exercises "abusive" or "manipulative

16  control" by "dictat[ing] every facet of the subsidiary's business" (citation omitted)).

17        Here, there can be no alter ego liability because the SAC fails to allege that GI Partners

18  exercised "pervasive control" over "every facet" of CBR's day-to-day operations (and it does not).

19  The SAC merely concludes that GI Partners asserts "some control over CBR's operations and/or

20  knew of and participated in the scheme to deceptively and unlawfully increase [Plaintiffs'] fixed

21  annual storage fees."  (SAC ¶¶ 139-41.)  As a matter of law, these allegations cannot establish

22  alter ego liability.  *Ranza*, 793 F.3d at 1074 (no alter ego liability despite parent "exercis[ing]

23  control over [the subsidiary's] overall budget and ha[ving] approval authority for large

24  purchases"); *Unocal*, 248 F.3d at 927 (collecting cases where no alter ego liability was found

25  despite substantial levels of control); *Gerritsen*, 116 F. Supp. 3d at 1142 (pleading facts consistent

26  with "the usual practice of corporations [paying] dividends to shareholders" is insufficient to plead

27  alter ego liability (citation omitted)); *Holly v. Alta Newport Hosp., Inc.*, ___ F. Supp. 3d ___, 2020

28  WL 1853308, at *3 (C.D. Cal. Apr. 10, 2020) (conclusory allegations that an entity "owned and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   operated and [was] responsible for the administration, operation and business conducted by

2   [defendant]" insufficient to plead alter ego or agency liability).[4]

3          Plaintiffs' failure to allege alter ego liability sufficient to pierce the corporate veil is no

4   mistake.  In fact, Plaintiffs previously pled—then abandoned—allegations that GI Partners was an

5   alter ego of CBR.  (*Compare* FAC ¶¶ 28-30 (alleging agency and/or alter ego relationship;

6   pleading commingling of resources and joint ventures with CBR) *with* SAC (removing all

7   agency/alter ego allegations).)  Plaintiffs and their counsel—having now filed their second Rule

8   11-signed pleading on the alter ego issue—should be bound by that abandonment.  Plaintiffs

9   should not be given another opportunity to amend and re-plead the alter ego allegations they

10  intentionally abandoned after discussions with GI Partners' counsel.  (*See* Sypek Decl. at 1-2.)

11         The SAC also pleads facts entirely inconsistent with alter ego status.  For example,

12  Plaintiffs allege that key corporate formalities were maintained after GI Partners invested in CBR.

13  (SAC ¶ 33 ("CBR has continued to operate under the CBR brand name").  Plaintiffs also allege

14  that GI Partners is a mere "silent investor."  (*Id.* ¶ 67.[5])  These allegations further compel the

15  dismissal of Plaintiffs' claims.  *See, e.g.*, *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89

16  (9th Cir. 2001) ("We have held that a plaintiff can—as [he] has done here—plead himself out of a

17  claim by including unnecessary details contrary to his claims.").

18         The SAC fails to plausibly allege that GI Partners can be subject to liability for CBR's

19  actions vis-à-vis Plaintiffs.  Thus, all claims against GI Partners should be dismissed.

---

20  [4] Nor is Plaintiffs' allegation that GI Partners is a "lead investor" sufficient to establish alter ego

21  liability.  "Lead investor" is a term of art that refers to the investor who provides the largest or
    initial investment.  *See PostX Corp. v. Secure Data in Motion, Inc.*, 2005 WL 8177634, at *4 n.3

22  (N.D. Cal. Aug. 17, 2005) (lead investor is the "investor that provides the largest dollar amount
    and sets the terms of the company's financings.").  It does not create an alter ego relationship.

23  *Ranza*, 793 F.3d at 1074 ("A parent corporation may be directly involved in financing and macro-
    management of its subsidiaries . . . without exposing itself to a charge that each subsidiary is

24  merely its alter ego." (citation omitted)).

25  [5] "Silent" is another term of art that refers to an investor or partner that invests money, but is not
    pervasively (or even substantially) involved in the management of the business.  *See, e.g.*,

26  *Stockwell v. United States*, 80 U.S. 531, 562 (1871) (company's unlawful acts cannot be attributed
    to a silent partner, which "tak[es] no part in the management of the affairs of the firm"); *Partner*,

27  BLACK'S LAW DICTIONARY (11th ed. 2019) (a "silent partner" is one "who shares in the profits but

28  who has no active voice in management of the firm").

