DANIEL S. MILLER (State Bar No. 218214)
dmiller@millerbarondess.com
CASEY B. SYPEK (State Bar No. 291214)
csypek@millerbarondess.com
ERIK L. WILSON (State Bar No. 339111)
ewilson@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:    (310) 552-4400
Facsimile:    (310) 552-8400

Attorneys for Defendant
GI PARTNERS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

| | |
|---|---|
| AMY COHEN and KATHARINE VACCARELLA, and SIRISHA KONERU on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>CBR SYSTEMS, INC., GI PARTNERS, and DOES 1-10,<br><br>                Defendants. | **CASE NO. 4:21-cv-06527-HSG**<br><br>**REPLY IN SUPPORT OF DEFENDANT GI PARTNERS' NOTICE OF JOINDER AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(b)(6)**<br><br>Date:        March 31, 2022<br>Time:        2:00 PM<br>Crtrm.:      2, 4th Floor<br><br>Assigned for All Purposes to:<br>Hon. Haywood S. Gilliam, Jr., Crtrm. 2<br><br>Trial Date:      None Set |

*MILLER BARONDESS, LLP*
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     THIS CASE SHOULD BE SENT TO ARBITRATION ....................................... 2

    A.   The Claims Are Intertwined with and Dependent on the Contracts .......................... 3

    B.   The Arbitration Clause Reaches This Dispute ........................................................ 5

III.    PLAINTIFFS' CLAIMS AGAINST GI PARTNERS FAIL ................................. 6

    A.   Plaintiffs Concede There Is No Basis For Piercing The Corporate Veil ................. 6

        1.   Plaintiffs' Failure to Plead Alter Ego Dooms Their Claims ......................... 6

        2.   The Cooper Sale Is an Irrelevant Sideshow ................................................. 7

    B.   Plaintiffs' Claims Fail Because They Pre-Date GI Partners' Investment ................. 8

    C.   The Opposition Confirms That The Quasi-Contract Claims Fail ............................ 9

    D.   The Opposition Confirms That The Fraud-Based Claims Fail ............................. 10

        1.   Plaintiffs Do Not Identify any Misrepresentations or Omissions ............... 10

        2.   Plaintiffs Misstate *LiMandri*'s Duty to Disclose Standard ........................ 10

        3.   There Is No Plausible Theory of Reliance or Causation ............................. 11

    E.   The Improper-Retention-Of-Benefits Claims Fail ............................................. 13

        1.   Plaintiffs Must (and Do Not) Plead a Definite Sum of Money ................... 13

        2.   There Was No Direct Transfer of Money to GI Partners ............................ 14

    F.   The Statutory Consumer Protection Claims Fail For Additional Reasons ............. 14

IV.     CONCLUSION .................................................................................................. 15

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3
*Benas v. Baca*,
  2009 WL 4030526 (C.D. Cal. Aug. 26, 2009),
4
  *aff'd*, 433 F. App'x 524 (9th Cir. 2011) .................................................................. 13

5
*Breathe Techs., Inc. v. New Aera, Inc.*,
  2020 WL 4747896 (N.D. Cal. Aug. 17, 2020) ........................................................... 4
6

*Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*,
7
  332 F. App'x 565 (11th Cir. 2009) ........................................................................... 12

8
*de Lacour v. Colgate-Palmolive Co.*,
  338 F.R.D. 324 (S.D.N.Y. 2021) ............................................................................. 12
9

*Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
10
  488 F. Supp. 3d 904 (N.D. Cal. 2020) ...................................................................... 15

11
*Franklin v. Cmty. Reg'l Med. Ctr.*,
  998 F.3d 867 (9th Cir. 2021) ................................................................................. 4, 6
12

*Giovanelli v. D. Simmons Gen. Contracting*,
13
  2010 WL 988544 (D.N.J. Mar. 15, 2010) .................................................................. 9

14
*Hakopian v. Mukasey*,
  551 F.3d 843 (9th Cir. 2008) .................................................................................... 4
15

*Hodges v. Comcast Cable Commc'ns, LLC*,
16
  21 F.4th 535 (9th Cir. 2021) ............................................................................. 13, 15

17
*Holly v. Alta Newport Hosp., Inc.*,
  ___ F. Supp. 3d ___, 2020 WL 1853308 (C.D. Cal. Apr. 10, 2020) ............................. 8
18

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
19
  534 F. Supp. 3d 1067 (N.D. Cal. 2021) .................................................................... 11

20
*Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*,
  31 F.2d 265 (2d Cir. 1929) ....................................................................................... 8
21

*Kramer v. Toyota Motor Corp.*,
22
  705 F.3d 1122 (9th Cir. 2013) ............................................................................... 3, 5

23
*Lucas v. Breg, Inc.*,
  212 F. Supp. 3d 950 (S.D. Cal. 2016) ...................................................................... 12
24

*Ma v. Golden State Renaissance Ventures, LLC*,
25
  2021 WL 2190912 (N.D. Cal. May 31, 2021) ......................................................... 3, 6

26
*Mance v. Mercedes-Benz USA*,
  901 F. Supp. 2d 1147 (N.D. Cal. 2012) .................................................................. 3, 6
27

*Murphy v. DirecTV, Inc.*,
28
  724 F.3d 1218 (9th Cir. 2013) ............................................................................... 5, 6

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Ngo v. BMW of N. Am., LLC,*
    23 F.4th 942 (9th Cir. 2022).................................................................................. 6

*Nitsch v. DreamWorks Animation SKG Inc.,*
    100 F. Supp. 3d 851 (N.D. Cal. 2015) ................................................................... 5

*Philips v. Ford Motor Co.,*
    2015 WL 4111448 (N.D. Cal. July 7, 2015) ......................................................... 15

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.,*
    522 F.3d 1049 (9th Cir. 2008)................................................................................ 11

*Rhynes v. Stryker Corp.,*
    2011 WL 2149095 (N.D. Cal. May 31, 2011) ....................................................... 10

