PILLSBURY WINTHROP SHAW PITTMAN LLP
ROXANE A. POLIDORA (CA Bar No. 135972)
roxane.polidora@pillsburylaw.com
LEE BRAND (CA Bar No. 287110)
lee.brand@pillsburylaw.com
Four Embarcadero Center, 22nd Floor
San Francisco, CA  94111
Telephone: (415) 983-1000
Facsimile: (415) 983-1200

PILLSBURY WINTHROP SHAW PITTMAN LLP
DIANNE L. SWEENEY (CA Bar No. 187198)
dianne@pillsburylaw.com
2550 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 233-4500
Facsimile: (650) 233-4545

Attorneys for Defendant
CBR SYSTEMS, INC.

[Additional counsel listed on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| AMY COHEN, KATHARINE VACCARELLA, and SIRISHA KONERU on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>CBR SYSTEMS, INC., GI PARTNERS, and DOES 1-10,<br><br>                Defendants. | Case No. 4:21-cv-06527-HSG<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: May 5, 2022<br>Time: 2:00 p.m.<br>Place: Ctrm. 2, 4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr. |

**JOINT CASE MANAGEMENT STATEMENT**

Pursuant to the Court's Notices Setting and Continuing the Case Management Conference (Dkt. Nos. 21, 48, 64), the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9, Plaintiffs Amy Cohen, Katharine Vaccarella, and Sirisha Koneru (collectively, "Plaintiffs") and Defendants CBR Systems, Inc. ("CBR") and GI Partners ("GI"; together with CBR, "Defendants"; and Defendants together with Plaintiffs, the "Parties" and each a "Party"), jointly submit this Case Management Statement, in advance of the Case Management Conference scheduled in this matter for May 5, 2022 at 2:00 p.m.

**1.  Jurisdiction and Service**

  **a.  Plaintiffs' Statement**

Plaintiffs allege this Court has original jurisdiction over this putative class action pursuant to 28 U.S.C. § 1332, and that this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs filed this action in the Northern District of California on August 24, 2021. GI was served on September 13, 2021, and CBR was served on September 15, 2021. As described in detail in the Second Amended Complaint ("SAC"), Plaintiffs allege that the arbitration language in the service contract is unlawful, unfair, deceptive and unenforceable as it is procedurally and substantially unconscionable. SAC at ECF No. 38, at ¶¶ 80-89. Plaintiffs also assert that they have properly pled a claim for public injunctive relief and that their California statutory claims are not subject to arbitration. *See in re: StubHub Refund Litig.*, 20-md-02951-HSG, Dkt. No. 90, Order Regarding Motion to Compel Arbitration (N.D. Cal., Apr. 6, 2022); citing *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 831–32 (9th Cir. 2019).

Further, the arbitration language in the contract does not include a class action waiver and the parties have not stipulated that the service contract is silent on the issue of class arbitration. Plaintiffs assert that the availability of class arbitration is implicit in the service contract, and that the broad, inclusive language of the service contract subjects Plaintiffs claims to classwide resolution.

Further, Plaintiffs assert that any decision on class arbitration (including who decides the issue) is premature and should not be decided until after this Court issues an order on Defendants' motions to compel arbitration, and that any decision should be made after subsequent and thorough

-1-

briefing on the issue. However, should the Court choose to decide the issue at this time, as detailed in Plaintiffs opposition to CBR's motion to compel arbitration, the Contract expressly allows for class proceedings. Further, Plaintiffs have not conceded that the FAA applies here, which limits the application of *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), and which Plaintiffs contend should be the subject of further briefing on this issue.

**b.    Defendants' Statement**

Defendants deny that Plaintiffs' claims may be brought in this Court or on a classwide basis because each Plaintiff is party to a written arbitration agreement requiring that such claims be arbitrated on an individual basis. Defendants dispute that Plaintiffs have Article III standing because Plaintiffs are not entitled to any relief from this Court, including damages, and further dispute that Plaintiffs' claims are eligible for class certification. Notwithstanding the foregoing, Defendants do not otherwise dispute that the Court has subject matter jurisdiction to assess Plaintiffs' claims and do not dispute personal jurisdiction or venue.

