UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY COHEN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CBR SYSTEMS, INC., et al.,<br><br>    Defendants. | Case No. 21-cv-06527-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 46, 51 |

Pending before the Court is Defendant CBR Systems, Inc.'s ("CBR") motion to compel arbitration, briefing for which is complete. *See* Dkt. Nos. 46 ("Mot."), 59 ("Opp."), 63 ("Reply").[1] Defendant GI Partners also moves to compel arbitration. *See* Dkt. Nos. 51 ("GI Partners Mot."), 60 ("GI Partners Opp."), and 62 ("GI Partners Reply").[2]  For the reasons detailed below, the Court **GRANTS** both motions.

I.   **BACKGROUND**

Plaintiffs allege that Defendant CBR provides "newborn stem cell processing and preservation services," acting as a private cord blood bank and storage service. *See* Dkt. No. 38 ("SAC") ¶¶ 3-5. According to Plaintiffs, Defendant GI Partners acquired Defendant CBR in August 2018. *Id.* ¶ 6. Plaintiffs are clients who pay to store cord blood with CBR. *Id.* ¶¶ 8, 27-29.  They allege that CBR leads consumers to believe that the annual storage fee is a fixed fee but then increases the annual fee over time and forces consumers to pay undisclosed costs. *Id.* ¶¶ 8, 13.  Plaintiffs brings numerous causes of action against Defendants alleging breach of contract and

---

[1] Plaintiffs also submitted two notices of supplemental authority. *See* Dkt. Nos. 66 and 71.
[2] The Court finds these matters appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

deceptive marketing and billing practices. *See id.* ¶¶ 155-374.

Defendants move to compel arbitration based on the mandatory arbitration provision included in the contracts between CBR and Plaintiffs. *See* Mot. at 1; GI Partners Mot. at 9-10. Each Plaintiff acknowledges that she entered into a contractual agreement with CBR governing the terms of storage for her children's cord blood. SAC ¶¶ 80-81, 90, 103, 120. Plaintiff Sirisha Koneru entered into a contract with CBR in April 2011. SAC ¶ 120; Dkt. No. 47 Ex. 1 ("Koneru Contract"); *see also* Dkt. 38-3.[3] Plaintiff Amy Cohen initially entered into a contract with CBR in October 2012, but the second contract she signed with CBR in November 2013 superseded "all previous agreements . . . relating to the subject matter of [the second] Agreement." SAC ¶ 103; Dkt. 38-2 at 5-15 ("Second Cohen Contract"). Plaintiff Katharine Vaccarella entered into a contract with CBR in January 2015. SAC ¶ 90; Dkt. 38-1 ("Vaccarella Contract").

The Koneru Contract is four pages long and has the following arbitration provision on the first page:

> "Any dispute or controversy arising between Client and CBR shall be resolved by binding arbitration following the rules provided in Title 9 of the California Code of Civil Procedure. In the event of arbitration, or any court proceedings, the court or arbitrator may award reasonable attorneys fees and costs to the prevailing party in addition to any other relief to which the party is entitled. This Agreement will be governed by and construed in accordance with the laws of the State of California without reference to its conflicts of law principles."

Koneru Contract at 1.

The Second Cohen and Vaccarella Contracts are eleven pages long and have the following arbitration provisions on page 4 under the bold section title, "Governing Law":

> "This Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to its conflicts of laws provisions. Any dispute or controversy arising between or among you, the child, and CBR shall be finally and

---

[3] Defendant CBR asks the Court to take judicial notice of the Koneru Contract under the incorporation-by-reference doctrine. Dkt. No. 47. Unlike the Vaccarella and Cohen Contracts, which were attached in full to the SAC, Plaintiffs only submitted a copy of the last page of the Koneru Contract. The Court finds that the Koneru Contract is incorporated by reference in Plaintiffs' complaint because it is extensively referenced and forms the basis of Plaintiffs' claims. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The contract is therefore treated "as though [it is] part of the complaint itself." *See id*. The Court **GRANTS** Defendant's request for judicial notice of the Koneru Contract.

2

>conclusively resolved by binding arbitration following the rules provided in Title 9 of the California Code of Civil Procedure. In the event of arbitration, or any court proceedings, the court or arbitrator may award reasonable attorneys' fees and costs to the prevailing party in addition to any other relief to which the party is entitled."

