Rachel Soffin (FL Bar No. 18054)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
800 S. Gay St. Ste 1100
Knoxville, TN 37929
T: (865) 247-0080
rsoffin@milberg.com

*Attorneys for Plaintiffs*

*[Additional counsel listed on signature page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY COHEN, KATHARINE VACCARELLA, and SIRISHA KONERU, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CBR SYSTEMS, INC., GI PARTNERS, and DOES 1-10,<br><br>Defendants. | Case No. 4:21-cv-06527-HSG<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>**NOTICE OF MOTION; MOTION FOR ORDER TO CONSOLIDATE ARBITRATIONS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:    SEPTEMBER 14, 2023<br>TIME:    2 P.M.<br>CRTRM:   2 – 4TH FLOOR |

**TO THE COURT, ALL PARTIES, AND TO THEIR RESPECTIVE ATTORNEY(S) OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs Amy Cohen, Katharine Vaccarella, and Sirisha Koneru respectfully move the Court for an order compelling consolidated arbitration of Plaintiffs' claims on the bases set forth in the Memorandum of Points and

-2-

Authorities in Support Thereof filed concurrently herewith. Plaintiffs' Motion is scheduled to be heard on September 14, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard in the courtroom of the Honorable Haywood S. Gilliam, Jr., United States District Court Judge, located at 1301 Clay Street, Oakland, California 94612,

As set forth below, the Court granted Defendants' motions to compel arbitration pursuant to an arbitration provision contained within the agreements between each individual Plaintiff and Defendants. Each arbitration provision explicitly states that Title 9 of the California Code of Civil Procedure, otherwise known as the California Arbitration Act, is the controlling law for purposes of the arbitration provision. Pursuant to Title 9 of the California Code of Civil Procedure, and specifically CA Civ Pro Code § 1281.3, Plaintiffs seek an order by the Court consolidating their individual claims, which are based upon identical challenged contract language and legal claims, and which will promote efficiency, prevent wasting resources, and consistent application of the law.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     BACKGROUND

Plaintiffs ("Claimants") filed this case on August 24, 2021 as a class action in this Court against Defendants CBR Systems, Inc. ("CBR") and GI Partners alleging that Defendants uniformly and deceptively misled consumers into contracting for cord blood storage services by offering a fixed fee for storage years 2-18 when, in actuality, Defendants surreptitiously increased the annual fee several times.  (ECF No. 38 at ¶ 13.)  Defendants have the largest market share of private cord blood storage in the United States, and each Plaintiff entered into a uniform agreement (collectively, the "Contracts") for the storage of cord blood with Defendants which required a significant up-front cost in addition to fixed annual payments.  (*Id.* at ¶ 4, 8.)  Plaintiffs brought causes of action for breaches of contract, breaches of the implied covenant of good faith and fair dealing, breaches of express warranty, and violations of various state consumer protection statutes, each based upon Defendants' increase in the annual cord blood storage fees contained in the agreements.  Each of the Contracts are identical, in pertinent part, in that they promise fixed annual payments. (ECF No. 72 at 2–3.)

Despite providing a different price for annual payments, the Contracts each indicate that the annual storage fees will be a fixed price for years 2-18.  Plaintiff Koneru's contract (ECF Nos. 38-3 and 47 at 8, the "Koneru Contract") and Plaintiff Cohen's second contract (ECF No. 38-2 at 4, the "Second Cohen Contract") each state within the "Payment Information" section of their respective Contracts the statement "Annual Storage Fee Per Year (Years 2-18) $125.00" in bold font, which affirms that the annual storage rate will be fixed at $125.00.  Plaintiff Vaccarella's contract (ECF No. 38-1 at 9, the "Vaccarella Contract") states within the "Payment Information" section of the Contract, the statement "Annual Storage Fee Per Year (Years 2-18) $130.00" appears in a bold font, similarly affirming that the annual storage rate will be fixed at $130.00.

The Contracts also contained arbitration language. Each arbitration provision expressly provides that the Contracts as a whole will be governed by California law and that the governing procedural law is expressly Title 9 of the California Code of Civil Procedure. The Koneru Contract states as follows:

> **Any dispute or controversy arising between Client and CBR shall be resolved by binding arbitration following the rules provided in Title 9 of the California Code of Civil Procedure**. In the event of arbitration, or any court proceedings, the court or arbitrator may award reasonable attorneys' fees and costs to the prevailing party in addition to any other relief to which the party is entitled. This agreement will be governed by and construed in accordance with the laws of the State of California without reference to its conflicts of law principles.