1

### B.   The Quasi-Contract Claims Fail

2      Along with Plaintiffs' alter ego theory, the SAC abandoned Plaintiffs' contract-based

3 claims against GI Partners.  (*Compare* FAC pp. 35-40 *with* SAC pp. 41-45.)  In their place, the

4 SAC asserts two quasi-contract claims against GI Partners: unjust enrichment and money had and

5 received.  (SAC ¶¶ 69-72).  *See, e.g.*, *In re Univ. of S. Cal. Tuition & Fees COVID-19 Refund*

6 *Litig.*, 2021 WL 3560783, at *7 (C.D. Cal. Aug. 6, 2021) ("[U]njust enrichment is not an

7 independent cause of action under California law, it is treated as a quasi-contract claim for

8 restitution."); *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998-99 (N.D. Cal. 2020) (unjust

9 enrichment and money had and received claims are quasi-contract claims); *Am. Video Duplicating,*

10 *Inc. v. City Nat'l Bank*, 2020 WL 6882735, at *6 (C.D. Cal. Nov. 20, 2020) ("[C]ourts

11 'interchangeably' use the terms unjust enrichment, quantum meruit, and implied contract, meaning

12 those claims 'stand'—and fall—together.").

13      Quasi-contract claims, like those Plaintiffs bring here, cannot be asserted based on subjects

14 covered by a contract unless those claims are pled in the alternative to the contract and the plaintiff

15 expressly disclaims the contract in the alternative pleadings.  *Saroya*, 503 F. Supp. 3d at 998–99

16 ("[A] plaintiff may not plead the existence of an enforceable contract and simultaneously maintain

17 a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be

18 unenforceable or invalid.").  This is true even where a defendant is not a party to the contract

19 covering that subject.  *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App.

20 4th 151, 172 n.25, 173 (2001) (dismissing quasi-contract claims against defendants who were

21 "strangers" to the relevant contracts because "[t]here cannot be a valid express contract and an

22 implied contract, each embracing the same subject . . ." (citation omitted)).

23      The SAC affirmatively pleads both contract and quasi-contract claims based on the exact

24 same subject: the increased annual cord blood storage fees.  (*See* SAC ¶¶ 347-56, 365-74.)

25 Plaintiffs cannot maintain quasi-contract claims based on the same subject matter as a contract

26 claim; thus, the quasi-contract claims fail as a matter of law.

### C.   Plaintiffs Fail To Allege Fraud-Based Claims Against GI Partners

27

28      A claim for fraud or fraudulent concealment requires that the defendant knew of the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

material fact and either misrepresented or concealed that fact to induce reliance by the plaintiff. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (elements for fraud); *Bank of Am. Corp. v. Superior Court*, 198 Cal. App. 4th 862, 870 (2011) (finding duty to disclose is an element of fraud based on concealment claim). Fraud-based claims are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). *Kearns*, 567 F.3d at 1124-25; *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538-39 (D.N.J. 2011). Rule 9(b) requires the complaint to set forth "'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

Accordingly, to survive a motion to dismiss on their fraudulent concealment and misrepresentation/omission-based statutory consumer protection claims (UCL, CLRA, FDUPTA, NJCFA and GBL), Plaintiffs must identify a material representation or omission that GI Partners had a duty to disclose and must satisfy the requirements of Rule 9(b). Plaintiffs fail to meet these basic requirements, and their fraud-based claims should be dismissed.

### 1.   **Plaintiffs Fail to Allege an Actionable Misrepresentation or Omission**

Plaintiffs do not identify any specific representation or omission by GI Partners that they relied upon to their detriment. Indeed, Plaintiffs admit that they never had or received *any* communications from GI Partners. (SAC ¶¶ 101, 118, 131.) In the SAC section titled "Fed. R. Civ. P. Rule 9(b) Allegations" detailing the "who, what, when, where, how and why" of Plaintiffs' fraud-based claims, Plaintiffs do not make *any* allegations (not even conclusory ones) about misrepresentations or omissions by GI Partners. (*See id.* ¶¶ 136-43.) The alleged misrepresentations and omissions about the annual cord blood storage fees are all attributed to CBR—not GI Partners. (*See id.*). Nor are there any alleged statements or omissions by GI Partners in the causes of action themselves; Plaintiffs point only to the Contracts (to which GI Partners is not a party), CBR's marketing and advertising materials, and statements from CBR's sales representatives. (*Id.* ¶¶ 207-09 [CLRA]; 234-36 [UCL]; 257-60 [GBL]; 296, 298 [FDUPTA]; 316 [NJCFA].)