*Saroya v. Univ. of the Pac.,*
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ............................................................... 9, 14

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999).................................................................................... 6

*Spagnola v. Chubb Corp.,*
    574 F.3d 64 (2d Cir. 2009)..................................................................................... 15

*Stafford v. Rite Aid Corp.,*
    998 F.3d 862 (9th Cir. 2021).................................................................................... 5

*Thornton v. Micro-Star Int'l Co., Ltd.,*
    2017 WL 10621210 (C.D. Cal. Aug. 21, 2017) ..................................................... 14

*United States v. Bestfoods,*
    524 U.S. 51 (1998)................................................................................................... 7

**<u>STATE CASES</u>**

*Buckhorn v. St. Jude Heritage Med. Grp.,*
    121 Cal. App. 4th 1401 (2004)................................................................................. 5

*Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,*
    94 Cal. App. 4th 151 (2001).................................................................................... 9

*Cruz v. PacifiCare Health Sys., Inc.,*
    111 Cal. Rptr. 2d 395 (2001),
    *review granted and opinion superseded,* 34 P.3d 288 (2001),
    *aff'd in part, rev'd in part,* 30 Cal. 4th 303 (2003) ............................................. 12

*Garcia v. Pexco, LLC,*
    11 Cal. App. 5th 782 (2017).................................................................................... 4

*Goldman v. KPMG, LLP,*
    173 Cal. App. 4th 209 (2009).................................................................................. 4

*Gutierrez v. Girardi,*
    194 Cal. App. 4th 925 (2011).................................................................................. 13

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

iii

TABLE OF AUTHORITIES

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ............................................................................................... 15

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997) ................................................................................ 2, 10, 11

*Mares v. Baughman*,
  92 Cal. App. 4th 672 (2001) ......................................................................................... 13

*Orcilla v. Big Sur, Inc.*,
  244 Cal. App. 4th 982 (2016) ....................................................................................... 11

**STATE STATUTES**

N.Y. Gen. Bus. Law § 349 ................................................................................... passim

**RULES**

Local Rule 7-5 ............................................................................................................... 8

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# I.      <u>INTRODUCTION</u>

As set forth in the Motion, this case is about increased fees under Plaintiffs' Contracts with CBR.[1]  GI Partners is not a party to those Contracts.  GI Partners invested in CBR in August 2018, after Plaintiffs entered into the Contracts and after the fee increases began.  By Plaintiffs' own admission, GI Partners never communicated with Plaintiffs, and GI Partners is not an alter ego of CBR.  GI Partners does not belong in this case, and the Opposition does not show otherwise.

The reason Plaintiffs are suing GI Partners is obvious:  Plaintiffs are trying to avoid the arbitration provisions in their Contracts with CBR.  This does not work.  The doctrine of equitable estoppel compels Plaintiffs to arbitrate their claims against GI Partners.  The purpose of the doctrine is to prohibit plaintiffs from artfully impleading non-signatories to avoid their arbitration commitments—precisely what Plaintiffs are trying to do here.

Plaintiffs' Opposition dodges these issues, ignores GI Partners' case law, and does nothing to save Plaintiffs' claims.  After asserting contract claims against GI Partners in the original iterations of their complaint, and despite relying on the Contracts in every cause of action, Plaintiffs now argue that their claims are entirely independent of the Contracts.  This could not be farther from the truth.  Without the Contracts and the supposed "fixed" annual fees therein, there could be no claims based on increased fees.  Plaintiffs' claims against GI Partners are inextricably intertwined with the Contracts and the allegations against CBR.

In an attempt to defeat this Motion, Plaintiffs argue that only express third-party beneficiaries can benefit from equitable estoppel.  Not true.  Plaintiffs also claim that they need arbitration-related discovery into why GI Partners is not a third-party beneficiary.  But the Court already denied this improper request.  This case should be sent to arbitration.

Alternatively, the Court should dismiss GI Partners from this case with prejudice.  Plaintiffs' Opposition does nothing to overcome the fatal defects identified in the Motion.

Plaintiffs are attempting to hold GI Partners, an investor with which they have no

---

[1] All defined terms have the same meanings set forth in [Dkt. No. 51.]  GI Partners also joins and incorporates by reference herein all sections of CBR's Reply, except for section III.C.2.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GI PARTNERS' REPLY TO MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(b)(6)

contractual or other relationship, liable for the alleged conduct of its portfolio company. Plaintiffs' absurd theory of liability fails for multiple reasons, chief among which is that an investor is not liable for the acts of companies in which it invests.  This central tenet of corporate law, which Plaintiffs do not dispute, is dispositive of each of Plaintiffs' claims.

Instead of squarely addressing this fatal deficiency, Plaintiffs present a red herring argument:  that "new facts" (GI Partners' recent sale of its interest in CBR to third-party Cooper and its financial profits therefrom) will prove that "GI did, in fact, collect and retain consumers' excessive cord blood storage fees for its personal gain."  (Opp. at 4.)  This argument is irrelevant and wrong.  GI Partners' sale of its Generate business (which includes CBR) has no bearing on the issues before the Court.  First, it appears nowhere in the SAC.  Second, there is nothing unlawful about selling an ownership interest in a business.  By Plaintiffs' reasoning, anyone who buys or sells an interest in CBR is liable for CBR's alleged actions.

The Opposition does not meaningfully address GI Partners' other arguments either:

- Plaintiffs argue that GI Partners acted independently of CBR, but they do not point to any allegations of independent conduct.

- As the Motion made clear, Plaintiffs cannot assert contract claims and quasi-contract claims without pleading them in the alternative and expressly disclaiming the Contracts.

- Plaintiffs do no better defending their fraud-based claims.  They do not identify any omissions; they do not allege a relationship giving rise to a duty to disclose under *LiMandri*; and they fail to plead causation or reliance.