Plaintiffs' citation herein to the recent decision in *IN RE: STUBHUB REFUND LITIGATION* is confounding. There, rather than finding that claims for public injunctive relief require litigation instead of arbitration as Plaintiffs suggest, this Court explained that the Ninth Circuit has "held that the Federal Arbitration Act does not preempt the *McGill* rule because parties ***may still arbitrate*** requests for public injunctive relief." No. 20-MD-02951-HSG, 2022 WL 1028711, at *1 (N.D. Cal. Apr. 6, 2022) (emphasis added).

Plaintiffs' insistence that there is any potential for class arbitration here is similarly puzzling. As the contracts at issue do not provide for arbitration of class claims, class arbitration is plainly precluded by the Supreme Court's decision in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019).

**2.    Facts**

**a.    Plaintiff's Summary of Facts and Issues in Dispute:**

Defendant CBR provides newborn stem cell processing and preservation services and is the world's largest stem cell collection and storage company. In August 2018, CBR was acquired by Defendant GI Partners for $530 Million, confirming the incredibly lucrative nature of the cord blood banking business.

Defendant GI Partners is a middle market private equity firm that has described its role in the acquisition of CBR as that of "Lead Investor," and described its purchase of CBR as an "attractive risk-adjusted returns with minimal loss of capital…"

The consumers in this Action are caring parents, relatives, and/or caregivers who made the decision to store and preserve their newborn children's cord blood with CBR for the future protection of their children who may later develop blood disorders and blood cancers ("Consumers" or "Class Members."). When these Consumers contracted with CBR for cord blood banking, they agreed to pay a hefty up-front fee of approximately $1,500.00 or more, in addition to shipping costs of $150.00-$170.00, as well as a fixed annual storage fee of $125.00 or more over the lifespan of the cord blood storage, which CBR deceptively leads Consumers to believe is a fixed fee through its sales representatives, website representations, and its service contract. Despite leading consumers to believe that the annual storage fee is fixed, Defendants have deceptively and unlawfully increased the storage fee over time, resulting in tens of millions of dollars or more in revenue, which Defendants are using to fund their customer service center infrastructure and clinical trials, rather than actual storage costs. Further, if or when Consumers discover the increased storage fees and explore the possibility of taking their business elsewhere, CBR represents that the transfer of cord blood is difficult or impossible, effectively holding the cord blood for ransom and forcing Consumers to choose between paying the increased fees or losing access to the cord blood if they do not pay the increased fees.

Each contract has the same or substantially similar language confirming that the annual storage fees will be fixed from at least years 2-18 of storage. This language is in a bold font, reaffirming to consumers that the annual fee will not change from years 2-18, as follows: "**Annual Storage Fee Per Year (Years 2-18).**" Thus, the form Contract expressly does not allow CBR to charge storage fees beyond the fixed amount set forth in the Contract. Nonetheless, Defendants' assert that the contract allows them to increase the fixed annual fee at their discretion, which confirms that there is no end to the amount they believe they can charge consumers for storage fees, and no end to the resulting revenues they can attain. It also confirms that Defendants always intended to increase the annual storage fees,

despite promising consumers in CBR's marketing, advertising and service contract that the fees were fixed.

Defendants' reference to the unlawful annual storage fee increases as a "modest price increase" highlights its biased perspective and underscores the nature of its misconduct. It is very convenient for a multi-million business to refer to an unlawful annual fee increase of $25.00 per sample as "modest," particularly when that unlawful fee increase has resulted in substantial profits to Defendants of tens of millions of dollars or more. In fact, the revenue stream created from these fee increases has been so substantial that GI Partners was able to turn its $530M investment in 2018 into a $1.6B sale to The Cooper Companies, Inc. ("Cooper") in 2021. And, of course, this revenue stream is in large part due to the increased annual storage fees charged to consumers. *See* www.globenewswire.com/news-release/2021/11/10/2332070/2200/en/CooperCompanies-to-Acquire-Generate-Life-Sciences-for-1-6-Billion.html.

Notably, despite Plaintiffs Cohen, Koneru and Vaccarella's Contracts indicating that their "Annual Storage Fees Per Year (Years 2-18)" would be $125, $125 and $130, respectively, each is now paying $185 per year in order to maintain their cord blood storage, which is $60 or more per year than they contracted for. Multiplying this by the approximate one-million cord blood samples stored by Defendants equates to a substantial profit.