Second Cohen Contract at 8; Vaccarella Contract at 4.

All of the contracts have a California choice of law provision. Koneru Contract at 1 ("This Agreement will be governed by and construed in accordance with the laws of the State of California without reference to its conflicts of law principles."); Second Cohen Contract at 8 ("This Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to its conflicts of law provisions."); Vacarrella Contract at at 4 (same).

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to

arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

### III. DISCUSSION

#### A. A valid and enforceable arbitration agreement exists and applies to Plaintiffs' claims against CBR.

Plaintiffs acknowledge that they entered into contracts with CBR that contain arbitration provisions. *See* SAC ¶¶ 46, 81. The Court finds that these are valid arbitration agreements that encompass Plaintiffs' claims against CBR, as the clauses are broadly worded to apply to "[a]ny dispute or controversy arising between" Plaintiffs and CBR. *See* Koneru Contract at 1; Second Cohen Contract at 8; Vaccarella Contract at 4.

Plaintiffs argue that the Court should not enforce the arbitration clause under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2007) and because it is unconscionable. As explained below, these arguments are unpersuasive, and the Court finds that Defendant CBR can compel arbitration.

#### i. Plaintiffs can seek public injunctive relief in arbitration.

Plaintiffs argue that they are seeking public injunctive relief under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), with the consequence that the motion to compel arbitration should be denied. *See* Opp. at 4. "In *McGill*, the California Supreme Court held that no one can contractually waive all rights to seek public injunctive relief." *DiCarlo v. MoneyLion, Inc.*, 988 F.3d 1148, 1152 (9th Cir. 2021); *see also McGill*, 2 Cal. 5th at 956 ("[T]he question before [the Court] is whether the arbitration provision is valid and enforceable insofar as it purports to waive McGill's right to seek public injunctive relief *in any forum*." (emphasis in original)). The Ninth Circuit has since interpreted California case law to establish that if a contract allows plaintiffs to seek public injunctive relief through arbitration, it does not violate the *McGill* rule and is enforceable. *See DiCarlo*, 988 F.3d at 1158 (enforcing an arbitration agreement where public injunctive relief was sought for UCL, FAL, and CLRA claims).

Here, all of the contracts between Plaintiffs and CBR contain the provision: "[T]he court or

4

arbitrator may award reasonable attorneys' fees and costs to the prevailing party in addition to any other relief to which the party is entitled." Koneru Contract at 1; Second Cohen Contract at 8; Vaccarella Contract at 4. The Court finds that "any other relief" could include public injunctive relief. The contracts include a clause that limits Defendant CBR's liability to the total amount paid by Plaintiffs to CBR, except for gross negligence or willful misconduct, but the plain language of the provision does not bar injunctive relief. *See* Koneru Contract at 1; Second Cohen Contract at 8; Vaccarella Contract at 4; *Bishay v. Icon Aircraft, Inc.*, Case No. 2:19-cv-00178-KJM-AC, 2019 WL 3337885, at *4 n.2 (E.D. Cal. July 25, 2019) (finding that a similar limitation of liability provision, for purposes of determining standing, did not bar the plaintiff from seeking public injunctive relief under the CLRA and UCL). Because Plaintiffs are not barred from seeking public injunctive relief through arbitration, the contracts do not violate the *McGill* rule.

### ii. The arbitration provision is not unconscionable and is therefore enforceable.

Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280-81 (9th Cir. 2006). Procedural and substantive unconscionability need not be present in equal amounts. *Id.* The two are evaluated on a "sliding scale," meaning that a stronger showing of procedural unconscionability means that less evidence of substantive unconscionability is needed to establish overall unconscionability, and vice versa. *Id.*

#### a. Some features of the agreements suggest, at most, minimal, technical procedural unconscionability.

California courts "recognize that showing a contract is one of adhesion does not always establish procedural unconscionability." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 n.9 (2015); *see also Nagrampa*, 469 F.3d at 1281. To determine whether a contract of adhesion is oppressive and therefore procedurally unconscionable, California courts consider several factors, including: "(1) the relative bargaining power and sophistication of the parties, (2) the complaining parties' access to reasonable market alternatives, and (3) the degree to which an offending provision of a contract is buried in a lengthy . . . agreement." *Shierkatz Rllp v. Square, Inc.*, Case No. 15-cv-02202-JST, 2015 WL 9258082, at *9

5

(N.D. Cal. December 17, 2015) (internal quotation omitted); *see also Nagrampa*, 469 F.3d at 1281-84.