(ECF No. 38-3, ECF No. 47 at 5, ECF No. 72 at 2 (emphasis added).) Similarly, the Second Cohen Contract and the Vaccarella Contract provide the following:

> This Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to its conflicts of laws provisions. **Any dispute or controversy arising between or among you, the child, and CBR shall be finally and conclusively resolved by binding arbitration following the rules provided in Title 9 of the California Code of Civil Procedure**. In the event of arbitration, or any court proceedings, the court or arbitrator may award reasonable attorneys' fees and costs to the prevailing party in addition to any other relief to which the party is entitled.

(ECF No. 38-2 at 8, ECF No. 38-1 at 4, ECF No. 72 at 2–3 (emphasis added).) On motion by Defendants, the Court ordered Plaintiffs to arbitration on September 6, 2022. (*Id.* at 11.)

Subsequently, the Parties met and conferred over arbitration and agreed that Claimants will arbitrate against Defendant CBR Systems, Inc. and CooperSurgical Inc. ("Respondents") using JAMS. (ECF No. 77 at 2.) However, and as noted previously in the Parties' most recent Joint Status Report filed on May 4, 2023, Plaintiffs proposed and Respondents rejected consolidation of Claimants' individual claims before a single arbitrator. (*Id.*) Critically, Claimants were **NOT** seeking class arbitration. Claimants

merely proposed consolidating the individual claims of each Claimant into a single arbitration before a single arbitrator for individual resolution. Because Respondents opposed the request, Plaintiffs now seek an Order of the Court consolidating the individual claims and referring them to a single arbitration before a single arbitrator for individual resolution pursuant to CA Civ Pro Code § 1281.3.

The JAMS Comprehensive Arbitration Rules and Procedures (the "JAMS Rules") account for and permit consolidation. Rule 6(e) of the JAMS Rules, the rule governing "Preliminary and Administrative Matters," permits consolidation of arbitrations when the arbitrations involve "common issues of fact or law."[1] Despite both the CAA and the JAMS Rules permitting consolidation, Respondents would not agree to consolidate Claimants' individual claims.

Consolidation is warranted in this case based upon the plain language of the arbitration provisions in question and would be consistent with both the Court's Order compelling arbitration, the underlying policy reasoning for consolidation, the JAMS rules, and prior positions taken by CBR. As previously argued by CBR (*see, e.g.,* ECF No. 46 at 7 and ECF No. 63 at 6), each arbitration agreement identifies Title 9 of the California Code of Civil of Procedure or the California Arbitration Act as the governing procedural law. Title 9 Chapter 2, CA Civ Pro Code § 1281.3, permits a party bound by an arbitration agreement to "petition the court to consolidate separate arbitration proceedings." California law provides that a court may order an arbitration to proceed on a consolidated basis where, as here, Claimants have separate Contracts with Respondents, the disputes are related to similar transactions, and common issues of fact and law exist, creating a substantial risk of conflicting results should different arbitrators preside over individual arbitrations. All of the liability issues related to all Claimants are substantially and materially similar and premised upon Respondents enticing

---

[1] https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Comprehensive_Arbitration_Rules-2021.pdf (last accessed June 7, 2023).

Claimants into cord blood storage agreements with fixed annual fees which were increased during the course of the Contracts. Thus, consolidation here would support the underlying policy values in favor of consolidation, such as the promotion of judicial efficiency, avoidance of wasting resources, and consistent application of the rule of law. Additionally, consolidation would be consistent with the Court's earlier ruling as well as the JAMS Rules. Accordingly, Plaintiffs respectfully seek an order from this Court consolidating Plaintiffs' claims into a single consolidated arbitration.