The SAC does not allege any direct conduct by GI Partners vis-à-vis Plaintiffs—alleging only that GI Partners was a "Lead Investor" that "asserted some control" over CBR's operations

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  and/or knew of and participated in the decision to increase the purportedly fixed annual storage

2  fees.  (SAC ¶¶ 139-41.).  These allegations are wholly insufficient to plead a claim under

3  Rule 9(b).  *See Kearns*, 567 F.3d at 1125-26 (affirming dismissal of CLRA and UCL claims where

4  the plaintiff failed to plead any particular misrepresentation relied upon, when those

5  misrepresentations were made, and by whom); *Guerrero v. Target Corp*., 889 F. Supp. 2d 1348,

6  1355–57 (S.D. Fla. 2012) (dismissing misrepresentation-based claims under FDUTPA because

7  plaintiff relied upon conclusory allegations without providing specific facts); *Daloisio v. Liberty

8  Mut. Fire Ins. Co.*, 754 F. Supp. 2d 707, 709-10 (D.N.J. 2010) (dismissing NJCFA claim where

9  plaintiff failed to plead who made fraudulent misrepresentations, when they were made, and what

10  the misrepresentations were).

### 2.   Plaintiffs Fail to Allege That GI Partners Owed a Duty to Disclose

12  To allege a duty to disclose, a plaintiff must show a defendant (1) is or was in a fiduciary

13  relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the

14  plaintiff; (3) actively concealed a material fact from the plaintiff; or (4) made partial

15  representations but also suppressed some material facts.  *LiMandri v. Judkins*, 52 Cal. App. 4th

16  326, 336 (1997).

17  Plaintiffs do not even attempt to allege that GI Partners owed them such a duty.  Nor could

18  they.  There were no transactions or any other relationship between Plaintiffs and GI Partners.

19  (SAC ¶¶ 101, 118, 131.)  As an investor in CBR, GI Partners owed no cognizable duties to CBR's

20  customers.  *See, e.g.*, *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1059 n.3 (9th

21  Cir. 2008) (affirming order dismissing fraudulent concealment claim where there was no

22  transactional relationship between the parties and, therefore, no duty to disclose); *LiMandri*, 52

23  Cal. App. 4th at 336-37 (dismissing nondisclosure claims where plaintiff failed to allege an

24  existing or anticipated contractual relationship or other relationship giving rise to a duty to

25  disclose).  Without a duty to disclose, the concealment-based claims fail.

### 3.   Plaintiffs Have Not Pled Reliance or Causation

27  The fraud-based claims also fail because Plaintiffs have not pled the requisite elements of

28  reliance or causation.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326-27 (2011) ("[A]

1  plaintiff 'proceeding on a claim of misrepresentation as the basis of his or her UCL action must

2  demonstrate actual reliance on the allegedly deceptive or misleading statements . . . .'" (citation

3  omitted)); *Bank of Am. Corp.*, 198 Cal. App. 4th at 870 (specifying that reliance and causation are

4  elements of a fraudulent concealment claim); *see also In re Sony Gaming Networks & Customer*

5  *Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 969 (S.D. Cal. 2012) ("For fraud-based claims

6  under [the UCL and CLRA] the named Class members must allege actual reliance . . . ."); *Kia*

7  *Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. Dist. Ct. App. 2008) (holding that

8  FDUTPA requires a showing of causation).  Plaintiffs have not pled these elements in their fraud-

9  based claims.

10       Plaintiffs claim that, had they known their annual storage fees were not fixed and would

11  increase, they would not have purchased cord blood services from CBR or would have paid less

12  for those services.  (*See* SAC ¶¶ 86, 168.)  Plaintiffs allege that their justifiable reliance is

13  "evidenced by their purchase of the cord blood services" (i.e., entering into the Contracts).  (*Id.*

14  ¶ 339.)  Plaintiff Koneru entered into a Contract in 2011.  (*Id.* ¶ 120.)  Plaintiff Cohen entered into

15  a first Contract in 2012 and a second Contract in 2013.  (*Id.* ¶ 103.)  Plaintiff Vaccarella entered

16  into a Contract in 2015.  (*Id.* ¶ 90).  Plaintiffs' purported harm (entering the Contracts with CBR)

17  could not possibly have been caused by any statements or omissions by GI Partners, who did not

18  acquire CBR (and had no connection to CBR or Plaintiffs) until 2018.