- Plaintiffs' improper-retention-of-benefits claims fail to allege a definite sum of money or a direct transfer of money from Plaintiffs to GI Partners, as the law requires.

- Plaintiffs do not refute GI Partners' argument that it cannot be liable for transactions that pre-date GI Partners' investment in CBR.

- Plaintiffs argue that their statutory claims should serve as a fail-safe to protect the public, but GI Partners' alleged actions do not even impact Plaintiffs, much less the general public.

Plaintiffs' claims against GI Partners are fundamentally flawed and untenable.  If the Court does not compel this case to arbitration, then the claims should be dismissed with prejudice.

## II.  <u>THIS CASE SHOULD BE SENT TO ARBITRATION</u>

As established in the Motion, equitable estoppel applies and prevents Plaintiffs from using

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

their ever-changing claims against GI Partners to avoid their commitment to arbitrate their claims. (Mot. at 12-18.)  Plaintiffs' Opposition ignores GI Partners' cases, fails to meaningfully address many of its arguments, and does not save Plaintiffs' claims from being sent to arbitration.

There is no dispute that Plaintiffs can be compelled to arbitrate their claims if they are dependent upon, or inextricably intertwined with, the underlying contract obligations.  (Opp. at 11-12.)  Plaintiffs also agree that equitable estoppel is rooted in concepts of fairness.  (*Id.* at 11.)

As this Court has explained: "[a signatory] cannot on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but on the other hand, deny the arbitration provision's applicability because the defendant is a non-signatory."  *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1156 (N.D. Cal. 2012); *see also Ma v. Golden State Renaissance Ventures, LLC*, 2021 WL 2190912, at *9 (N.D. Cal. May 31, 2021).  The Opposition does not address—let alone distinguish—these or any of GI Partners' cases, which are all on point.  (*See* Mot. at 11-16.)

### A.   The Claims Are Intertwined with and Dependent on the Contracts

Plaintiffs argue that five of their claims against GI Partners—the unjust enrichment, conversion, money had and received, UCL, and CLRA claims—are "not dependent" on the Contracts because they "are based simply on the fact that GI [Partners] took money from Plaintiffs to which it was not entitled."  (Opp. at 11, 14.)  As an initial matter, Plaintiffs do not argue that the fraudulent concealment, GBL § 349, NJSA, and FDUTPA claims are independent of the Contracts.  (*See id.*)  Accordingly, Plaintiffs concede these claims are dependent on the Contracts.

Moreover, Plaintiffs misconstrue what it means to be "dependent" on the Contracts.  To avoid equitable estoppel, a claim must be "independent of the ***existence*** of the [Contracts]."  (*Id.* at 11 (emphasis added) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1131 (9th Cir. 2013)).)  The moving papers showed that Plaintiffs' claims not only rely on the Contracts, they cannot exist without them.  (*See* Mot. at 13-16.)  Absent the Contracts, Plaintiffs could not claim that the annual storage fees were "fixed" by the terms therein, that CBR charged more than the Contracts allowed, or that CBR passed along some portion of the excess fees to GI Partners.  (*Id.*)  Indeed, the common thread connecting all of Plaintiffs' claims is that "CBR charged and collected

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    money for these annual storage fees in an amount greater than Plaintiffs . . . agreed to . . . ." (Opp.

2    at 15.)  That agreement is the Contracts.  If this thread is removed, the entire case unravels.

3            Indeed, Plaintiffs admit their claims are intertwined with the Contracts.  In earlier iterations

4    of their complaint, Plaintiffs alleged that GI Partners is an alter ego of CBR, and that they operate

5    as "one and the same entity" in marketing and selling cord blood services.  (FAC ¶ 28.)  Based on

6    these allegations, Plaintiffs claimed they entered into contracts with GI Partners and asserted

7    claims against GI Partners for breach of the Contracts.  (*Id.* ¶¶ 131-165.)  Plaintiffs abandoned

8    their alter ego theory, but they cannot run away from their previous (albeit false) allegations,

9    which are judicial admissions.  *Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008).[2]

10            Nonetheless, Plaintiffs contest that equitable estoppel applies, stressing that GI Partners'

11    alleged misconduct is "independent from any contractual duties CBR owed to Plaintiffs."  (*Id.* at

12    12.)  But recent courts analyzing this doctrine have repeatedly rejected Plaintiffs' position that

13    equitable estoppel is limited to cases where a plaintiff asserts a breach of contract, or other

14    contract-based, claim.  The inquiry, rather, is whether a plaintiff is *relying* on the agreement

15    containing the arbitration clause.  As this Court recently explained:

16            Breathe argues that a non-signatory may only invoke equitable estoppel if the
         plaintiff's claim is "based on a 'violation' of a 'duty, obligation, term, or condition'
17            of the agreement containing the arbitration clause."  Opp. at 5 (quoting *Goldman v.
         KPMG, LLP*, 173 Cal. App. 4th 209, 230 (2009)). . . . *Goldman* does not stand for
18            the proposition that equitable estoppel only applies where a claim alleges a
         violation of the agreement containing the arbitration clause.  Rather, *Goldman*
19            makes clear that a non-signatory may invoke equitable estoppel wherever the claim
         relies on the terms of the agreement, regardless of whether the plaintiff alleges a
20            violation of that agreement.  *Breathe Techs., Inc. v. New Aera, Inc.*, 2020 WL
         4747896, at *4 (N.D. Cal. Aug. 17, 2020).
21

22    Other cases are in accord too.  *See, e.g.*, *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 786 (2017)

23    ("Garcia's argument ignores the fact that a claim 'arising out of' a contract does not itself need to

24    be contractual.");  *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871-75 (9th Cir. 2021)

25    (adopting *Garcia* and compelling plaintiff's statutory claims against non-signatory to arbitration).