In an effort to silence Consumers, Defendants seek to compel these Consumers to arbitration on an individual basis. As alleged in detail in the SAC, the arbitration clause is procedurally and substantially unconscionable. SAC at ¶¶80-9. Further, the Contract at issue seeks to unlawfully prevent Plaintiffs from bringing claims for public injunctive relief, requiring severance of their California Statutory claims in the event their other claims are compelled to arbitration. SAC at ¶¶ 20, 21, 38, 77–79, 150–152, 219, 244, 251.Further, had Plaintiffs or Class Members known that, contrary to CBR's marketing representations, and the form Contract, the annual cord blood fee was not fixed and that the cost of the increased fees would likely be less than the costs of having to arbitrate their claims to seek redress for CBR's misconduct, they would not have signed the Contract with CBR on the same terms. Plaintiffs renewed their request for discovery relevant to the validity of the arbitration

agreement, including the issue of unconscionability, in their briefing in response to Defendants' motions to compel arbitration. ECF Nos. 59 and 60.

### b.     CBR's Statement

CBR owns and operates a leading private newborn stem cell bank, which helps parents store cord blood and cord tissue samples for their children. CBR is dedicated to advancing the clinical application of cord blood and cord tissue stem cells by partnering with institutions to establish FDA-regulated clinical trials for conditions that have no cure today. CBR has helped more than 600 families use their cord blood stem cells for established and experimental medical treatments — more than any other family cord blood bank. CBR's goal is to expand the potential scope of newborn stem cell therapies that may be available to patients and their families. CBR is headquartered in Los Angeles, California and maintains a laboratory in Tucson, Arizona.

CBR's contracts with Plaintiffs are all dated between April 2011 and January 2015 and all include an agreement that any dispute with CBR will be arbitrated on an individual basis. These contracts do not prohibit Plaintiffs from seeking public injunctive relief in individual arbitration. While CBR's contracts with consumers uniformly include an arbitration agreement, the terms of that arbitration agreement and other terms of CBR's contracts with consumers have significantly changed since 2015. Accordingly, a substantial portion of the purported class have entered into significantly different contracts with CBR than Plaintiffs did.

Plaintiffs allege that CBR has breached its contracts with consumers by increasing annual storage fees for cord blood and cord tissue banking. Plaintiffs also allege that CBR misleads consumers to believe that such annual storage fees will be fixed through its sales representatives, website representations, and service contract, and that CBR holds consumer's cord blood "hostage" if they do not pay increased annual storage fees. CBR does not dispute that it has implemented modest prices increases to its annual storage fees. CBR, however, did so based on its contractual right to make such changes. CBR advised its customers of the possibility of these price changes in their contracts and advised them of the specific increases at the time they were made.

     **c.**    **GI's Statement**

GI is an investment firm that invested in CBR in August 2018—after Plaintiffs' contracts were signed and after the price increases began. In their operative complaint, Plaintiffs do not allege that CBR is an alter ego of GI or that CBR did not maintain a separate corporate form (and GI is not an alter ego of CBR). Instead, Plaintiffs' claims against GI are based on GI's status as an investor who stands to benefit from CBR's financial success. As Plaintiffs allege, GI has never communicated with or contracted with any of CBR's customers. Nor has it received funds from any of CBR's customers. Plaintiffs' claims against GI arise out of their contracts with CBR, which require that their claims be arbitrated on an individual basis.

Moreover, GI's sale of Generate Life Sciences Inc. (a combination of CBR and a separate business, California Cryobank, LLC) to Cooper has no bearing on the claims or issues in this case. Contrary to Plaintiffs' argument about GI's "revenue stream," the purchase price of the combined companies (which provide many other services such as tissue, sperm, egg and embryo storage and retrieval) has no material connection to CBR's marginal increase in Plaintiffs' annual storage fees.