Considering these factors, the Court finds a minimal degree of procedural unconscionability arising from the adhesive nature of the contracts between Plaintiffs and CBR. The relative bargaining power between the parties favors Defendant, and the contracts were presented on a take-it-or-leave-it basis. *See* Opp. at 9-10. Plaintiffs allege that Defendant CBR is "the world's largest stem cell collection and storage company," but do not allege that Defendant CBR was their only option. *See* SAC ¶ 5. Despite Plaintiffs' argument that CBR never called the arbitration clause to their attention and that the agreement was "buried" in small text in multi-page contracts, *see* Opp. at 2, the contracts are relatively short. The Koneru Contract is only four pages long with the arbitration clause on the first page, and the Second Cohen and Vaccarella Contracts are eleven pages long with the arbitration provision on page 4 under the bolded section heading "Governing Law." Koneru Contract at 1; Second Cohen Contract at 8; Vaccarella Contract at 4; *see* Mot. at 2.[4]

Plaintiffs argue that the arbitration provision creates procedural surprise since it does not specify who will serve as arbitrator or what arbitral rules will apply. *See* Opp. at 10-12. The contracts state that arbitration shall be conducted "following the rules provided in Title 9 of the California Code of Civil Procedure." Koneru Contract at 1; Second Cohen Contract at 8; Vaccarella Contract at 4. Title 9 provides basic arbitration rules, such as procedures for appointing an arbitrator, Cal. Civ. Pro. § 1281.6, rules for witness lists and the arbitration proceedings, Cal. Civ. Pro. § 1282.2, and procedures for transcription, Cal. Civ. Pro. § 1282.5, to name a few. Plaintiffs do not allege that the Title 9 rules are substantively unfair, and the record does not suggest that Defendant was trying to "artfully" hide lopsided arbitration rules. *See Davis v. Kozak*, 53 Cal. App. 5th 897, 909 (Cal. Ct. App. 1st Dist. 2020) (rejecting the plaintiff's claim that it was unconscionable to not specify which version of the AAA rules would apply).

---

[4] The 11-page Second Cohen and Vaccarella Contracts are a collection of forms. Within it, the "Client Service Agreement," which contains the arbitration agreement and requires its own signature, is five pages long.

Moreover, "absent preclusive language, an arbitration agreement will be construed to include 'such procedures as are necessary to vindicate' a plaintiff's claim." *Anderson v. Trimark ERF, Inc.*, No. 18-cv-2123-HSG, Dkt. No. 25 at 4 (August 28, 2018) (citing *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 106-07, 112 (2000)). In *Anderson*, the arbitration agreement was silent "on essentially every substantive issue outside of its own scope," and the Court construed it "to incorporate all procedures necessary" for the plaintiff to vindicate his claims, including the selection of a neutral arbitrator, availability of discovery, etc. *Id.* That same reasoning applies here, and the Court does not find that the arbitration agreement creates procedural surprise.

### b. The contract is not substantively unconscionable.

In addition to procedural unconscionability, a contract must also be substantively unconscionable for a court to find the contract to be unenforceable. *See Nagrampa*, 469 F.3d at 1280-81. "[A]n arbitration provision is substantively unconscionable if it is 'overly harsh' or generates 'one-sided results.'" *Id.* (quoting Armendariz, 24 Cal.4th at 114); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). But "[a] contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at 246 (internal quotations omitted).

First, Plaintiffs allege that the contract lacks mutuality, and is substantively unconscionable, because Defendant can refer unpaid fees to collection agencies. *See* Opp. at 14-15. As an initial matter, the Koneru Contract does not contain a provision allowing unpaid fees to be referred to collection agencies, and on its face does not lack mutuality.[5] The Second Cohen and Vaccarella Contracts allow payments that are 180 days past due to "be forwarded to a collection agency for further action." Second Cohen Contract at 6; Vaccarella Contract at 2. The contracts do not specify whether the collection agency's "further action" can involve litigation in court. In

---

[5] To the extent Plaintiff Koneru relies on allegations about Defendants' purported debt collection practices as to other people, that is not relevant to whether the Koneru Contract, as written, lacks mutuality.