## II. DISCUSSION

### A. The plain language of the Contracts incorporates the California Arbitration Act as the governing procedural law.

There is no question that the California Arbitration Act, or Title 9 of the California Code of Civil Procedure (hereinafter the "CAA"), is expressly incorporated into Claimants' Contracts and intended to govern any arbitration between Claimants and Respondents.[2] In pertinent part, any dispute or controversy between Claimants and Respondents will be "**resolved by binding arbitration following the rules provided in Title 9 of the California Code of Civil Procedure**." (ECF No. 72 at 2–3 (emphasis added).) This is distinct from, and in addition to, the choice of law language included in the arbitration provisions for purposes of governing and construing the agreements, which is also California law. (*Id.*) Previously, the Ninth Circuit and California appellate courts have held that express incorporation of the CAA means that the Federal Arbitration Act does not apply and, instead, the California Code of Civil Procedure will apply. *See S. Cal, Ariz., Colo., and S. Nev. Glaziers Architectural Metal and Glass Workers Pension Trust v. Sardagna*, 7 Fed. App'x 754, 1 (9th Cir. 2001) (holding that "contracting parties 'are generally free to structure their arbitration agreements as they see fit'" and explaining that because the parties incorporated the procedural law of

---

[2] Arguing that the California Arbitration Act is incorporated into the Contracts is consistent with Plaintiffs' prior arguments relating to the unconscionability of the arbitration provisions and does not constitute any waiver thereof.

California, the trial court correctly applied California law when deciding the motion to compel arbitration (quoting *Volt Info Sciences, Inc. v. Bd. Of Trustees of the Leland Stanford Junior Univ.*, 489 U.S. 468, 109 S. Ct. 1248 (1989))); *Mount Diablo Med. Ctr. V. Health Net of Cal., Inc.*, 101 Cal. App. 4th 711, 714, 124 Cal. Rptr. 2d 607, 608 (2002) (holding that "the parties intended to incorporate California procedural law governing the enforcement of their agreement to arbitrate, and that these provisions are not preempted" by the Federal Arbitration Act); *Gravillis v. Coldwell Banker Residential Brokerage Co.*, 143 Cal. App. 4th 761, 784, 49 Cal. Rptr. 3d 531, 548 (2006) (applying the CAA "[w]here the parties' agreement contain[e]d a choice-of-law clause that California will apply").

**B. Prior positions taken by CBR further support that the California Arbitration Act supplies the governing procedural law.**

Despite Respondents' position to the contrary when their counsel met and conferred with Claimants' counsel, Respondents previously argued to the Court that the CAA is the applicable law. For example, in CBR's Motion to Compel Arbitration, CBR prefaced its explanation of the arbitration provisions by stating that "Each contract includes mandatory arbitration, permissive fee-shifting, and California choice of law provisions." (ECF No. 46 at 2.) Likewise, CBR argued against the unconscionability of the arbitration provisions by stating "The Contracts are governed by California law." (*Id.* at 5.) CBR posited that incorporation of Title 9 of the California Code of Civil Procedure is clear enough within the Contracts that the argument that the language "imposes 'procedural surprise' . . . fails the straight face test." (*Id.* at 10.) CBR goes so far as to quote the language in question on this Motion when CBR argued that the fee shifting language was not unconscionable:

> Moreover, even if permissive fee shifting were precluded by the CAA—which it is not—**the CAA would plainly** prevail under **the terms of the arbitration agreement itself**, which **mandates that arbitration 'shall be' resolved "following the rules provided in Title 9 of the California Code of Civil Procedure"**—*i.e.*, **the CAA**.

(*Id.* at 7 (emphasis added).)  CBR yet again relies on this provision in its Reply in Support of its Motion to Compel Arbitration when it stated: "**[T]he arbitration provision expressly invokes** 'the rules provided in Title 9 of the California Code of Civil Procedure,' *i.e.*, **the California Arbitration Act**, which **sets default rules**." (ECF No. 63 at 6 (emphasis added.)

Respondents cannot jettison their previous reliance on the notion that the CAA was expressly incorporated into the Contracts simply because it is now inconvenient for them to continue relying upon the CAA.  Previously, Respondents' position could not have been clearer – the CAA contains the default rules for any arbitration between the Parties.  It is inconsistent for Respondents to contend that the CAA applied before—when Plaintiffs argued the fee shifting language rendered the arbitration provision unconscionable—but not now, when Claimants seek to consolidate the arbitrations. Respondents do not have the luxury of picking and choosing when the CAA applies, it either does or does not.  To argue CA Civ Pro Code § 1281.3 does not apply to the procedural question of whether the claims should be consolidated would be asking the Court to excise altogether the language incorporating the CAA into the Contracts and directly contradicts Respondents' reliance on the same language in arguments submitted previously to the Court.