19       The SAC alleges no facts connecting GI Partners to Plaintiffs' decision to enter the

20  Contracts.  Accordingly, the fraud-based claims fail.  *See Orcilla v. Big Sur, Inc.*, 244 Cal. App.

21  4th 982, 1008 (2016) (dismissing fraud claim where complaint did not "allege a causal

22  relationship between the alleged misrepresentation and their alleged damages"); *Patrick v. Alacer*

23  *Corp.*, 167 Cal. App. 4th 995, 1017 (2008) (dismissing fraud claim for failure to allege a causal

24  connection between misrepresentations and damages); *Goehring v. Chapman Univ.*, 121 Cal. App.

25  4th 353, 364-66 (2004) (same).  The fraud-based claims against GI Partners are meritless.

26       ### D.    The Improper-Retention-Of-Benefits Claims Fail

27       Plaintiffs' claims for conversion, unjust enrichment, and money had and received also fail

28  for additional, independent reasons: (1) Plaintiffs do not plead a definite sum of money; and

MILLER BARONDESS, LLP

ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   (2) Plaintiffs do not allege that this money was transferred directly from Plaintiffs to GI Partners.

2   **1.   Plaintiffs Do Not Allege a Definite Sum of Money**

3   Each of these claims requires that Plaintiffs plead facts showing an identified, definite sum

4   of money was transferred to GI Partners.  *See Saroya*, 503 F. Supp. 3d at 999-1000 (dismissing

5   conversion and money had and received claims with prejudice because plaintiff pled only

6   approximate or estimated amounts received by defendants); *Thornton v. Micro-Star Int'l Co., Ltd.*,

7   2017 WL 10621210, at *13 (C.D. Cal. Aug. 21, 2017) (dismissing unjust enrichment, restitution,

8   quasi-contract, and common count claims "[b]ecause plaintiffs fail to allege that defendant owes

9   them and class members a specific amount"); *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d

10  1031, 1047-48 (N.D. Cal. 2010) (dismissing money had and received claims because plaintiffs

11  sought damages in the amounts of "early termination fees paid during [the class] period," which

12  "fails to state a 'definite sum' to which Plaintiffs are justly entitled"); *Univ. of S. Cal. Tuition &*

13  *Fees COVID-19 Refund Litig.*, 2021 WL 3560783, at *9 ("[W]hen the money is not identified and

14  not specific, 'the action is to be considered as one upon contract or for debt and not for

15  conversion.'" (citation omitted)).

16  The SAC pleads no definite sum of money that GI Partners received.  (*See, e.g.*, SAC

17  ¶ 368 (alleging that unspecified amounts of increased annual cord blood storage fees "increase[d]

18  CBR's] profits, which were shared with or transferred to the GI Partners").  The conversion,

19  unjust enrichment, and money had and received claims therefore fail.

20  These claims should be dismissed with prejudice because it will be impossible for

21  Plaintiffs to plead precisely how much of the purportedly "excess" annual cord blood storage fees

22  actually became CBR's profits—much less the specific amount (if any) of those profits that were

23  actually transferred to GI Partners.  Indeed, Plaintiffs allege that the increased fees collected by

24  CBR were used to:  (1) fund business operations (*see, e.g.*, SAC ¶ 361); (2) "fund unrelated

25  business expenses and marketing ventures" (*see, e.g.*, *id.* ¶ 15); (3) fund "customer service

26  infrastructure, or to fund clinical studies" (*see, e.g.*, *id.* ¶ 69); (4) "purchase new companies to add

27  to [CBR's or GI Partners'] life sciences inventory" (*see, e.g.*, *id.* ¶ 71); (5) "establish[] the Family

28  Health Registry™, which helps match families with researchers conducting clinical trials";

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   (6) "maintain[] a team of Certified Genetic Counselors"; (7) "partner[] with and provide[]

2   financial support to reputable research institutions" (*see, e.g.*, *id.* ¶ 51); and (8) "invest[] in

3   [CBR's] call center" (*see, e.g.*, *id.* ¶ 52).