26

27    _____

28    [2] For the same reasons, Plaintiffs' previous allegations are also judicial admissions that the
     arbitration provisions apply to this dispute.  (*See infra* Section II.2.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

The cases cited by Plaintiffs are inapposite.  (Opp. at 11-14.)  In all of Plaintiffs' cases, the defendants had direct relationships and communications with the plaintiffs (such as buyer/seller), creating independent duties to those plaintiffs that formed the basis for their claims.  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013) (Best Buy's duty not to defraud its customers when selling/leasing DirectTV equipment does not require existence of contract between DirectTV and retail customer); *Stafford v. Rite Aid Corp.*, 998 F.3d 862, 866 (9th Cir. 2021) (Rite Aid's duty not to defraud pharmacy customers at point of sale does not require existence of contract between Rite Aid and its insurance intermediaries); *Nitsch v. DreamWorks Animation SKG Inc.*, 100 F. Supp. 3d 851, 866 (N.D. Cal. 2015) (market-wide antitrust conspiracy to depress wages does not require existence of individual plaintiffs' employment agreements); *Kramer*, 705 F.3d at 1132 (direct relationship between the parties; defendant's false advertisements and failures to disclose vehicle safety issues to the general public are based on independent duties to the public; plaintiffs can purchase vehicles in cash without entering into financing agreements).

The facts here are completely different.  By Plaintiffs' own admission, Plaintiffs had no direct relationship or communications with GI Partners.  (*See* Mot. at 10-11.)  GI Partners' alleged misconduct (profiting by some amount above the "fixed fees" set forth in the Contracts) is entirely dependent on the Contracts.  Plaintiffs are grasping at straws.

It would be unjust and unfair to allow Plaintiffs to escape the arbitration provisions in their Contracts while asserting claims against GI Partners that rely upon those same Contracts.

## B.   The Arbitration Clause Reaches This Dispute

"The burden is on 'the party opposing arbitration to demonstrate that an arbitration clause *cannot* be interpreted to require arbitration of the dispute.'"  *Buckhorn v. St. Jude Heritage Med. Grp.*, 121 Cal. App. 4th 1401, 1406 (2004) (citation omitted).  Plaintiffs do not meet their burden.

As set forth in the Motion, the arbitration clause reaches "[a]ny dispute or controversy," without any subject matter limitation.  (Mot. at 17.)  There is nothing "narrow" about it.  (Opp. at 10.)  The Contracts (including the arbitration clauses therein) are also binding on "you, and CBR and your and [CBR's] heirs, personal representatives, successors and permitted assigns." (*Id.*)  The claims against GI Partners, which all depend upon and are closely intertwined with the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    Contracts, easily fall within the scope of the arbitration clause.  *Simula, Inc. v. Autoliv, Inc.*, 175

2    F.3d 716, 721 (9th Cir. 1999) (allegations "need only 'touch matters' covered by the contract" and

3    "all doubts are to be resolved in favor of arbitrability" (citation omitted)).  Plaintiffs do not attempt

4    to distinguish *Simula* or any of GI Partners' cases on this issue.  (*See* Mot. at 16-17.)

5         In Plaintiffs' view, the arbitration clause does not reach the claims against GI Partners

6    because GI Partners is not an express third-party beneficiary.  (Opp. at 9-10.)  Plaintiffs' argument

7    misses the point.  Courts regularly apply equitable estoppel to non-signatories, regardless of

8    whether they are third-party beneficiaries.  *See, e.g., Franklin*, 998 F.3d at 869; *Ma*, 2021 WL

9    2190912, at *9; *Mance*, 901 F. Supp. 2d at 1155-6.  In any event, GI Partners does not argue that it

10   is a third-party beneficiary.  Plaintiffs' argument is irrelevant.  *See Murphy*, 724 F.3d at 1234

11   (equitable estoppel and third-party beneficiary doctrines are independent exceptions); *see also Ngo*

12   *v. BMW of N. Am., LLC*, 23 F.4th 942, 946-50 (9th Cir. 2022) (same).

13        Plaintiffs admit they cannot satisfy their burden, arguing that they need discovery to show

14   whether the arbitration clause covers their claims.  (Opp. at 10-11.)  This argument fails.  *First*, the

15   Court already denied this request.  [*See* Dkt. No. 58 (denying request until "permitted by the

16   Court, once the briefing and hearing are complete on the motion to compel arbitration").]

17   Plaintiffs' argument is an improper, backdoor motion for reconsideration.  *Second*, none of the

18   discovery Plaintiffs are seeking would have any bearing on the outcome of this Motion.  As set

19   forth above, the third-party beneficiary issue is a straw man argument, and any prior attempts by

20   GI Partners to enforce the arbitration clause in the Contracts (there are none) have nothing to do

21   with this case.  Even if such decisions existed (they don't), they would be publicly available for

22   Plaintiffs or anyone else to find; they are not the proper subject of discovery.

23   **III.   PLAINTIFFS' CLAIMS AGAINST GI PARTNERS FAIL**

24        Plaintiffs' Opposition does nothing to overcome the defects identified in the Motion.  If the

25   Court does not compel this case to arbitration, then it should dismiss GI Partners with prejudice.

26        **A.   Plaintiffs Concede There Is No Basis For Piercing The Corporate Veil**

27             **1.   Plaintiffs' Failure to Plead Alter Ego Dooms Their Claims**

28   Plaintiffs' claims against GI Partners are all premised on *CBR's* alleged actions and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  misconduct—not any alleged conduct of GI Partners—and are based solely on GI Partners' status

2  as an investor in CBR.  (Mot. at 10-11, 18-20.)  Investors are not liable for the acts of companies

3  in which they invest absent an alter ego relationship, which Plaintiffs have expressly abandoned.

4  (*Id.* at 18-20.)  Plaintiffs do not dispute this.  (*See* Opp. at 14-15.)