**3.**    <u>**Legal Issues**</u>

     **a. Plaintiffs' Statement**

Without limitation as to subsequently identified issues, Plaintiffs identify the following disputed points of law:

    i.    Whether Plaintiffs are entitled to pre-arbitration related discovery to determine the validity and enforceability of the arbitration language in the service contract;

    ii.    Whether the arbitration language in the service contract is procedurally and substantially unconscionable;

    iii.    Whether the Parties agreed to resolve their claims on a classwide basis;

    iv.    Whether CBR breached its uniform Contracts with Plaintiffs and Class Members, including the covenant of good faith and fair dealing implied in every contract, and whether any such breach caused harm or injury to Plaintiffs and Class Members;

    v.    Whether CBR made or disseminated to the public any representation about the annual cord blood banking storage fees that were deceptive or misleading, including through its

        customer service representatives who reaffirm to consumers that the annual storage fee is fixed, among a barrage of other uniform marketing and advertising representations;

vi.    Whether Defendants conduct violated the California and New York consumer protection statutes at issue;

vii.    Whether Defendant GI Partners has deceptively or unlawfully profited from Plaintiffs' and Class Members increased annual storage fees;

viii.    Whether Defendant GI Partners has collected and retained money from Plaintiffs and Class Members that it is not entitled to;

ix    Whether Defendant GI Partners has been unjustly enriched by Plaintiffs' and Class Members increased annual storage fees;

x.    Whether Defendants' conduct warrants a public injunction enjoining Defendants' continued course of conduct;

xi.    Whether Plaintiffs' claims for public injunctive relief cannot be compelled to arbitration;

xii.    Whether compensatory or consequential damages should be awarded to Plaintiffs and the other Class Members;

xiii.    Whether actual, punitive, trebled, or statutory damages should be awarded to Plaintiffs and other Class Members;

xiv.    Whether restitution should be awarded to Plaintiffs and the other Class Members; and

xv.    Whether Plaintiffs and Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction.

**b.**    **Defendants' Statement**

Without limitation as to subsequently identified issues, Defendants identify the following disputed points of law:

i.    Whether Plaintiffs are parties to enforceable written arbitration agreements requiring that their claims against Defendants be arbitrated on an individual basis;

ii.    Whether CBR has breached its contracts with Plaintiffs by increasing annual storage fees;

iii.    Whether Plaintiffs have any non-contractual claim against CBR in light of the increase in their annual storage fee including a claim based on Plaintiffs' assertion that they were allegedly misled by CBR;

|   |   |   |
|---|---|---|
| iv. | | Whether Plaintiffs have stated any claim against GI given that Plaintiffs' only non-conclusory allegation against GI is that GI invested in CBR; |
| v. | | Whether Plaintiffs have stated a claim for fraudulent concealment against CBR given their failure to make any non-conclusory allegations of such concealment; |
| vi. | | Whether certain of Plaintiffs' claims are partially time-barred by the applicable statutes of limitations; |
| vii. | | Whether Plaintiffs can seek equitable relief given their failure to plead a lack of adequate remedy at law under *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834 (9th Cir. 2020); |
| viii. | | Whether Plaintiffs can seek injunctive relief given their failure to plead any risk of repeated harm under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018); |
| ix. | | Whether a class could ever be certified under Fed. R. Civ. P. 23, including because common questions of law or fact do not predominate over individual issues in light of the facts that: 1) a substantial portion of the purported class entered into significantly different contracts than Plaintiffs; 2) to the extent Plaintiffs' claims rely on non-contract statements the purported class was not uniformly exposed to such statements; and 3) CBR works with its customers on a case-by-case basis to ensure that its services remain affordable; |
| x. | | Whether damages are capable of being calculated on a class-wide basis under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); and |
| xi. | | Whether a nationwide class can be certified consistent with *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012). |

This lawsuit is still at an early stage, and Defendants therefore reserve the right to identify additional legal issues as this case proceeds.

**4.   Motions**

Defendant CBR Systems, Inc.'s Motion to Compel Arbitration or in the Alternative to Dismiss under Rule 12(b)(6) [Dkt. No. 46] and Defendant GI Partners' Notice of Joinder and Motion to Compel Arbitration or, in the Alternative, to Dismiss under Rule 12(b)(6) ("GI's Motion") [Dkt. No.

-8-

51] are fully briefed and currently pending before the Court in this Action.  *See also* Dkt. Nos. 59-60, 62-63.  These motions are currently set for hearing together with the Case Management Conference on May 5, 2022 at 2:00 p.m.