7

any case, the Court agrees with other courts that have found allowing defendants to rely on collection agencies for the limited purpose of collecting past due accounts is not so one-sided as to shock the conscience. *See, e.g.*, *Dominguez v. T-Mobile USA, Inc.*, Case No. EDCV 16-01429-JGB, 2017 WL 8220598, at *7 (C.D. Cal. Jan. 18, 2017) ("While the scope of the 2004 arbitration provisions is clearly broad, aside from the collection referral exception, it appears that T-Mobile is subject to the same conditions as Plaintiff."); *Gatton v. T-Mobile USA, Inc.*, Case No. SACV 03-130 DOC, 2003 WL 21530185, at *11 (C.D. Cal. April 18, 2003) ("The Court does not agree that allowing such collection efforts by a collection agency is so one-sided as to 'shock the conscience.'" (citation omitted)).

Second, Plaintiffs allege that the contracts lack mutuality because they limit Defendant CBR's liability to the total amount paid to CBR. *See* Opp. at 15-16. However, capping monetary damages is a standard practice and is not unconscionable. *See, e.g., Bishay v. Icon Aircraft, Inc.*, Case No. 2:19-cv-00178-KJM-AC, 2019 WL 3337885, at *5 (E.D. Cal. July 25, 2019); 1 Witkin, Summary 11th Contracts § 697 (2022) (collecting cases). And, as discussed above, this provision does not bar Plaintiffs from seeking public injunctive relief.

Finally, Plaintiffs assert that the fee-shifting provision providing that the arbitrator "may award attorneys' fees and costs to the prevailing party" is unconscionable. Opp. at 13. While California law prohibits mandatory fee-shifting provisions, the fee-shifting provision at issue here is permissive, not mandatory. *See* Cal. Code Civ. Pro., § 1284.3(a). The California Supreme Court has held that the unconscionability of cost-shifting provisions is context-specific, and in *Sanchez v. Valencia Holding Co., LLC*, it required the appellant to show that "fees and costs in fact would be unaffordable or would have a substantial deterrent effect in [appellant's] case." 61 Cal. 4th 899, 920 (2015). Plaintiffs here have made no factual showing as to what they can or cannot afford, and under the rules provided in Title 9 of the California Code of Civil Procedure, fees and costs, with some exceptions, must be waived for indigent consumers. *See* Cal. Civ. Proc. Code § 1284.3. The Court recognizes that, for individuals bringing potentially low value claims, the risk of being required to pay attorneys' fees and costs is not irrelevant. *See* Opp. at 13-14. Overall, however, the fee-shifting provision is not overly harsh, and the Court does not find it to

be unconscionable. *See Thompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1025-26 (9th Circuit 2016) (finding neither a "bilateral attorneys' fee shifting clause in the Terms of Service" nor a "provision in a consumer contract that shifts arbitration fees" unconscionable under California law).[6]

In sum, the Court does not find that the arbitration provision "shock[s] the conscience." *See Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("Recently, the California Supreme Court has emphasized that unconscionability requires a substantial degree of unfairness beyond a simple old-fashioned bad bargain. Rather, unconscionable contracts are those that are so one-sided as to shock the conscience." (internal quotations and citations omitted)). Accordingly, the arbitration provision is not unconscionable and is enforceable.

### B. Defendant GI Partners can compel Plaintiffs to arbitrate.

The final issue is whether Plaintiffs' claims against Defendant GI Partners should be arbitrated. Defendant GI Partners is not a signatory to the contracts, but it argues that equitable estoppel requires the claims against it to be arbitrated as well. *See* GI Partners Mot. at 9-10, 12-16. Generally, one must be a party to an arbitration agreement to invoke it. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021). However, "a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claim when the causes of action against the nonsignatory are 'intimately founded in and intertwined with' the underlying contract obligations.'" *Garcia v. Pexco, LLC*, 11 Cal. App. 5th 782, 786 (Cal. Ct. App. 4th Dist. 2017) (citation omitted); *see also Franklin*, 998 F.3d at 870. "[T]o compel arbitration of a plaintiff's claims against a nonsignatory . . . the court must decide both that (1) the plaintiff is equitably estopped from escaping the contract, and (2) the claims fall within the scope of the contract's arbitration clause." *Franklin*, 998 F.3d at 872.