**C. United States Supreme Court precedent interpreting the Federal Arbitration Act is inapplicable to the arbitration provisions between the Parties and is not dispositive to the resolution of this Motion because the Parties chose the California Arbitration Act to govern.**

Because the Parties directly incorporated the CAA into the Contracts, this case is removed from the ambit of Supreme Court precedent interpreting the Federal Arbitration Act, which would include cases such as *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003), *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), and *Lamps Plus, Inc. v. Varela*, 139 S, Ct, 1497 (2019), because "the parties can [and did] elect to be governed by California arbitration law instead of the FAA." *Sproul v. Oakland Raiders*, Nos. A104542, A106658, 2005 WL 1941388, at *10 (1st Dist. Cal. Ct. App. Aug. 15, 2005); *Cal. Correctional Peace Officers Ass'n v. State*, Nos. A113595, A118069, 2008 WL 2232652, at *9 (1st Dist. Cal. Ct. App. June 2, 2008) (distinguishing *Green Tree* because the FAA was the applicable law in *Green Tree* and not the California Civil Procedure Code). Further, the above-mentioned Supreme Court cases are inapplicable as they do not address the legal question raised by this Motion, which is not asking the Court to determine whether the Parties consented to class-wide arbitration in the Contracts by incorporating the CAA. Instead, the Motion concerns whether each individual Claimants' claims, which contain common questions of law and fact, should be consolidated into a single arbitration for resolution on an individual basis by a single arbitrator.

**D. Consolidation of Claimants' individual claims into a single arbitration for individual resolution before one arbitrator is appropriate under the California Arbitration Act.**

Claimants' claims meet the requisite legal standard for consolidation before a single arbitrator for individual resolution. Under the CAA, a court may order an arbitration to proceed on a consolidated basis if certain factors are satisfied. CA Civ Pro Code § 1281.3. Those factors are:

(1) Separate arbitration agreements or proceedings exist between the same parties; or one party is a party to a separate arbitration agreement or proceeding with a third party; and

(2) The disputes arise from the same transactions or series of related transactions; and

>   (3)   There is a common issue or issues of law or fact creating the possibility of conflicting rulings by more than one arbitrator or panel of arbitrators.

The CAA takes seriously that consolidated arbitration may save the Parties' resources and that consistent application of the law is important to the rule of law as a bedrock principle of the legal system. "By adopting section 1281.3, California has manifested a strong policy favoring consolidating arbitrations involving common issues of law and fact. There are at least three important aims of this policy: the efficient settling of private disputes, judicial economy, and the avoidance of contrary results." *Gordon v. G.R.O.U.P., Inc.*, 49 Cal. App. 4th 998, 1006, 56 Cal. Rptr. 2d 914 (1996) (quoting *Garden Grove Cmty. Church v. Pittsburgh-Des Moines Steel Co.*, 140 Cal. App. 3d 251, 262, 191 Cal. Rptr. 15 (1983)). Public policy so strongly favors consolidation that "A consolidation under section 1281.3 may be ordered even if it means 'a party may be forced into a coordinated arbitration proceeding in a dispute with a party with whom he has no agreement, before an arbitrator he had no voice in selecting, and by a procedure he did not agree to.'" *Id.* (quoting *Keating v. Super. Ct.*, 31 Cal. 3d 585, 612, 645 P.2d 584, (1982), *rev'd on other grounds in Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852 (1984)).

Both the specific requirements of CA Civ Pro Code § 1281.3 and its underlying policies are satisfied in this case. Each Claimant has a separate Contract with Respondents. The disputes arise out of a series of related transactions with the same factual predicate involving Respondents' cord blood storage services and the accompanying representations and contracts offered to consumers, as further described in the Second Amended Complaint:

- Each individual Claimant entered into a substantially and materially similar Contract with Respondents for use of Respondents' cord blood storage service;

- Respondents enticed Claimants to enter into the Contracts on the premise that each Claimant would pay a significant up-front fee and

- then pay a fixed annual storage fee that would not change for the duration of the storage period;

- Respondents represented to each individual Claimant and the public writ large that the annual storage fee was a fixed fee for years 2-18 of the Contracts, and included such language in Claimants' Contracts;

- Contrary to their representations and the language contained within the Contracts, Respondents raised the annual storage fee multiple times over the course of the duration of the Contracts; and

- Respondents increased the annual storage fee in breach of each Contract, in breach of the implied covenant of good faith and fair dealing, in violation of state consumer protection laws, and in order to unjustly enrich themselves at the expense of each Claimant.

(*See* ECF No. 38 at ¶¶ 8–10, 12–13, 15, 21, 46–79.)  For purposes of satisfying CA Civ Pro Code § 1281.3, there must only be a single common issue of law or fact.  The claim here presents identical issues of law and material issues of fact such that the common issues of law and fact would predominate discrete and irrelevant dissimilar issues.

      Allowing Claimants' claims to be resolved piecemeal with different arbitrators would not only be unduly expensive, it would create a substantial risk of conflicting results, something that would most certainly result in injustice.  Given the number and complexity of legal and factual issues raised by Claimants, it is entirely possible that different arbitrators could issue diverging decisions on common issues, which is exactly the outcome CA Civ Pro Code § 1281.3 seeks to avoid.  Furthermore, consolidation of the arbitrations would further the goal of the timely and cost-efficient resolution of disputes between the Parties.  The Parties will inevitably coordinate each arbitration – the only question is whether the resources will be expended for three separate arbitration proceedings to occur, needlessly increasing the cost of resolving the issues in dispute.  Given that each of Claimants' claims turn on common issues of fact and law, consolidation of Claimants' claims is appropriate.

### E. Consolidation of Claimants' individual claims into a single arbitration before one arbitrator is consistent with the Court's prior Order compelling arbitration as well as the JAMS rules.

Should the Court grant the Motion, no inconsistencies would arise with either the Court's Order compelling arbitration or with the JAMS Rules. The Court previously ordered: "For clarity, Plaintiffs' individual claims are being referred to individual arbitration because the contract is silent on the issue of class-wide arbitration." (ECF No. 72 at 11.) Although the Court foreclosed class-wide arbitration, nothing in the Order forecloses Plaintiffs from requesting consolidation of individual claims for individual resolution in one arbitration before one arbitrator. Consolidation and class-wide arbitration are distinct procedural tracks, and although CA Civ Pro Code § 1281.3 is the same procedural device for both tracks, Plaintiffs here only seek to consolidate. Each Claimants' claims remain their own upon consolidation and thus, individual arbitration for each Claimant still occurs despite consolidation before a single arbitrator. Similarly, Rule 6(e) of the JAMS Rules govern consolidation and permit consolidation under the same circumstances as the CAA – when the arbitrations involve "common issues of fact or law."[3] As explained herein, Claimants bring common legal claims premised upon identical contract language relating to fixed annual storage fees, uniform representations relating to fixed annual storage fees, and common increases to the fixed annual storage fees, making the circumstances appropriate for consolidation.

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order that Plaintiffs proceed in arbitration as a consolidated arbitration as opposed to three separate actions.

---

[3] https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Comprehensive_Arbitration_Rules-2021.pdf (last accessed June 7, 2023).

| | | |
|---|---|---|
| 1 | DATED: June 20, 2023 | Respectfully submitted, |
| 2 | | */s/ Rachel Soffin* |
| 3 | | Rachel Soffin* |
| | | Jonathan Cohen* |
| 4 | | Erin Ruben* |
| 5 | | **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC** |
| 6 | | 800 S Gay St Ste 1100 |
| 7 | | Knoxville, TN 37929 |
| | | T: (865) 247-0080 |
| 8 | | rsoffin@milberg.com |
| 9 | | jcohen@milberg.com |
| | | eruben@milberg.com |

Harper T. Segui*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
825 Lowcountry Blvd., Unit 101
Mount Pleasant, South Carolina 29464
T: (919) 600-5000
hsegui@milberg.com

Alex R. Straus (SBN 321366)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive, PH
Beverly Hills, CA 90212
T: (917) 471-1894
astraus@milberg.com

Tom Pacheco**
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
900 West Morgan Street
Raleigh, NC 27603
T: (212) 946-9305
tpacheco@milberg.com

-13-
NOTICE AND MOTION FOR ORDER TO CONSOLIDATE ARBITRATIONS
CASE NO. 4:21-CV-06527-HSG

*Attorneys for Plaintiffs*
*\*Admitted pro hac vice*
*\*\* Pro hac vice application pending*