4        These myriad uses for the increased annual cord blood storage fees make it impossible for

5   Plaintiffs to identify:  (1) the specific amount of the increased annual cord blood storage fees that

6   became CBR's profits (as opposed to being spent on these other uses); or (2) the specific portion

7   of those profits that were then transferred to GI Partners.  Accordingly, the claims should be

8   dismissed with prejudice.  *See, e.g.*, *Saroya*, 503 F. Supp. 3d at 999-1000; *Sprewell*, 266 F.3d at

9   988-89 (dismissing claims where plaintiff pled "details contrary to his claims").

10        **2.   Plaintiffs Do Not Plead That Money Was Transferred Directly from Plaintiffs to GI Partners**

11

12        Claims for conversion, unjust enrichment, and money had and received must also be

13   predicated on transfers of money from plaintiffs *directly* to defendants.  *See Am. Video

14   Duplicating*, 2020 WL 6882735, at *6 ("Plaintiff's indirect conferral of a benefit on Defendants is

15   insufficient to satisfy the first element of a claim for unjust enrichment[.]" (alteration in original)

16   (citation omitted)); *Sunpower Corp. v. Sunpower Cal., LLC*, 2021 WL 2781245, at *3 (S.D. Cal.

17   July 2, 2021) (dismissing counterclaims because "Defendants merely allege that 'part of the profits

18   generated <u>by the dealer</u>' have been passed to Plaintiff <u>by the dealer</u>.  But Defendants do not allege

19   that Plaintiff unjustly received a benefit <u>from Defendants</u>" (first emphasis added)); *Barrett Bus.

20   Servs., Inc. v. Workers' Comp. Appeals Bd.*, 204 Cal. App. 4th 597, 602 (2012) (conversion claims

21   are based on transfers "directly" from plaintiff to defendant or its agent (citation omitted));

22   *Gemcap Lending I, LLC v. Crop USA Ins. Agency, Inc.*, 2014 WL 12589335, at *8-9 (C.D. Cal.

23   Jan. 14, 2014) (conversion claim valid if definite sums of money were transferred "directly" from

24   plaintiff to defendant or its agent).

25        The SAC fails to plausibly allege that any profits allegedly retained by GI Partners were

26   transferred directly from Plaintiffs to GI Partners.  Indeed, the SAC plainly alleges that CBR

27   received the increased annual cord blood storage fees from Plaintiffs and that GI Partners

28   indirectly received some unidentified amount of profits from CBR.  (*See, e.g.*, SAC ¶¶ 361, 368).

1    Thus, the claims should be dismissed with prejudice.  *Am. Video Duplicating*, 2020 WL 6882735,

2    at *6; *Sunpower Corp.*, 2021 WL 2781245, at *3.

3        **E.    The Statutory Consumer Protection Claims Fail For Additional Reasons**

4        On top of the reasons set forth above and in CBR's Motion, the statutory consumer

5    protection claims fail for additional, independent reasons.

6        **CLRA and FDUPTA.**  CLRA and FDUPTA claims require defendants to be direct

7    participants in the allegedly unlawful transactions.  *See Green v. Canidae Corp.*, 2009 WL

8    9421226, at *4 (C.D. Cal. June 9, 2009) (dismissing CLRA claims where defendant was not a

9    direct party to the transactions at issue); *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. &*

10   *Sales Practices Litig.*, 2012 WL 6062047, at *16 (C.D. Cal. Dec. 3, 2012) (dismissing FDUPTA

11   claims because defendant was "neither a seller of products nor a direct participant in sales of the

12   product").  GI Partners was not a direct participant in any of the transactions with Plaintiffs.  (*See,*

13   *e.g.*, SAC ¶¶ 361, 368.)  Thus, Plaintiffs' CLRA and FDUPTA claims fail.

14       **UCL.**  Because Plaintiffs have not adequately alleged any fraudulent conduct by GI

15   Partners, their claim under the "fraudulent" prong of the UCL fails.  *See Tyler v. PNC Bank, Nat'l*

16   *Ass'n*, 2011 WL 1750798, at *2 (N.D. Cal. Apr. 22, 2011) (finding that the failure to allege fraud

17   with particularity undermines a UCL claim based on the same fraudulent conduct).  Likewise, to

18   the extent their "unfair" UCL claim sounds in fraud, it also fails.  *See Kearns*, 567 F.3d at 1127

19   (finding no claim under the unfair prong was alleged where the complaint alleged a course of

20   fraudulent conduct but failed to meet the particularity requirements of Rule 9(b)).  Plaintiffs' claim

21   based on an "unfair" business practice also fails because they have not identified any legislative

22   policy to which the purportedly "unfair" practices are "tethered."  *See Levitt v. Yelp! Inc.*, 765 F.3d

23   1123, 1136 (9th Cir. 2014) (citation omitted).  Further, Plaintiffs' "unlawful" UCL claim fails

24   because Plaintiffs have not adequately pled a violation of the CLRA, as discussed above.  *See,*

25   *e.g.*, SAC ¶¶ 225; *see also Lopez v. Washington Mut. Bank, F.A.*, 302 F.3d 900, 907 (9th Cir.

26   2002) (requiring violation of a predicate law to support UCL claim); *Bhandari v. Capital One,*

27   *N.A.*, 2013 WL 1736789, at *10 (N.D. Cal. Apr. 22, 2013) ("Absent a cause of action to support

28   the UCL claim, the claim fails.").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    **GBL § 349**.  The GBL claim should be dismissed because Plaintiffs failed to allege a

2    monetary loss independent of the underlying Contracts.  *See Spagnola v. Chubb Corp.*, 574 F.3d

3    64, 74 (2d Cir. 2009) (affirming dismissal of GBL § 349 claim where plaintiff's claimed injury

4    from improper annual increases in insurance premiums was not separate from insurer's purported

5    breach of homeowner's policy); *Sokoloff v. Town Sports Int'l Inc.*, 778 N.Y.S.2d 9, 10 (N.Y. App.

6    Div. 2004) (granting motion to dismiss where plaintiff "d[id] not claim any kind of monetary loss

7    other than payment of her membership fees [under the contract]").  Here, Plaintiffs' alleged

8    damages—the annual storage fees they paid in excess of their expectations under the Contracts—

9    are the same as their losses caused by CBR's alleged breach of contract.  (SAC ¶¶ 257-71.)

10   Because Plaintiffs fail to allege a sufficient injury, the GBL § 349 claim fails.

11   **F.      Plaintiffs Cannot Maintain Claims Against GI Partners Based On
          Transactions That Pre-Date GI Partners' Investment In CBR**

12

13          To the extent any claims remain, all claims by Plaintiffs based on conduct that pre-dates GI

14   Partners' investment in CBR should be dismissed against GI Partners as a matter of law.  The

15   SAC alleges that:  (1) CBR has been operating since 1999; (2) Plaintiffs' contracts were signed

16   between 2011 and 2015; (3) CBR made misrepresentations to Plaintiffs between 2011 and 2017;

17   and (4) CBR began increasing annual cord blood storage fees (with prior notice to Plaintiffs) in

18   2017.  (SAC ¶¶ 110, 124.)  GI Partners did not invest in CBR until August 2018.  (*Id.* ¶ 6.)  GI

19   Partners could not possibly be liable for any conduct or harms that precede the date of its

20   investment in CBR.  This is common sense.  Accordingly, if any claims survive this motion, they

21   should be dismissed against GI Partners to the extent they are predicated on actions or damages

22   that occurred prior to August 2018.  *See In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F.

23   Supp. 161, 194–95 (C.D. Cal. 1976) ("[P]laintiffs have failed to state a claim against [defendant]

24   because they base their claims on transactions that occurred prior to the alleged culpable conduct

25   of [defendant]."); *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 605 (N.D. Cal. 1991)

26   ("Individuals who purchase prior to the performance of [defendant's] allegedly fraudulent acts

27   lack standing to complain about [defendant's] later misleading statements 'as they neither

28   purchased nor sold shares in reliance upon [defendant's] alleged misrepresentation or

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    concealment.'" (citation omitted)).

2    **V.**    **CONCLUSION**

3        For the foregoing reasons and the reasons set forth in CBR's Motion, which GI Partners

4    joins in its entirety, the Court should compel Plaintiffs to arbitrate their claims against GI Partners

5    or, in the alternative, dismiss all claims against GI Partners for failure to state a claim.

6

7    DATED:  December 10, 2021         MILLER BARONDESS, LLP

8

9                   By: _____

10                     CASEY B. SYPEK

11                     Attorneys for Defendant
                     GI PARTNERS

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400