5      Instead, Plaintiffs argue that GI Partners is liable for "its own unlawful conduct"—namely,

6  profiting from CBR's collecting storage fees above the amounts set forth in the Contracts.  (*Id.*)

7  This argument fails.  It is not unlawful for investors to profit from their investments.  This is

8  common sense.  Plaintiffs do not cite any law to the contrary and GI Partners is aware of none.

9  Plaintiffs' express abandonment of their alter ego theory is fatal to their claims.

10     *Bestfoods*, cited by Plaintiffs, is inapplicable.  There, the Supreme Court ruled on

11  specialized statutory liability for operators of facilities that pollute the environment with hazardous

12  waste.  *United States v. Bestfoods*, 524 U.S. 51, 64-65 (1998).  In any event, what *Bestfoods* does

13  say about corporate law confirms that GI Partners cannot be liable absent an alter ego relationship.

14  *Id.* at 69 ("It is a general principle of corporate law deeply 'ingrained in our economic and legal

15  systems' that a parent corporation (so-called because of control through ownership of another

16  corporation's stock) is not liable for the acts of its subsidiaries.") (citation omitted).

17              **2.    The Cooper Sale Is an Irrelevant Sideshow**

18     Plaintiffs suggest that "newly discovered information" about GI Partners' sale of its

19  interest in CBR to third-party Cooper may subject GI Partners to investor liability, and that this

20  will be the subject of a future motion for leave to amend the SAC.  (Opp. at 15.)  GI's sale to

21  Cooper has no bearing on the issues before the Court.  Plaintiffs' "new evidence" does nothing to

22  revive Plaintiffs' alter ego theory or any other theory of liability, and it is improper on a motion to

23  dismiss.  In any event, Plaintiffs have had enough bites at this apple.  The Court should not give

24  Plaintiffs another opportunity to cook up new, far-fetched theories of liability against GI Partners.

25     Plaintiffs spend a significant portion of their brief arguing (albeit in the "Factual

26  Background" section) that GI Partners' recent sale of its stake in CBR is "new evidence"

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   demonstrating that it "had substantial control over CBR's revenues." (*Id.* at 4-5.[3])  Wrong.

2   Alienation is merely an incident of ownership, and ownership does not establish alter ego.  *Holly*

3   *v. Alta Newport Hosp., Inc.*, ___ F. Supp. 3d ___, 2020 WL 1853308, at *3 (C.D. Cal. Apr. 10,

4   2020) ("own[ing] and operat[ing] and [being] responsible for the administration, operation and

5   business conducted by [a subsidiary]" does not create alter ego liability); *Kingston Dry Dock Co.*

6   *v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) (L. Hand, J.) ("Control through

7   the ownership of shares does not fuse the corporations. . . .").  GI Partners' involvement in CBR

8   does not even rise to the level of the companies in *Holly* and *Kingston*.

9          Plaintiffs also falsely contend that the $1.6 billion price tag for the sale is three times what

10  GI Partners paid for its stake in CBR, proving that GI Partners "did, in fact, collect revenues from

11  consumers' annual cord blood storage fee payments." (Opp. at 9.)  Wrong again.  GI Partners sold

12  Generate Life Sciences—a conglomerate of investments that included CBR—for $1.6 billion.

13  Even if this discussion were relevant (it is not), Plaintiffs are comparing apples to oranges.[4]

14         Nor does Plaintiffs' "new evidence" do anything to suggest that CBR transferred *profits*

15  *made from excess storage fees* to GI Partners.  Based on Plaintiffs' own allegations about how

16  CBR allocated and spent those fees, it would also be impossible to identify those profits, much

17  less quantify the amount, if any, that was transferred to GI Partners.  (*See* Mot. at 25-26.)

18  **B.     Plaintiffs' Claims Fail Because They Pre-Date GI Partners' Investment**

19         Plaintiffs agree that "GI [Partners] should not be held responsible for transactions that pre-

20  date its relationship with CBR." (Opp. at 24.)  This dooms all of Plaintiffs' claims.  Plaintiffs

21  allege that they signed their Contracts between 2011 and 2015, that CBR made misrepresentations

22  to them between 2011 and 2017, and that CBR began increasing storage fees in 2017.  (SAC

---

24  [3] Plaintiffs also attach four exhibits to their Opposition—press releases, an investor presentation,

25  and the transcript of an investor phone call—without any supporting declaration or request for
    judicial notice.  This is improper.  *See* N.D. Cal. Local Rule 7-5 ("Factual contentions made in . . .

26  opposition to any motion must be supported by an affidavit or declaration . . . .").

27  [4] Plaintiffs also fundamentally misunderstand how equity investing works.  If anything, a high sale

28  price undermines their argument:  if GI Partners had been siphoning revenue from CBR rather
    than leaving it in the business, Cooper would not have been willing to pay as much for CBR.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

¶¶ 110, 124.)  GI Partners did not invest in CBR until August 2018.  (*Id.* ¶ 6.)  Plaintiffs are bound

by the allegations in their SAC.  The claims against GI Partners are dead on arrival.

In a last-ditch effort to save their claims, Plaintiffs argue that the Court should disregard

the SAC and allow discovery to determine "a definitive date" of the start of GI Partners'

relationship with CBR.  (Opp. at 24.)  This argument fails.  The SAC does not plead a

"relationship" other than GI Partners' investment.  Plaintiffs cannot demand discovery into unpled

allegations.  *See Giovanelli v. D. Simmons Gen. Contracting*, 2010 WL 988544, at *5 (D.N.J.

Mar. 15, 2010) (discovery "cannot serve as a fishing expedition through which plaintiff searches

for evidence to support facts he has not yet pleaded").

### C.    The Opposition Confirms That The Quasi-Contract Claims Fail

Quasi-contract claims cannot be based on subjects covered by a contract unless:  (1) the

claims are pled in the alternative; and (2) the plaintiff expressly disclaims the contract.  (Mot. at 21

(citing *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998-99 (N.D. Cal. 2020)).)  It is

irrelevant that GI Partners is not a party to the Contracts.  (*Id.* (citing *Cal. Med. Ass'n, Inc. v. Aetna

U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 n.25, 173 (2001)).)  Plaintiffs do not plead

their claims in the alternative, nor do they disclaim the Contracts.  The quasi-contract claims fail.

Plaintiffs do not address or attempt to distinguish GI Partners' cases on this point.  (*See*

Mot. at 21.)  Indeed, the Opposition concedes that "a **'quasi-contractual'** claim [is designed] to

avoid unjustly conferring a benefit upon a defendant **where there is no valid contract**."  (Opp.

at 15-16 (emphasis added) (citation omitted).)  But Plaintiffs do not deny there is a valid contract

that covers the subject of their claims.  Nor do Plaintiffs make any attempt to disclaim the

Contracts or deny that they simultaneously seek contract claims and quasi-contract claims.[5]  (*Id.*)

Moreover, Plaintiffs seek the same "excess" fees as damages in both their contract and

quasi-contract claims.  (SAC ¶¶ 347-56, 365-74.)  If Plaintiffs prevail on their contract claims,

they will be fully compensated for their alleged injuries.  Equitable relief is unavailable when a

---

[5] Plaintiffs argue in a footnote that they plead their quasi-contract claims in the alternative (Opp. at 16-17 n.4.), but that is not true.  (*See* SAC ¶¶ 347-56, 365-74.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   plaintiff pleads claims that may entitle him or her to an adequate remedy at law.  *Rhynes v. Stryker*

2   *Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) ("Should plaintiffs ultimately prevail

3   on their claims, they will be adequately compensated for their alleged injuries by an award of

4   damages"; "Because plaintiffs may be able to state [legal] claims . . . , plaintiffs cannot show that

5   there is no adequate remedy at law.") (citations omitted).  The unjust enrichment and money had

6   and received claims should be dismissed.

7   **D.    The Opposition Confirms That The Fraud-Based Claims Fail**

8       Plaintiffs bring six claims against GI Partners that sound in fraud:  one fraudulent

9   concealment claim and five statutory consumer protection claims based on alleged

10  misrepresentations or omissions (CLRA, UCL, GBL § 349, FDUPTA, and NJCFA).  (Mot. at 21-

11  23.)  Plaintiffs' attempt to defend these claims fails.

12  **1.    Plaintiffs Do Not Identify any Misrepresentations or Omissions**

13      As set forth in the Motion, claims that sound in fraud require—at a minimum—that the

14  defendant knew of a material fact and either misrepresented or concealed that fact to induce

15  reliance by the plaintiff.  (Mot. at 21-23.)  In their Opposition, Plaintiffs do not argue that GI

16  Partners made any misrepresentations.  (Opp. at 20-22.)  Nor could they.  Central to the SAC is

17  Plaintiffs' claim that they never received *any* communications from GI Partners.  (SAC ¶¶ 101,

18  118, 131.)  Accordingly, the fraud-based claims can only be based on alleged omissions.

19      Plaintiffs' attempt to identify the "who, what, when, where, how, and why" of GI Partners'

20  alleged omissions does not work.  (Opp. at 20 (quoting Mot. at 22).)  They point only to

21  allegations of misrepresentations/omissions by *CBR*—not GI Partners.  (*See, e.g.*, SAC ¶¶ 137

22  ("**WHO**: CBR made material misrepresentations and/or omissions . . . ."); 138 ("**WHAT**: CBR's

23  conduct here was, and continues to be, fraudulent because it omitted and concealed the fact that

24  the annual cord blood storage fee was not fixed . . . ."); 139 ("**WHEN**: CBR made the material

25  misrepresentations and omissions . . . .").)  Accordingly, the fraud-based claims fail.

26  **2.    Plaintiffs Misstate *LiMandri*'s Duty to Disclose Standard**

27      Plaintiffs misstate the standard for when a duty to disclose arises under *LiMandri v.*

28  *Judkins*, 52 Cal. App. 4th 326 (1997).  (Opp. at 21.)  Plaintiffs argue that a duty to disclose arises

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    whenever one party has "exclusive knowledge of material facts not known to plaintiffs . . .

2    *regardless of the relationship between [them]*." (*Id.* (emphasis added).)  Wrong.  "[W]here

3    material facts are known to one party and not to the other, failure to disclose them is not actionable

4    fraud unless there is *some relationship* between the parties which gives rise to a duty to disclose

5    such known facts." *LiMandri*, 52 Cal. App. 4th at 337 (citation omitted).  "As a matter of

6    common sense, [a transactional] relationship can only come into being as a result of some sort of

7    *transaction* between the parties." *Id.*

8         Plaintiffs do not (and cannot) point to any transactions between Plaintiffs and GI Partners

9    because Plaintiffs repeatedly claim they only transacted with CBR.  (*See* Mot. at 22-23.)

10   Accordingly, Plaintiffs' omission-based claims fail.  *See, e.g.*, *LiMandri*, 52 Cal. App. 4th at 336-

11   39 (dismissing nondisclosure claims due to lack of transactional relationship); *Platt Elec. Supply,*

12   *Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1059 n.3 (9th Cir. 2008) (same).  Plaintiffs do not address

13   GI Partners' legal authority, nor do they cite any cases supporting their position.

14        Plaintiffs acknowledge their allegations against GI Partners "may be more general"—a

15   gross understatement.  (Opp. at 21.)  Indeed, Plaintiffs do not even allege that GI Partners owed

16   them a duty.  The Court should not overlook this fatal pleading deficiency based on any "relaxed

17   standard" for omission-based claims, as Plaintiffs ask it to.  (*Id.*)

18        *In re Toyota*, cited by Plaintiffs, further undercuts their arguments.  There, this Court

19   *granted* Toyota's motion to dismiss the plaintiffs' omission-based consumer protection claims

20   where they were not pled with specificity.  *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.

21   Supp. 3d 1067, 1099-1100 (N.D. Cal. 2021).  The fraud-based claims fail as a matter of law.

22            **3.     There Is No Plausible Theory of Reliance or Causation**

23        As set forth in the Motion, Plaintiffs have not plausibly alleged causation or reliance.

24   (Mot. at 23-24.)  Plaintiffs allege that, had they known their annual storage fees were not "fixed,"

25   they would not have entered the Contracts with CBR.  (*See* SAC ¶¶ 86, 168, 339.)  Plaintiffs'

26   purported harm could not possibly have been caused by GI Partners, who acquired CBR years

27   after Plaintiffs entered the Contracts.  *See Orcilla v. Big Sur, Inc.*, 244 Cal. App. 4th 982, 1008

28   (2016) (dismissing fraud claim for failure to allege causation).  Once again, Plaintiffs' Opposition

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    does not address any of GI Partners' authorities on this issue.  (*See* Mot. at 23-24.[6])

2        Plaintiffs also admit that CBR informed its customers of the price increases before they

3    were implemented.  (SAC ¶ 51 (quoting an email from CBR saying "we've implemented an

4    increase to the yearly fee of cord blood storage by $25 . . . . Your new yearly storage fee of $150*

5    will be reflected in your next billing cycle.").)  GI Partners obviously cannot be liable for

6    concealing facts Plaintiffs already knew (and that they knew before GI Partners invested in CBR).

7        Plaintiffs' argument that they do not need to prove reliance or causation under their

8    statutory consumer claims is wrong.  (Opp. at 21-22.)  First, even Plaintiffs' cases expressly state

9    that fraud-based statutory consumer claims require a showing of reliance.  *See, e.g.*, *Lucas v. Breg,*

10   *Inc.*, 212 F. Supp. 3d 950, 969 (S.D. Cal. 2016) ("Plaintiffs' UCL, FAL, CLRA, and fraud claims

11   for restitution and damages all require a showing of reliance, of varying specificity, on the alleged

12   misrepresentations or omissions.").  Moreover, the court in *Lucas* rejected the plaintiffs' request to

13   find a presumption of reliance.  *Id.* at 969-70 (denying motion for class certification).

14       Plaintiffs' other cases also do not support their position.  (Opp. at 21-22.)  The *Cruz* case

15   did *not* hold that CLRA claims do not require a showing of reliance, as Plaintiffs contend.  *Cruz v.*

16   *PacifiCare Health Sys., Inc.*, 111 Cal. Rptr. 2d 395 (2001), *review granted and opinion*

17   *superseded*, 34 P.3d 288 (2001), *aff'd in part, rev'd in part*, 30 Cal. 4th 303 (2003).  In *de LaCour*,

18   the court explained that a plaintiff must plead he or she was "injured as a result" of defendant's

19   misleading conduct to state a claim under GBL § 349.  *de Lacour v. Colgate-Palmolive Co.*, 338

20   F.R.D. 324, 341 (S.D.N.Y. 2021).  And in *Cold Stone Creamery*, the Eleventh Circuit granted

21   summary judgment dismissing the FDUPTA claim, finding consumers were not likely to be

22   deceived.  *Cold Stone Creamery, Inc. v. Lenora Foods I, LLC*, 332 F. App'x 565, 567-68 (11th

23   Cir. 2009).  Moreover, none of these cases ruled on a motion to dismiss.

24       Even if Plaintiffs were right that they need only allege that the public is likely to be

25   deceived (they are not), the fraud claims still fail.  The SAC does not allege the public is likely to

---

[6] Nor do Plaintiffs allege that they stayed in their Contracts based on any conduct by GI Partners (*See* SAC ¶ 17 (Plaintiffs stayed in their contracts because of CBR's alleged representations that "the transfer of cord blood to a competitor is difficult or impossible").)

be deceived by any conduct of GI Partners—only by alleged conduct of CBR.  (*See* Opp. at 22 (citing SAC ¶¶ 75-59).)  Moreover, Plaintiffs cannot plausibly allege harm to the public by GI Partners, since their claims only apply to customers of CBR who were subject to price increases. *See Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 549 (9th Cir. 2021) (claims by a business' customers will, "by definition . . . only benefit a 'group of individuals similarly situated to the plaintiff,'" not "the general public as a more diffuse whole") (citation omitted).

In a final effort to concoct reliance/causation, the Opposition posits a new theory:  that CBR's alleged misrepresentations that storage fees would not increase were truthful and accurate until GI Partners decided to raise them.  (Opp. at 22.)  This new (and unpled) theory is impossible to square with Plaintiffs' claim that they were harmed by CBR's fee increases years before GI Partners entered the picture (and that GI Partners should not be responsible for transactions that pre-date its investment in CBR).  (Mot. at 14; Opp. at 24.)  The fraud claims are untenable.

### E.    The Improper-Retention-Of-Benefits Claims Fail

As set forth in the Motion, Plaintiffs' conversion, unjust enrichment, and money had and received claims fail because the SAC:  (1) pleads no definite sum of money that GI Partners received; and (2) does not allege any direct transfer of fees from Plaintiffs to GI Partners.  (Mot. at 25-26.)  The Opposition does nothing to save these claims.

#### 1.    Plaintiffs Must (and Do Not) Plead a Definite Sum of Money

Improper-retention-of-benefits claims require plaintiffs to plead a "definite" or "certain" sum of damages.  (Mot. at 25-26.)  The Opposition concedes this point.  (Opp. at 16 ("[a] cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum" (quoting *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011))).)

One page later, Plaintiffs reverse course and claim that the "majority view" does not require allegations of a definite sum of money.  (*Id.* at 17.)  That is not the law.  Plaintiffs' cases do not mention a "majority view," and GI Partners is not aware of any that do.  In fact, Plaintiffs' cases do not address this issue at all.  It is axiomatic that cases do not stand for propositions not considered therein.  *See Benas v. Baca*, 2009 WL 4030526, at *2 (C.D. Cal. Aug. 26, 2009), *aff'd*, 433 F. App'x 524 (9th Cir. 2011); *Mares v. Baughman*, 92 Cal. App. 4th 672, 679 (2001).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

Where courts *have* spoken on the issue, the law is clear:  when a defendant moves to dismiss an improper-retention-of-benefits claim because a plaintiff failed to plead the required element of "certain" or "definite" damages, the claim will be dismissed.  *See Saroya*, 503 F. Supp. 3d at 999-1000 (dismissing conversion and money had and received claims with prejudice); *Thornton v. Micro-Star Int'l Co., Ltd.*, 2017 WL 10621210, at *13 (C.D. Cal. Aug. 21, 2017) (dismissing unjust enrichment, restitution, quasi-contract, and common count claims).  Plaintiffs do not address—let alone try to distinguish—these or any of GI Partners' cases.

Plaintiffs argue that, in any event, they *do* plead a certain sum of damages against GI Partners by pleading the specific dollar amounts they paid to CBR.  (Opp. at 18.)  This argument does not make sense.  Plaintiffs' claims against GI Partners are not for the "excess" fees it paid to CBR.  They are for the amount of *profits derived from those fees* that were passed along to GI Partners by CBR.  (Mot. at 25-26.)  Plaintiffs need to support their claim against GI Partners with claims of damages against *GI Partners*, not CBR.  The SAC makes no attempt to do so.  The improper-retention-of-benefits claims should be dismissed.

### 2.   There Was No Direct Transfer of Money to GI Partners

Improper-retention-of-benefits claims also require Plaintiffs to plead that they transferred a benefit *directly* into GI Partners' pocket.  (Mot. at 26-27.)  The Opposition does not dispute this.  (Opp. at 19-20.)  Instead, it regurgitates copied-and-pasted paragraphs from the SAC to show that "the plain allegations in the Complaint" *do* allege direct transfers.  (*Id.* at 19-20 (citing SAC ¶¶ 15, 60, 69, 139-41, 211).)  Not true.  No reasonable person could interpret any of these paragraphs to allege a direct transfer of funds from Plaintiffs to GI Partners.

Indeed, Plaintiffs admit that there were never direct transfers from Plaintiffs to GI Partners because CBR was the only entity that billed and collected the fees.  (*Id.* at 15 ("Plaintiffs and Class Members paid money to Defendant CBR for annual storage fees," *and "CBR charged and collected money for these annual storage fees in an amount* greater than Plaintiffs and Class Members agreed to [pay]") (emphasis added).)  Plaintiffs' attempt to save these claims fails.

### F.   The Statutory Consumer Protection Claims Fail For Additional Reasons

The Motion established that Plaintiffs' CLRA, FDUPTA, UCL, and GBL § 349 claims fail

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   for additional, independent reasons.  (Mot. at 27-28.)  Plaintiffs' Opposition ignores GI Partners'

2   arguments with respect to the FDUPTA claim and, therefore, concedes it is deficient.  That leaves

3   the CLRA, UCL and GBL § 349 claims, each of which is addressed below.

4     **CLRA**.  Plaintiffs argue that the CLRA does not require a direct transaction between the

5   parties, citing *Philips v. Ford Motor Co.*, 2015 WL 4111448, at *14 (N.D. Cal. July 7, 2015).

6   (Opp. at 22-23.)  But *Philips* makes clear that a direct transaction is not required only where the

7   defendant acts through its agent or alter ego.  2015 WL 4111448, at *14-15 (collecting cases) (also

8   requiring that defendant have "exclusive knowledge" of material information, which requires a

9   duty to disclose).  GI Partners and CBR are not in an agency or alter ego relationship, nor does GI

10  Partners have a duty to disclose.  (*See supra* Sections III.A, III.D.2.)  The CLRA claim fails.

11    **UCL.**  Plaintiffs argue that their UCL claim should not be dismissed because "members of

12  the public are likely to be deceived" by GI Partners' actions.  (Opp, at 23 (quoting *Korea Supply*

13  *Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143, 1151 (2003)).)  Plaintiffs are wrong.  As

14  explained above, Plaintiffs only assert claims on behalf of CBR's customers—not the public—and

15  fail to allege any plausible way that GI Partners acted vis-à-vis the public.  (*See supra* Section

16  III.D.3.)  The UCL claim fails.  *See Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F.

17  Supp. 3d 904, 910 (N.D. Cal. 2020) (dismissing UCL claims based on quasi-contract obligations

18  that were dismissed because contract covered same subject matter).

19    **GBL § 349**.  No matter how Plaintiffs slice it, their claimed injuries under this statute are

20  the same as their claimed injuries for CBR's alleged breach of contract (the annual storage fees

21  they paid in excess of their expectations under the Contracts).  GI Partners' sale of its interest in

22  CBR to Cooper is entirely irrelevant.  Because Plaintiffs fail to allege a sufficient injury, the GBL

23  § 349 claim fails.  *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).[7]

24  **IV. CONCLUSION**

25    Plaintiffs' Opposition is heavy on rhetoric but devoid of any legal basis to allow their

26

27                      

[7] Plaintiffs point to SAC ¶ 270, which confirms that Plaintiffs' alleged harm is the same as their purported harm for CBR's alleged breach of contract.  (Opp. at 24.)  Plaintiffs also point to SAC

28  ¶ 289, which is not even part of the GBL § 349 claim against GI Partners.  (*Id.*)

15

TABLE OF AUTHORITIES

1  claims against GI Partners to proceed.  GI Partners respectfully requests that the Court compel this

2  case to arbitration or, alternatively, dismiss it from this lawsuit.

3

4  DATED:  February 25, 2022                MILLER BARONDESS, LLP

5

6                                          By:  _____

7                                               CASEY B. SYPEK

8                                               Attorneys for Defendant
                                                GI PARTNERS

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400