Plaintiffs previously moved for arbitration-related discovery [Dkt. No. 55].  The Court denied that motion, but "without prejudice to renewal, if permitted by the Court, once the briefing and hearing are complete on the motion to compel arbitration" [Dkt. No. 58].

### a.     **Plaintiffs' Statement**

For the reasons detailed in Plaintiffs' responses in opposition to Defendants' Motions to Compel Arbitration, Plaintiffs assert that the arbitration sentence in the subject contract is unconscionable and unenforceable, and also that the contract seeks to unlawfully prevent claims for public injunctive relief, requiring that Plaintiffs' California statutory claims be reserved for judicial determination.  In their oppositions to Defendants' motions to compel arbitration or to dismiss, Plaintiffs also renewed their motion for arbitration-related discovery on the issue of whether the arbitration clause in the service contract is enforceable.

Plaintiffs also assert that Defendants' anticipated motion to deny class certification is premature and that discovery regarding the alleged distinctions in the service contracts is required before such a determination, especially in light of the fact that Defendants are uniformly charging Consumers increased annual storage fees regardless of the alleged differences in the service contracts.

### b.     **Defendants' Statement**

To the extent Defendants' pending motions are not granted, Defendants anticipate filing an early motion to deny class certification based, *inter alia*, on the fact that the contracts between CBR and most purported class members are significantly different than the contracts between CBR and Plaintiffs.  To the extent that motion is also not granted, Defendants intend to oppose class certification, to file *Daubert* motions challenging Plaintiffs' class certification and merits experts, and to file motions seeking summary judgment.

### 5.     **Amendment of Pleadings**

Plaintiffs filed a First Amended Complaint (Dkt. No. 26) ("FAC") on October 7, 2021.  The FAC added Plaintiff Sirisha Koneru, claims under New York General Business Law Sections 349

-9-

and 350, a proposed New York subclass, a claim for damages pursuant to the Consumers Legal Remedies Act, a claim for breach of express warranty, and a claim for fraudulent concealment.

Plaintiffs filed a Second Amended Complaint (Dkt. No. 39) ("SAC") on November 10, 2021. The SAC added allegations about the relationship between CBR and GI, including that Plaintiffs and other consumers contract with CBR only but that CBR and GI collectively benefit from the allegedly improper increases in annual storage fees; dismissed Plaintiffs' claims for breach of contract, breach of implied covenant of good faith and fair dealing, breach of express warranty, violation of California's False Advertising Law, and violation of New York GBL Section 350 against GI (but maintained those claims against CBR); added a claim for breach of fiduciary duty against CBR only; and added claims for unjust enrichment, conversion, and money had and received against GI only.

      **a.**     **Plaintiffs' Statement**

As detailed in Plaintiffs briefing in opposition to Defendant Cord Blood Systems Inc' and GI partners' motions to dismiss, after filing their SAC, Plaintiffs discovered evidence that GI was not just an idle investor, but rather, that it did, in fact, collect revenues from consumers' annual cord blood storage fee payments. Plaintiffs intend to seek leave to amend their complaint to add Cooper as a party to this action, or to file a separate complaint against Cooper, following a ruling on Defendants' motions to compel arbitration.

On February 22, 2022, Plaintiff's counsel Rachel Soffin emailed all Defendants' counsel about adding Cooper as a party to this action. In response, Defendant CBR's counsel, Roxane Polidora responded as follows:

> For judicial economy and efficiencies, and to avoid unnecessary litigation expenses for all parties, plaintiff should, at a minimum, wait for the Court's ruling on the CBR and GI motions to compel arbitration/motions to dismiss prior to attempting to add a new party with no apparent bases. As we see no bases to add Cooper as a party, we would not stipulate to a motion to amend without first reviewing and evaluating the amendment.

Plaintiffs have not yet moved to amend their complaint, or to file a separate complaint against Cooper for judicial economy, to avoid unnecessary delay of a ruling in the pending litigation while Defendants continue to unlawfully profit from increased storage fees from Plaintiffs and Class

members. Plaintiffs' have detailed GI and Cooper's business practices, including discussions of margins and profits from cord blood storage, in their opposition to GI's Motion to Compel Arbitration [ECF No. 60]. This information was not the subject of guesswork. It came directly from a public transcript from Cooper's president, Albert G. White, which details Cooper's financial interest in the collection of storage fees, and which Cooper acquired from GI following its purchase of CBR from GI. Notably, in a recent Earnings Call with its investors on March 3, 2022, Cooper informed its investors that it "recognized roughly $34 million of revenues in the quarter as this was a stub period with only roughly 1.5 months of revenue. Of this, $23 million was in stem cell storage… the Generate business is integrating really well with some exciting potential as we incorporate stem cell storage into our labor and delivery product portfolio." *See* https://investor.coopercos.com/static-files/cec9d901-c1d3-4993-86b1-b3ad1bc2518b (last accessed April 27, 2022)

In addition, Defendant is just now filing a certificate of interested persons confirming that CBR is now wholly owned subsidiary of Cooper, which is highly relevant to Plaintiffs' analysis of when and whether to add Cooper to this action.

Plaintiffs are continuing to evaluate adding Cooper as a party to this action, and Defendants' threat of sanctions is entirely without basis, particularly considering Mr. White's confirmation of both GI and Cooper's involvement in the unlawful collection of storage fees, including the $23 million in stem cell storage revenue that it earned in just 1.5 months, and the recent confirmation of Cooper's interest in CBR. Plaintiffs will not be bullied by the threat of a Rule 11 sanction under these circumstances. It also cannot be ignored that GI, and likely Cooper, seeks to take advantage of the arbitration sentence in the Contract while simultaneously arguing that they have no liability under the Contract.

   **b.**   **Defendants' Statement**

A CMC statement is not the place to rehash issues addressed in the parties' pending motions; however, Defendants must briefly respond to Plaintiffs' injection of such issues into this statement.

*First*, Plaintiffs' assertion that an investor and parent company, like Cooper, has any independent liability to Plaintiffs based on acquisition is without merit, and that reality is not altered by Cooper's unremarkable discussion of its consolidated earnings following the acquisition. Thus,

Defendants believe that any allegations Plaintiffs may bring against Cooper would be factually and legally without merit, pursued solely for the improper purpose of harassment, and potentially sanctionable under Rule 11.

*Second*, as set forth in GI's Motion, Plaintiffs are improperly trying to paint GI (and now Cooper) as an alter ego of CBR, despite Plaintiffs having expressly abandoned those claims in their SAC. The fact that GI sold its stake in CBR to Cooper for a profit is not "evidence" that GI controlled CBR or that GI "collect[ed] revenues from consumers' annual cord blood storage fee payments," as Plaintiffs contend. The Cooper sale is an irrelevant sideshow and Cooper's statements have nothing to do with GI or its "business practices." Moreover, as discussed in GI's Motion, none of Plaintiffs' alleged new "evidence"—including the investor call with Mr. White—suggests that CBR transferred profits from excess storage fees to GI.

**6. Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have taken steps to preserve relevant documents relating to Plaintiffs' claims and Defendants' defenses, which are reasonably evident in this action.

Further, pursuant to Fed. R. Civ. P. 26(f) and ESI Guideline 2.02, the Parties have engaged in meet and confer discussions regarding what reasonable and proportionate steps are to be taken to preserve electronic discovery evidence relevant to the issues reasonably evident in this action. Should discovery proceed in this litigation, the Parties will continue to meet and confer on electronic discovery in an effort to establish a suitable protocol and submit a separate proposed order regarding a stipulated ESI protocol for the Court's review and entry that specifically delineates the procedures for electronic discovery in this litigation.

**7. Disclosures**

The Parties believe that initial disclosures are premature in light of the pending motions. As set forth in the Parties' proposed briefing schedule discussed below, the Parties have agreed to exchange initial disclosure information within one month of any order denying arbitration and dismissal of Plaintiffs' claims.

**8. <u>Discovery</u>**

No formal discovery has been exchanged to date. Should discovery proceed in this litigation, the Parties intend to agree on the terms of a protective order to protect confidential, proprietary, trade secret, or private information. As set forth above, the Court denied Plaintiffs' request for arbitration-related discovery without prejudice and Plaintiffs have renewed this discovery request in their oppositions to Defendants' pending motions to compel arbitration or dismiss. *See* Dkt. Nos. 58-60. Defendants opposed this renewed request for discovery in their reply briefs in support of their motions to compel arbitration or dismissal of Plaintiffs' claims. *See* Dkt. Nos. 62, 63.

**9. <u>Class Actions</u>**

All attorneys of record for the Parties have reviewed the Procedural Guidance for Class Action Settlement. The Parties have set forth a potential schedule for adjudication of Plaintiffs' motion for class certification in the Parties' proposed briefing schedule discussed below and, as reflected in that schedule, the Parties' discovery efforts shall focus on class certification issues leading up to Plaintiffs' deadline to move for class certification.

**10. <u>Related Cases</u>**

None.

**11. <u>Relief</u>**

a. **Plaintiffs' Statement**

As more fully set forth in Plaintiff's Second Amended Complaint, and subject to any amendments thereto, Plaintiffs seek certification of a Nationwide Class, and California and New York Classes, along with actual damages, and any other monetary relief provided by law, in an amount to be determined at trial; restitution, disgorgement, or other equitable relief; declaratory and injunctive relief as allowable under state and federal law; reasonable attorneys' fees and costs; and such other and further relief as this Court may deem just and proper.

b. **Defendants' Statement**

Defendants deny that any class is certifiable in this case and further deny that Plaintiffs are entitled to any relief, including any classwide or individual damages, injunctive relief, declaratory

relief, restitution, disgorgement, or any award of attorneys' fees or costs. Defendants seek an award of attorneys' fees and costs.

**12.   Settlement and ADR**

The Parties completed a full day of private mediation on February 14, 2022 with JAMS and the Honorable Jay C. Gandhi (Ret.). The case did not settle and there are no ongoing discussions.

**13.   Consent to Magistrate Judge for All Purposes**

The Parties do not consent to having a Magistrate Judge conduct all further proceedings.

**14.   Other References**

As set forth above, the Parties dispute whether this matter is subject to binding arbitration. The Parties are not aware of any references needed at this time to a special master or the Judicial Panel on Multidistrict Litigation.

**15.   Narrowing of Issues**

It is Plaintiffs position that any decision on whether this action will be litigated or arbitrated on a class basis is premature, including who decides the issue. Plaintiffs assert that any decision on this subject should be made following a ruling on Defendants' motions to compel arbitration, and independent and thorough briefing on this very important issue.

It is Defendants' position that other than the issues to be addressed in the pending motions to compel arbitration or dismiss discussed above, including the obvious preclusion of class arbitration under *Lamps Plus*, there are no further issues that can be narrowed at this time.

**16.   Expedited Trial Procedure**

The Parties do not believe that this is the type of case that could be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

**17.   Scheduling**

The Parties believe that it is premature to set a further schedule at this time and request that a further case management conference be set approximately one month following any denial of Defendants' motions to compel arbitration and dismiss. At that time, the nature and scope of any claims remaining to be litigated will be clear. Nevertheless, if the Court is inclined to do so at this time, the Parties jointly propose the following deadlines up to a hearing on class certification:

| Event | Deadline |
|---|---|
| Initial Disclosures | One (1) month following a ruling on arbitration and, if reached, dismissal |
| Close of Class Certification Fact Discovery (including any merits discovery overlapping with class certification). | Six (6) months following above |
| Plaintiffs' Expert Reports Pertaining to Class Certification. | Two (2) months following above |
| Defendants' Expert Reports Pertaining to Class Certification. | Two (2) months following above |
| Plaintiffs' Rebuttal Expert Reports Pertaining to Class Certification. | Three (3) weeks following above |
| Deposition of Class Certification Experts | Six (6) weeks following above |
| Plaintiffs' Motion for Class Certification | One (1) month following above |
| Defendants' Opposition(s) to Plaintiffs' Motion for Class Certification | One (1) month following above |
| Plaintiffs' Class Certification Reply Brief(s) | Three (3) weeks following above |
| Hearing on Plaintiffs' Motion for Class Certification | First available Court date based on above schedule (subject to availability of all counsel) |
| Further Case Management Conference | To be set by the Court following a ruling on class certification |

**18.    Trial**

At this stage of the proceedings, the Parties are unable to anticipate the length of trial with any certainty, but roughly approximate 7-10 trial days. Both Parties request a jury trial of all issues so triable.

**19.    Disclosure of Non-Party Interested Entities or Persons**

   **a.    Plaintiffs' Statement**

Plaintiffs previously filed a certificated of interested persons or entities. [Dkt. No. 41]. As set forth therein, Plaintiffs certify that no such interest is known other than that of the Proposed Class Members, and the named Defendants CBR and GI Partners, The Cooper Companies, Inc., as well as several Doe companies which may be revealed through discovery.

b. **CBR's Statement**

CBR files herewith an updated certification of interested entities or persons. As CBR also sets forth therein:

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, CBR states that pursuant to a merger agreement that became effective on December 17, 2021, it is now an indirect wholly owned subsidiary of The Cooper Companies, Inc. The Cooper Companies, Inc. is a corporation organized under the laws of Delaware and whose shares are publicly traded on the New York Stock Exchange. No other publicly held company owns more than a 10% interest in CBR.

Pursuant to Civil L.R. 3-15 and except as otherwise disclosed herein, as of this date, CBR is unaware of any person or entity, other than the named parties, with a financial or other interest that could be substantially affected by the outcome of this proceeding.

c. **GI's Statement**

GI Partners files herewith an updated certification of interested entities or persons. As noted therein, GI Partners is not a corporate entity and not a proper named defendant. As described below and based on the facts alleged by Plaintiffs, GI Generate Holdings LP ("Holdings") is the proper defendant. GI Partners is a family of companies, the majority of which have no relationship to the facts or issues in this case. In the interest of clarity and as set forth in its updated certification of interested entities or persons filed herewith, GI Partners provides the following statement regarding its corporate structure and entities with a potential interest in this proceeding:

GI Partners is an investment firm consisting of several funds and investment accounts. Prior to its sale to Cooper, several GI-sponsored entities held investments in Generate Life Sciences, all of which held their interests as shareholders in GI Generate Parent LLC ("Parent"), a holding company related to GI's acquisition of CBR. The majority of GI's investment in Parent was held through Holdings, which was owned by GI Partners Fund V LP, GI Partners Fund V-A LP, and GI Partners Executive Fund V LP (collectively, "Fund V"). In addition to Holdings, two other GI-sponsored investment vehicles had invested in Parent: Bay Opportunities II LP and Generate Opportunity LP (collectively, the "Co-invest Vehicles"). Holdings, Fund V, and the Co-invest Vehicles are controlled, either directly or indirectly through their respective general partners, by GI GP V LLC

("GP V"), an entity formed to serve as the ultimate general partner of Fund V and its related entities. The limited partners in Fund V and the Co-Invest Vehicles are third-party investors unaffiliated with GI Partners. As a result, most of the entities listed above would not be proper defendants to this case, and Holdings remains the only proper defendant.

**20.     Professional Conduct**

All attorneys of record for all parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21.     Other Matters**

To the extent that discovery goes forward in this litigation, the Parties: (i) consent to service by electronic means with respect to discovery, provided that service is made on all designated counsel identified by each Party; and (ii) agree that privileged documents created after the commencement of this lawsuit need not be disclosed on a privilege log.

Dated: April 28, 2022                    PILLSBURY WINTHROP SHAW PITTMAN LLP

                                         /s/ Dianne L. Sweeney
                                    By:  DIANNE L. SWEENEY

                                         Attorneys for Defendant CBR SYSTEMS, INC.

                                         MILLER BARONDESS, LLP

                                         /s/ Casey B. Sypek
                                    By:  CASEY B. SYPEK

                                         Attorneys for Defendant GI PARTNERS


                                         MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC

                                         /s/ Rachel L. Soffin
                                    By:  RACHEL L. SOFFIN

                                         Attorneys for Plaintiffs

**RULE 5-1(i)(3) ATTESTATION**

I, Dianne L. Sweeney, attest pursuant to Rule 5-1(i)(3) of the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California that I have obtained the concurrence in the filing of this document from the other signatories.

Dated:  April 28, 2022                          PILLSBURY WINTHROP SHAW PITTMAN LLP

                                                 */s/ Dianne L. Sweeney*
                                          By:   DIANNE L. SWEENEY

                                                 Attorneys for Defendant CBR SYSTEMS, INC.