A plaintiff is equitably estopped from escaping the contract if the signatory's claims against a non-signatory arise out of the underlying contract or the non-signatory's conduct is intertwined with a signatory's conduct. *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1155-56 (N.D. Cal. 2012). Plaintiffs' claims against Defendant CBR and Defendant GI Partners

---

[6] Even if the Court were to find the fee-shifting provision to be unconscionable, it also would find the provision to be severable such that the contract would still be enforceable.

are "based on the same facts and are inherently inseparable." *See Garcia*, 11 Cal. App. 5th at 786. Plaintiffs allege that they are being charged fees beyond what the contract allows and that they were fraudulently induced to enter the contract. *See generally* SAC. Moreover, Plaintiffs allege that Defendant GI Partners acted through Defendant CBR, using its ownership of Defendant CBR to overcharge Plaintiffs. SAC ¶ 60. The Court finds that the conduct of Defendant GI Partners "is substantially interdependent with the conduct of" Defendant CBR, and unless Defendant GI Partners "is compelled to arbitrate, arbitration proceedings between [Defendant CBR and Plaintiffs] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *See Fujian Pacific Elec. Co. v. Bechtel Power Corp.*, No. C 04–3126 XIHP, 2004 WL 2645974, at *5 (N.D. Cal. Nov. 19, 2004).

The Court also finds that Plaintiffs' claims against Defendant GI Partners fall within the scope of the contract's arbitration clause. The Koneru Contract states that "[a]ny dispute or controversy arising between Client and CBR shall be resolved by binding arbitration[.]" Koneru Contract at 1. The Second Cohen Contract and the Vaccarella Contract state that "[a]ny dispute or controversy arising between or among you, the child, and CBR shall be finally and conclusively resolved by binding arbitration[.]" Second Cohen Contract at 8; Vaccarella Contract at 4. Plaintiffs allege that Defendant GI Partners used Defendant CBR to overcharge annual storage fees, increasing profits. *See* SAC ¶ 141 ("Once GI Partners acquired CBR in 2018, it asserted some control over CBR's operations and/or knew of and participated in the scheme to deceptively and unlawfully increase Consumers' fixed storage fees . . . ."). In short, Plaintiffs' dispute with Defendant GI Partners *is* their dispute with Defendant CBR.

The cases Plaintiffs cite on this topic are distinguishable. *See* GI Partners Opp. at 10; *see, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013) (retailer had its own relationship with plaintiff separate from the contractual relationship between plaintiff and the third-party service provider); *Stafford v. Rite Aid Corp.*, 998 F.3d 862, 865 (9th Cir. 2021) (retailer could not invoke an arbitration agreement it had with an employee to compel a customer to arbitrate). Here, Defendant GI Partners has no relationship with Plaintiffs except for Plaintiffs' relationship with Defendant CBR, and Plaintiffs, the ones being compelled to arbitration, are

signatories to the arbitration agreement. As such, the Court finds that the claims against Defendant GI Partners also must be arbitrated.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendant CBR's motion to compel arbitration, **GRANTS** Defendant GI Partners' motion to compel arbitration, and **STAYS** this action pending resolution of the arbitration. As such, Defendants' motions to dismiss in the alternative are moot. *See* Dkt. Nos. 46, 51. For clarity, Plaintiffs' individual claims are being referred to individual arbitration because the contract is silent on the issue of class-wide arbitration. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019) ("[A] court may not compel arbitration on a classwide basis when an agreement is 'silent' on the availability of such arbitration.").

The parties are directed to file a joint status report regarding the status of the arbitration proceeding 120 days from the date of this order and every 120 days thereafter unless otherwise ordered. The parties are also directed to jointly notify the Court within 48 hours of the conclusion of the arbitration proceeding.

**IT IS SO ORDERED.**

Dated: 9/6/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge